## No. 11-1785

# In the
# United States Court of Appeals
## for the Seventh Circuit

CHRISTOPHER BROWN, Individually and
on Behalf of All Others Similarly Situated,

*Plaintiff-Appellant,*

v.

JOHN P. CALAMOS, SR., Trustee of the
Calamos Convertible Opportunities and Income Fund, et al.,

*Defendants-Appellees.*

———————————————————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division, No. 10-cv-6558.
The Honorable **Elaine E. Bucklo**, Judge Presiding.

## BRIEF AND SHORT-APPENDIX
## OF PLAINTIFF-APPELLANT

CAROL V. GILDEN
COHEN MILSTEIN SELLERS & TOLL PLLC
190 South LaSalle Street, Suite 1705
Chicago, Illinois 60603
(312) 357-0370

STEVEN J. TOLL
JOSHUA S. DEVORE
JOSHUA M. KOLSKY
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue, NW, Suite 500 West
Washington, DC 20005
(202) 408-4600

LYNN L. SARKO
KELLER ROHRBACK, LLP
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
(206) 623-1900

GARY GOTTO
JAMES A. BLOOM
KELLER ROHRBACK, P.L.C.
3101 North Central Avenue, Suite 1400
Phoenix, Arizona 85012
(602) 248-0088

*Attorneys for Plaintiff-Appellant*

## ORAL ARGUMENT REQUESTED





**CIRCUIT RULE 26.1    DISCLOSURE STATEMENT**

Appellate Court No: 11-1785

Short Caption: Brown v. Calamos

　　To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R.  App. P. 26.1.

　　The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

　　**[   ]　　PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)　The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

　　Christopher Brown

(2)　The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

　　Cohen Milstein Sellers & Toll PLLC

　　Keller Rohrback, LLP

　　Keller Rohrback, PLC

(3)　If the party or amicus is a corporation:

　　i)　Identify all its parent corporations, if any; and

　　　n/a

　　ii)　list any publicly held company that owns 10% or more of the party's or amicus' stock:

　　　n/a

Attorney's Signature:  /s/Carol V. Gilden　　　　Date: May 16, 2011

Attorney's Printed Name:  Carol V. Gilden

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).　**Yes** [X]　**No** [  ]

Address:  190 South LaSalle Street, Suite 1705

　　　Chicago, IL 60603

Phone Number:  312-357-0370　　　　Fax Number:  312-357-0369

E-Mail Address:  cgilden@cohenmilstein.com

rev. 01/08 AK

**CIRCUIT RULE 26.1   DISCLOSURE STATEMENT**

Appellate Court No: 11-1785

Short Caption: Brown v. Calamos

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**[  ]       PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Christopher Brown

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Cohen Milstein Sellers & Toll PLLC

Keller Rohrback, LLP

Keller Rohrback, PLC

(3)   If the party or amicus is a corporation:

i)   Identify all its parent corporations, if any; and

n/a

ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

n/a

Attorney's Signature:  /s/ Joshua Kolsky            Date: May 16, 2011

Attorney's Printed Name: Joshua Kolsky

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** [  ]   **No** [X]

Address:   1100 New York Avenue NW, Suite 500 West

Washington, DC 20005

Phone Number:  202-408-4600              Fax Number:  202-408-4699

E-Mail Address:  jkolsky@cohenmilstein.com

rev. 01/08 AK

**CIRCUIT RULE 26.1   DISCLOSURE STATEMENT**

Appellate Court No: 11-1785

Short Caption: Brown v. Calamos

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    **[　]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

    Christopher Brown

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Cohen Milstein Sellers & Toll PLLC

    Keller Rohrback, LLP

    Keller Rohrback, PLC

(3)  If the party or amicus is a corporation:

    i)  Identify all its parent corporations, if any; and

        n/a

    ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

        n/a

Attorney's Signature:  /s/ Lynn Sarko    Date: May 16, 2011

Attorney's Printed Name: Lynn Sarko

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).　**Yes** [　]　**No** [X]

Address: 1201 Third Avenue, Suite 3200

          Seattle, Washington 98101-3052

Phone Number: 206-623-1900    Fax Number: 206-623-3384

E-Mail Address: lsarko@kellerrohrback.com

rev. 01/08 AK

**CIRCUIT RULE 26.1    DISCLOSURE STATEMENT**

Appellate Court No: 11-1785

Short Caption: Brown v. Calamos

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R.  App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**[  ]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Christopher Brown

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Cohen Milstein Sellers & Toll PLLC

Keller Rohrback, LLP

Keller Rohrback, PLC

(3)  If the party or amicus is a corporation:

i)  Identify all its parent corporations, if any; and

n/a

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

n/a

Attorney's Signature:  /s/ Gary Gotto          Date: May 16, 2011

Attorney's Printed Name: Gary Gotto

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** [  ]  **No** [X]

Address: 3101 North Central Avenue, Suite 1400

Phoenix, AZ 85012

Phone Number: 602-248-0088          Fax Number: 602-248-2822

E-Mail Address: ggotto@krplc.com

rev. 01/08 AK

# TABLE OF CONTENTS

**Page**

JURISDICTIONAL STATEMENT ................................................................. 1

STATEMENT OF ISSUE .......................................................................... 1

STATEMENT OF THE CASE ...................................................................... 2

STATEMENT OF RELEVANT FACTS ............................................................. 3

    I.     The Fund Issued AMPS, Which Benefitted the Common
           Shareholders .................................................................... 3

    II.    The Defendants Improperly Redeemed the AMPS at More Than
           Their Value ...................................................................... 4

SUMMARY OF THE ARGUMENT ................................................................. 6

ARGUMENT ...................................................................................... 7

    I.     The District Court's Decision is Subject to De Novo Review ...................... 7

    II.    SLUSA and the District Court's Decision ........................................ 7

    III.   The District Court Erred in Holding that the Action Alleges an
           Untrue Statement or Omission of a Material Fact ............................... 12

           A.    Defendants' Statements About the Perpetual Term of the
                AMPS Were True ......................................................... 12

           B.    The Supposed Untrue Statements are Immaterial to
                Plaintiff's Claims ........................................................ 13

           C.    The Action Does Not Allege Any Omissions of Material
                Facts ...................................................................... 19

    IV.   The District Court Erred in Holding that the "In Connection With
           the Purchase or Sale of a Covered Security" Element of SLUSA was
           Satisfied ...................................................................... 23

    V.    The District Court's Decision is Contrary to the Purpose of SLUSA ........ 26

CONCLUSION .................................................................................. 29

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Arlin-Golf, LLC v. Vill. of Arlington Heights,*
   631 F.3d 818 (7th Cir. 2011) ................................................................7

*Borsellino v. Goldman Sachs Group, Inc.,*
   477 F.3d 502 (7th Cir. 2007) ..............................................................15

*Boyd v. Phoenix Funding Corp.,*
   366 F.3d 524 (7th Cir. 2004) ...........................................................7, 9

*Breakaway Solutions, Inc. v. Morgan Stanley & Co.,*
   C.A. No. 19522, 2004 Del. Ch. LEXIS 125 (Del. Ch. Aug. 27, 2004) ......................passim

*Burns v. Prudential Secs., Inc.,*
   218 F. Supp. 2d 911 (N.D. Ohio 2002) ................................................25

*Business Roundtable v. SEC,*
   905 F.2d 406 (D.C. Cir. 1990) ............................................................27

*In re Charles Schwab Corp. Sec. Litig.,*
   257 F.R.D. 534 (N.D. Cal. 2009) .........................................................13

*Citron v. Rollins Envtl. Servs., Inc.,*
   644 F. Supp. 733 (D. Del. 1986) .........................................................25

*Cohen v. McAllister,*
   688 F. Supp. 1040 (W.D. Pa. 1988) ...................................................25

*Crummere v. Smith Barney, Harris Upham & Co.,*
   624 F. Supp. 751 (S.D.N.Y. 1985) .....................................................25

*Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,*
   395 F.3d 25 (2d Cir. 2005) .................................................................14

*Daniels v. Morgan Asset Mgmt.,*
   743 F. Supp. 2d 730 (W.D. Tenn. 2010) ...................................14, 16, 21

*Du Pont v. Wyly,*
   61 F.R.D. 615 (D. Del. 1973) ..............................................................25

*Felton v. Morgan Stanley Dean Witter & Co.,*
    429 F. Supp. 2d 684 (S.D.N.Y. 2006)......................................................................21, 22

*Gantchev v. Predicto Mobile,*
    LLC, No. 09-2312, 2009 U.S. Dist. LEXIS 85898 (N.D. Ill. Sept. 18, 2009) .....................19

*Gavin v. AT&T Corp.,*
    464 F.3d 634 (7th Cir. 2006) ........................................................................8, 25, 26, 27

*Green v. Nuveen Advisory Corp.,*
    295 F.3d 738 (7th Cir. 2002) ..........................................................................................3

*In re Investors Funding Corp.,*
    523 F. Supp. 563 (S.D.N.Y. 1980) ...............................................................................25

*Jackson v. N'Genuity Enters., Co.,*
    No. 09-6010, 2010 U.S. Dist. LEXIS 118268 (N.D. Ill. Nov. 8, 2010)..............................19

*Kamen v. Kemper Fin. Servs.,*
    500 U.S. 90 (1991).......................................................................................................27

*LaSala v. Bordier et Cie,*
    519 F.3d 121 (3d Cir. 2008) ................................................................................ passim

*LaSala v. UBS, AG,*
    510 F. Supp. 2d 213 (S.D.N.Y. 2007)...........................................................................14

*Levinson v. PSCC Sers., Inc.,*
    No. 09-00269, 2010 U.S. Dist. LEXIS 137537 (D. Conn. Dec. 29, 2010) ................ passim

*In re Lord Abbett Mut. Funds Fee Litig.,*
    553 F.3d 248 (3d Cir. 2009) ........................................................................................14

*MDCM Holdings, Inc. v. Credit Suisse First Bos. Corp.,*
    216 F. Supp. 2d 251 (S.D.N.Y. 2002).......................................................................20, 24

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit,*
    547 U.S. 71 (2006)............................................................................................... passim

*Montoya v. New York State United Teachers,*
    No. 10-2068, 2010 U.S. Dist. LEXIS 127101 (E.D.N.Y. Nov. 23, 2010) ...........................22

*Norman v. Salomon Smith Barney Inc.,*
    350 F. Supp. 2d 382 (S.D.N.Y. 2004)...........................................................16, 18, 21, 24

*Paru v. Mut. of Am. Life Ins. Co.*,
No. 04-6907, 2006 U.S. Dist. LEXIS 28125 (S.D.N.Y. May 11, 2006) ........................20, 27

*Santa Fe Indus., Inc. v. Green*,
430 U.S. 462 (1977)...........................................................................................................9

*SEC v. Zandford*,
535 U.S. 813 (2002)..........................................................................................................23

*Tammi v. Porsche Cars N. Am., Inc.*,
536 F.3d 702 (7th Cir. 2008) ............................................................................................7

*In re Textainer P'ship Sec. Litig.*,
No. 05-0969, 2005 U.S. Dist. LEXIS 26711 (N.D. Cal. July 27, 2005) .............................28

*Xpedior Creditor Trust v. Credit Suisse First Bos. (USA) Inc.*,
341 F. Supp. 2d 258 (S.D.N.Y. 2004).........................................................................8, 14, 15

STATUTES AND REGULATIONS

15 U.S.C. § 77p ............................................................................................................... passim

15 U.S.C. § 78bb .............................................................................................................1, 8, 9

15 U.S.C. § 80a-5 ...................................................................................................................3

28 U.S.C. § 1291 ....................................................................................................................1

28 U.S.C. § 1332 ..................................................................................................................28

112 Stat. 3227 .......................................................................................................................8

12 C.F.R. § 3.100 .................................................................................................................12

12 C.F.R. § 325.2 .................................................................................................................12

12 C.F.R. § 567.1 .................................................................................................................12

12 C.F.R. § 615.5301 ...........................................................................................................12

## JURISDICTIONAL STATEMENT

In proceedings before the District Court, Defendants argued that the District Court had jurisdiction under the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), 15 U.S.C. § 77p(b), (c) and 15 U.S.C. § 78bb(f)(1), (2).  Plaintiffs disputed and continue to dispute that the District Court had jurisdiction over the action.  This dispute is a primary focus of this appeal.

This Court has jurisdiction under 28 U.S.C. § 1291.  The District Court entered judgment on March 14, 2011.  Judgment (A-12).[1]  Plaintiff timely filed the Notice of Appeal on April 4, 2011.  Dkt. 33.  The appeal is from the District Court's final judgment disposing of all parties' claims.

## STATEMENT OF ISSUE

Whether the District Court erred in holding that this shareholders' rights action – a classic state law claim – was properly removed from state court and dismissed as preempted by SLUSA, which preempts certain actions alleging "an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security," where the statements in question are in fact alleged to be true, where the supposed omissions were in fact publicly disclosed, and where Plaintiffs' claims in no way involve the purchase or sale of securities.

---

[1] Citations to the record in the District Court are to docket ("Dkt.") number.  Citations to the documents contained in the Short Appendix or Separate Appendix are to the document name and appendix page number.

## STATEMENT OF THE CASE

Plaintiff, Christopher Brown, brought this breach of fiduciary duty suit on behalf of himself and all other individuals who were the beneficial owners of common shares of the Calamos Convertible Opportunities and Income Fund (the "Fund") at any time from March 19, 2008 through the present seeking to enforce duties owed to them directly as shareholders of the Fund. Complaint ¶ 1 (SA-13). The Fund had two classes of shares: common shares, such as those owned by Plaintiff, and Auction Market Preferred Shares ("AMPS"). *Id*. ¶ 2 (SA-13). The action arises out of the redemptions of the AMPS by the Defendants in 2008 and 2009 in violation of duties owed to the common shareholders. *Id*. ¶ 25 (SA-22–SA-23).

Plaintiff filed his Class Action Complaint in Illinois state court on September 13, 2010. *Id*. (SA-11). The Complaint asserts three causes of action based on Defendants' redemptions of the AMPS: (1) Breach of Fiduciary Duty; (2) Aiding and Abetting a Breach of Fiduciary Duty; and (3) Unjust Enrichment. *Id*. ¶¶ 41-61 (SA-33–SA-36). Defendants are the seven trustees of the Fund (the "Individual Defendants"); Calamos Advisors, LLC; Calamos Asset Management, Inc.; and the Fund (together with Calamos Advisors, LLC and Calamos Asset Management, Inc., the "Calamos Defendants").

On October 13, 2010, Defendants removed the action to the Northern District of Illinois, Dkt. 1, and filed a motion to dismiss the Complaint on November 4, 2010, Dkt. 16, supported by three memoranda, Dkts. 17, 18, 21. On November 5, 2010, Plaintiff filed a motion to remand the case to state court. Dkt. 22. The District Court held a short hearing on November 9, 2010, during which it continued the remand motion and the

motions to dismiss.  Transcript (SA-39); Dkt. 25.  On November 23, 2010, Defendants

filed a memorandum in response to Plaintiff's remand motion.  Dkt. 26.  The District

Court stated at the November 9, 2010 hearing that Plaintiffs were not entitled to a reply.

Transcript (SA-43).

On March 14, 2011, the District Court denied Plaintiffs' remand motion and

granted Defendants' omnibus motion to dismiss the Complaint.  Minute Order (A-1);

Opinion (A-2).  The same day, the District Court entered judgment.  Judgment (A-12).

## STATEMENT OF RELEVANT FACTS

### I.      The Fund Issued AMPS, Which Benefitted the Common Shareholders

As a leveraged closed-end investment company,[2] the Fund's essential business

model is to raise capital through the issuance of shares, invest that capital in various

income-yielding securities, and return to the shareholders the income earned on those

investments over the expenses of operating the Fund.  Complaint ¶ 1 (SA-13).

The Fund's capital structure consisted of common stock and seven series of

AMPS, which were a type of auction rate securities.  *Id*. ¶¶ 2, 11 (SA-13, SA-16).  The

AMPS are dividend-paying preferred shares.  *Id*. ¶ 2 (SA-13).  The dividend rate was to

be set by periodic auction, or, if the auctions failed, by formula.  *Id*. ¶¶ 2, 21 (SA-13, SA-

21).  The AMPS represented quite favorable financing for the Fund for several reasons,

including their low rate, perpetual term, and minimal constraints.  *Id*. ¶ 12 (SA-16).  In

---

[2] A closed-end investment company is one which raises money through a stock offering, and
whose shares are typically then traded publicly on a stock exchange.  *Green v. Nuveen Advisory
Corp.*, 295 F.3d 738, 740 n.1 (7th Cir. 2002).  Unlike an open-end mutual fund, a closed-end
investment company has no obligation to redeem its outstanding shares.  15 U.S.C. § 80a-
5(a)(1)-(2).

effect, the AMPS provided the Fund with long-term financing at short-term interest rates. *Id.* ¶ 2 (SA-13).

The AMPS were an important means by which the Fund could provide financial leverage to its common shareholders in the form of the difference between the low rates paid to the AMPS holders and the income realized on the Fund's portfolio of investments. *Id.* ¶ 13 (SA-18). This financial leverage was a key piece of the return to be realized by common shareholders on their investments in the Fund. *Id.*

## II.    The Defendants Improperly Redeemed the AMPS at More Than Their Value

By early 2008, over $50 billion in auction rate securities issued by closed-end funds such as the Fund were outstanding. *Id.* ¶ 20 (SA-12). Although the auction rate securities had no maturity date and gave holders no redemption right, the regular auctions, as long as they functioned, gave holders a way to liquidate their investment. *Id.* However, in February, 2008, the auction rate market began to fail and has continued to fail since that time. *Id.* ¶ 22 (SA-21). The auction failures have effectively rendered auction rate securities, including the AMPS issued by the Fund, illiquid. *Id.*

The auction failures had little direct impact on the Fund or its common shareholders, such as Plaintiff. *Id.* ¶ 24 (SA-22). The Fund was not obligated to redeem the AMPS, nor did the auction failures materially adversely affect the Fund's rights and obligations with respect to the AMPS. *Id.* Nonetheless, in 2008 and 2009, Defendants caused the Fund to redeem all the AMPS at their initial issue price. *Id.* ¶ 25 (SA-22–SA-23). The redemptions conferred multiple benefits on the AMPS holders at the expense of the common shareholders. *Id.* ¶ 28 (SA-24). First, at the time of the redemption, the

AMPS were no longer worth their initial issue price, as the Fund admitted to the SEC. *Id*. ¶ 29 (SA-24–SA-25). Nonetheless, the AMPS were redeemed at the full issue price. *Id*. The redemption was consequently dilutive to the common shareholders. *Id*. Also, the AMPS holders were given liquidity – at the common shareholders' expense – that was not among the rights granted under the terms of the AMPS. *Id*. ¶¶ 24, 32 (SA-22, SA-29–SA-30).

The redemptions significantly damaged the common shareholders in several ways. The Defendants arranged new financing (the "First Replacement Borrowing") as a source of funds to pay for the redemptions of the AMPS. *Id*. ¶ 30 (SA-25). The First Replacement Borrowing was so disadvantageous that it was soon replaced with three sources of financing: issuance of additional common stock, diversion of cash generated by the Fund's investments to pay down debt rather than make distributions to common shareholders, and yet another debt facility (the "Second Replacement Borrowing"; together with the First Replacement Borrowing, the "Replacement Borrowing"). *Id*.

Both the First Replacement Borrowing and the Second Replacement Borrowing are disadvantageous compared with the AMPS in several ways. *Id*. ¶ 31 (SA-25–SA-29). First, the issuance of additional common stock diluted the economic value of the common shareholders. *Id*. ¶ 28 (SA-24). In addition, the effective costs of the Replacement Borrowing are higher – the extra costs diverted money that could otherwise have been paid as dividends to the common shareholders, directly damaging the common shareholders. *Id*. ¶ 31 (SA-25–SA-29). Also, the Replacement Borrowing is short-term, unlike the AMPS which had no maturity date. *Id*. The Replacement

Borrowing also imposed much more onerous terms on the Fund, increasing the

effective cost of the Replacement Borrowing above the stated interest rate.  *Id.*

## SUMMARY OF THE ARGUMENT

The action is not barred by SLUSA.  SLUSA prohibits the use of a state law class

action alleging "an untrue statement or omission of a material fact in connection with

the purchase or sale of a covered security."  15 U.S.C. § 77p(b).  The District Court held

that the action alleges an untrue statement and an omission of a material fact.

However, Plaintiffs did not allege any false statements or omissions; rather the District

Court effectively rewrote Plaintiffs' complaint to assert fraud-by-hindsight.  The

supposedly untrue statement identified by the District Court (that the term of the AMPS

was perpetual) is *true*, not false.  Moreover, the statement is an extraneous detail – not a

factual predicate to any of Plaintiff's claims – and thus cannot serve as the basis for

SLUSA preemption.  And the facts constituting the supposed omission (Defendants'

conflict of interest) were not undisclosed and therefore do not fall within SLUSA's

ambit.  Even if those facts were considered undisclosed, the Complaint does not allege

that Defendants had any duty to disclose them, nor are they material to Plaintiff's

claims.

Moreover, the action does not allege any "purchase or sale of a covered security"

by Plaintiff or anyone else.  Instead, the class is defined in terms of ownership of

common shares, not purchases or sales of such shares.  Finally, the Complaint contains

no allegations that Plaintiff or any class member ever read the statements at issue, much

less that they relied on them in making any investment decisions.

Therefore, while SLUSA preemption requires "an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security," none of those elements are met here. The action does not allege an "untrue statement or omission of a material fact," does not allege a "purchase or sale of a covered security," and, even if those facts were implied into the Complaint – which is not permitted – there would be no meaningful connection between the statements and the securities transactions. Therefore, the District Court's ruling should be reversed. Indeed, if it were affirmed, virtually every state law shareholders' rights class action could be recast by Defendants into a SLUSA-preempted case, effectively eliminating shareholders' rights class actions.

## ARGUMENT

### I.    The District Court's Decision is Subject to *De Novo* Review

A district court's decision regarding the propriety of removal is a question of federal jurisdiction that the Seventh Circuit reviews *de novo*. *Boyd v. Phoenix Funding Corp.*, 366 F.3d 524, 529 (7th Cir. 2004). The Seventh Circuit also applies *de novo* review to a district court's interpretation of SLUSA. *Tammi v. Porsche Cars N. Am., Inc.*, 536 F.3d 702, 709 (7th Cir. 2008). A decision granting a motion to dismiss is also reviewed *de novo*. *Arlin-Golf, LLC v. Vill. of Arlington Heights*, 631 F.3d 818, 821 (7th Cir. 2011).

### II.    SLUSA and the District Court's Decision

Congress enacted SLUSA in 1998 as a supplement to the Private Securities Litigation Reform Act ("PSLRA") of 1995. *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81-82 (2006); *LaSala v. Bordier et Cie*, 519 F.3d 121, 127-28 (3d Cir.

7

2008).  The PSLRA imposes on securities plaintiffs a number of requirements designed

to deter the filing of frivolous suits and to enable district courts more easily to dismiss

such cases at the pleading stage.  *See Dabit*, 547 U.S. at 81-82; *LaSala*, 519 F.3d at 128.  The

PSLRA applies only to claims brought under the Securities Act of 1933 and the

Securities and Exchange Act of 1934, but not to state law claims.  *See* 15 U.S.C. §§ 77z-

1(a)(1), 78u-4(a)(1).

In order to avoid the strict pleading requirements of the PSLRA after its passage,

some plaintiffs began filing claims under state laws that did not impose the same

burdens.  *Dabit*, 547 U.S. at 82; *Gavin v. AT&T Corp.*, 464 F.3d 634, 640 (7th Cir. 2006).

SLUSA, therefore, sought to stem this shift "from Federal to State Courts" and "prevent

certain State private securities class action lawsuits alleging fraud from being used to

frustrate the objectives of" the PSLRA.  SLUSA §§ 2(2), (5), 112 Stat. 3227.  SLUSA does

so by preventing plaintiffs from using the class-action device to bring state law

securities fraud claims.  *LaSala*, 519 F.3d at 128.  SLUSA applies to state law claims that

assert explicit claims of fraud or misrepresentation as well as to other state law claims

that sound in fraud and therefore should properly be brought as federal securities fraud

claims.  *See Xpedior Creditor Trust v. Credit Suisse First Bos. (USA) Inc.*, 341 F. Supp. 2d

258, 261 (S.D.N.Y. 2004).

The core provision of SLUSA states, in relevant part:

> No covered class action based upon the statutory or common law
> of any State or subdivision thereof may be maintained in any State or
> Federal court by any private party alleging–

> (1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or

> (2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 77p(b).[3]  SLUSA also makes all "covered class actions" filed in state court removable to federal court, where they are then subject to dismissal.  15 U.S.C. § 77p(c). The parties seeking to invoke federal jurisdiction, here Defendants, bear the burden of demonstrating that removal is proper.  *Boyd*, 366 F.3d at 529.

Here, the District Court erred in holding that the action alleges "an untrue statement or omission of a material fact[.]"  15 U.S.C. § 77p(b)(1); Opinion (A-9-A-10).[4] The District Court identified one allegation it considered to be a misrepresentation: "that the AMPS were 'perpetual'." *Id.* (A-9).  The District Court did not identify specific paragraphs within the Complaint, but it likely was referring to the following paragraphs, which Defendants had argued contained allegations of misrepresentations:

> As described in materials filed with the Securities and Exchange Commission ("SEC") or otherwise published to the investing public, a key piece of the return to the Fund's common shareholders was financial

---

[3] SLUSA added nearly identical provisions to the Securities Act of 1933 and the Securities Exchange Act of 1934.  *Compare* 15 U.S.C. § 77p(b) (referring to "an untrue statement or omission of a material fact") *with* 15 U.S.C. § 78bb(f)(1) (referring to "a misrepresentation or omission of a material fact").  All further citations to SLUSA herein are to the Securities Act of 1933, the statute cited by the District Court.

[4]  The District Court did not hold that the action alleges "that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security," 15 U.S.C. § 77p(b)(2), nor could it have.  "Manipulation is virtually a term of art when used in connection with securities markets.  The term refers generally to practices, such as wash sales, matched orders, or rigged prices, that are intended to mislead investors by artificially affecting market activity."  *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 476-77 (1977) (internal citations and quotation marks omitted).

leverage.  *See, e.g.*, N-CSRS, June 26, 2008 at 34 (advertising as a "Potential Advantage of Closed-End Fund Investing" the "Ability to Put Leverage to Work").  Financial leverage is the difference between the low rates paid by the Fund on its AMPS and the returns it would realize on its portfolio investments.  The effect of this leverage was reflected in the Fund's regular cash distributions to common shareholders and described in the Fund's regular reports to its shareholders.  The Fund's public statements indicated that the holders of its common stock could realize, as one of the significant benefits of this investment, leverage that would continue indefinitely, because, as described above, the term of the AMPS was perpetual.

Complaint, ¶ 13 (SA-18).

Both the First Replacement Borrowing and the Second Replacement Borrowing are disadvantageous compared with the AMPS, for a number of reasons, including: the effective costs of the Replacement Borrowing are higher; the term is finite; and the constraints are greater, as detailed below.

*            *            *

The term is finite. While the AMPS have a perpetual term, the term of the Replacement Borrowing was one year. The short-term maturity puts the Fund at enormous refinancing risk, as it was completely dependent on interest rate conditions and its ability to qualify for and obtain financing. A comparable provision in a home mortgage would require the homeowner to pay the full principal amount outstanding in one year.  The AMPS, on the other hand, had a perpetual term, so the Fund had no refinancing risk prior to the replacement of AMPS with the Replacement Borrowing.  The Defendants were well aware of the advantage of the AMPS.  The Fund itself stated "[T]he perpetual nature of the [AMPS] makes them, in that respect, a more attractive source of leverage than borrowing, which by its terms must be repaid or refinanced at or before a stated maturity date." Fourth Amended Application at 34 n.21. . . .

*Id.* ¶ 31 (SA-25-SA-27).

The District Court also identified one allegation of a supposed omission

("defendants' undisclosed conflict of interest"), Opinion (A-9), which presumably refers

to the following paragraph:

On information and belief, the Defendants caused the redemption of the AMPS not to further the interests of the Fund or of the holders of its common stock; they did so to provide liquidity to the holders of the AMPS and likely as an attempt to placate their investment banks and brokers (who would thereby be protected from further liability for the illiquidity of the AMPS and from the risk that they would be required to buy the redeemed AMPS from the holders), so as to further the business objectives of the Calamos Sponsorship Group by responding to the pressures they experienced as a result of the failure of the auction rate securities auctions. Specifically, the same investment banks and brokers who marketed the ARS and AMPS were a key part of the business model of the Calamos Sponsorship Group: the Calamos Sponsorship Group earns fees by sponsoring new funds and the investment banks and brokers market the common shares of those funds. Consequently, the Calamos Sponsorship Group relies heavily on good relationships with the investment banks and brokers to enable them to market new funds and earn fees for the management of those funds. Indeed, the CAM report on Form 10-K for 2009 lists as a risk factor:

> [A] majority of our assets under management were attributable to accounts that we accessed through third-party intermediaries. These intermediaries generally may terminate their relationships with us on short notice.

Widespread dissatisfaction on the part of brokers and investment banks threatened the viability of this on-going business. Simply put, the bailout of the holders of the AMPS and the responsible brokers and investment banks conflicted with the interests of the Fund and the holders of its common stock. After the redemptions, CAM was able to maintain its good relationships: its Summary Annual Report to shareholders proudly reports: "In this dramatically changed market environment, we have been able to retain and, in many cases, grow our shelf space at key partner firms."

*Id.* ¶ 27 (SA-23-SA-24).

**III.    The District Court Erred in Holding that the Action Alleges an Untrue Statement or Omission of a Material Fact**

    **A.    Defendants' Statements About the Perpetual Term of the AMPS Were True**

The District Court erred in holding that Defendants' statements about the perpetual term of the AMPS constituted misrepresentations because those statements were true.  Defendants were correct to describe the term of the AMPS as "perpetual," which simply means that the AMPS had no stated maturity date and would remain on the market until redeemed.  *See* 12 C.F.R. § 3.100(e)(8) ("Perpetual preferred stock means preferred stock that does not have a stated maturity date and cannot be redeemed at the option of the holder.").[5]  The "perpetual" nature of the AMPS did not mean that the AMPS could never be redeemed, and the later redemptions of the AMPS did not make Defendants' earlier statements false.  Rather, Defendants had the right to redeem the AMPS under appropriate circumstances, and the issue in this case is whether the circumstances in fact warranted the redemptions.  Because the AMPS had no maturity date, the Fund could continue the AMPS financing as long as it was financially beneficial to do so.  Complaint ¶ 12 (SA-16).  But if the financial situation had changed, Defendants could have redeemed the AMPS if doing so would benefit the Fund and the common shareholders.  In this case, Plaintiffs contend that Defendants

---

[5] *See also* 12 C.F.R. § 325.2(r) ("Perpetual preferred stock means a preferred stock that does not have a maturity date, that cannot be redeemed at the option of the holder, and that has no other provisions that will require future redemption of the issue."); 12 C.F.R. § 567.1 (same); 12 C.F.R. § 615.5301(g) (same).

were not justified in redeeming the AMPS and that Defendants breached their fiduciary duties in doing so.

Because Defendants' statements about the perpetual term of the AMPS were true, the action does not allege any "untrue statements" and the District Court erred in holding otherwise.

### B.     The Supposed Untrue Statements are Immaterial to Plaintiff's Claims

Even if Defendants' statements about the perpetual term of the AMPS could somehow be seen as false, those statements would still not warrant SLUSA preemption because they are wholly immaterial to Plaintiff's claims.  None of the claims asserted in the Complaint depend on proof that those statements were ever made, much less proof that those statements were false.  Instead, those statements are extraneous details that merely provide context and show that Defendants understood the benefits that the AMPS provided to the common shareholders.

Such extraneous details do not support SLUSA preemption.  SLUSA preemption is not warranted simply because a misrepresentation is alleged – the misrepresentation must be an element of the claim or a factual predicate thereof.  *LaSala*, 519 F.3d at 141. "To be a factual predicate, the fact of a misrepresentation must be one that gives rise to liability, not merely an extraneous detail."  *Id*.  Also, "the inclusion of such extraneous allegations does not operate to require that the complaint must be dismissed under SLUSA."  *Id*.; *see also In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 551 (N.D. Cal. 2009) (allegations of misrepresentations incorporated into state law claims did not

13

support SLUSA preemption because they were extraneous; "When applying SLUSA, courts ignore extraneous allegations and focus on the gravamen of the complaint[.]").[6]

To determine whether particular allegations should be considered integral or extraneous, many courts use the "necessary component" test articulated by Judge Schiendlin in *Xpedior*, which determines "whether fraud is a *necessary component* of the claim[.]" 341 F. Supp. 2d at 261 (emphasis in original).[7] "Under this test, a complaint is preempted under SLUSA when it asserts (1) an explicit claim of fraud or misrepresentation (*e.g.*, common law fraud, negligent misrepresentations, or fraudulent inducement), or (2) other garden-variety state law claims that 'sound in fraud.'" *Id*. SLUSA, however, "does not preempt claims 'which do not have as a necessary component misrepresentations, untrue statements, or omissions of material facts' made in connection with the purchase or sale of a security." *Id*. at 266 (quoting *McEachern v. Equitable Life Assurance Soc. of the U.S.*, No. 00-403, 2001 WL 747320, at *2 (N.D. Ala. June 15, 2001)).[8]

---

[6] These decisions, and those discussed below, are consistent with authority holding that SLUSA preempts claims, not entire complaints. *See, e.g.*, *In re Lord Abbett Mut. Funds Fee Litig.*, 553 F.3d 248, 254-57 (3d Cir. 2009); *Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25, 47 (2d Cir. 2005), *rev'd on other grounds*, *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71 (2002). Therefore, the mere fact that a complaint contains an untrue statement or omission of a material fact is not determinative of which claims, if any, must be dismissed under SLUSA.

[7] *See also Levinson v. PSCC Sers., Inc.*, No. 09-00269, 2010 U.S. Dist. LEXIS 137537, at *29 (D. Conn. Dec. 29, 2010) (applying *Xpedior* test); *Breakaway Solutions, Inc. v. Morgan Stanley & Co.*, C.A. No. 19522, 2004 Del. Ch. LEXIS 125, at *28-39 (Del. Ch. Aug. 27, 2004) (same); *LaSala v. UBS, AG*, 510 F. Supp. 2d 213, 239-40 (S.D.N.Y. 2007) (same).

[8] Authority cited by the District Court is in accord. *See Daniels v. Morgan Asset Mgmt.*, 743 F. Supp. 2d 730, 738 (W.D. Tenn. 2010) ("SLUSA requires dismissal of state-law claims that rely on misrepresentations, material omissions, or manipulations as an *integral part of the conduct giving rise to the claims*." (internal quotation marks omitted) (emphasis added)).

Under the "necessary component" test, none of Plaintiff's claims are preempted by SLUSA.  None of the claims asserted by Plaintiff – breach of fiduciary duty, aiding and abetting a breach of fiduciary duty, and unjust enrichment – require misrepresentations or omissions as a necessary element.  *Xpedior*, 341 F. Supp. 2d at 269.

Likewise, none of Plaintiff's claims sound in fraud.  "A claim sounds in fraud when, although not an essential element of the claim, the plaintiff alleges fraud as an integral part of the conduct giving rise to the claim."  *Id.*; *see also Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) ("A claim that 'sounds in fraud' . . . [is] one that is premised upon a course of fraudulent conduct[.]").  Here, Plaintiff's breach of fiduciary duty claim alleges that the Individual Defendants – the trustees of the Fund – owed fiduciary duties to Plaintiff and the Class, including the duty not to unfairly favor the interests of one class of shareholders over another.  Complaint ¶ 42 (SA-33).  Plaintiff further alleges that the Individual Defendants breached these duties when they caused the Fund to redeem the AMPS, thereby benefitting the preferred shareholders at the expense of the common shareholders.  *Id.* ¶¶ 43-45 (SA-34).

Similarly, Plaintiff's claim for aiding and abetting a breach of fiduciary duty alleges that the Calamos Defendants encouraged and participated in the Individual Defendants breaches.  *Id.* ¶¶ 49-51 (SA-34-SA-35).  Lastly, Plaintiff's claim for unjust enrichment alleges that the Calamos Defendants were unjustly enriched because they received fees and other revenues from the Fund and other similar funds as a result of their inequitable conduct.  *Id.* ¶¶ 56-57 (SA-35-SA-36).

None of these claims are in any way related to or dependent upon any statements made by Defendants.  Indeed, the allegations at issue could be removed entirely from the Complaint without any effect on Plaintiff's claims.  Stated differently, if Defendants had made no public statements concerning the perpetual term of the AMPS, Plaintiff's claims would remain fully intact.  *See LaSala*, 519 F.3d at 141 ("[The] alleged misrepresentations are not factual predicates to these claims because . . . they have no bearing on whether the Banks' conduct is actionable; rather, they are merely background details that need not have been alleged, and need not be proved."); *Norman v. Salomon Smith Barney Inc.*, 350 F. Supp. 2d 382, 388 (S.D.N.Y. 2004) (holding that SLUSA did not preempt claim that "does not depend in any way on establishing that [the defendant's] research reports contained misrepresentations actionable under the securities laws.").  In contrast, other cases dismissed on SLUSA grounds have alleged statements that were the very basis of liability.  For example, in *Daniels v. Morgan Asset Mgmt.*, 743 F. Supp. 2d 730 (W.D. Tenn. 2010), relied on by the District Court, "[p]roving Defendants' alleged breach of contract and negligence would necessarily require proving Defendants' misrepresentations and omissions."  *Id*. at 740.

Decisions by numerous courts support the conclusion that Plaintiff's claims do not sound in fraud and are not barred by SLUSA.  For example, in *Levinson*, the plaintiffs maintained retirement accounts with the defendants, who invested the plaintiffs' assets with Bernard Madoff.  2010 U.S. Dist. LEXIS 137537, at *2-3.  After the plaintiffs lost their retirement savings through Madoff's Ponzi scheme, they sued the defendants for, *inter alia*, breach of fiduciary duty for allowing Madoff to maintain

possession of the plaintiffs' assets and for ignoring the evidence of Madoff's fraud.  *Id.*
at *3-4.  To be sure, the complaint alleged defendants had made representations that
could be considered false – the plaintiffs alleged that the defendants had represented in
their custodial agreements that they would keep the plaintiffs' funds in individual
accounts and maintain adequate records of assets, but the defendants failed to meet
those obligations.  *Id.* at *7-8.  According to the defendants, the complaint implicitly
alleged that the statements in the custodial agreements were misrepresentations and,
therefore, the claims were preempted by SLUSA.  *Id.* at *30-31.  The court rejected that
argument, stating that the defendants "read allegations into the Amended Complaint
that simply do not exist."  *Id.* at *31.  The defendants' attempt to imply a
misrepresentation "would recast every breach of contract or breach of fiduciary claim
into allegations of fraud."  *Id.* at *32-33.

Likewise, in *Breakaway Solutions*, the plaintiff sued on behalf of itself and other
companies that hired the defendants as underwriters for their IPOs.  2004 Del. Ch.
LEXIS 125, at *1-4.  The plaintiff alleged that the defendants had underpriced its IPO
stock and allocated stock to favored clients in exchange for payments, and thereby
breached their fiduciary duties, among other violations.  *Id.* at *1-2.  The defendants
argued that the claims were preempted by SLUSA because they were "based on the
notion that Defendants deceived [the plaintiff] in negotiations over the price of its IPO
stock, or failed to disclose the existence of supposed side agreements by which
Defendants would enrich themselves at the expense of [the plaintiff.]"  *Id.* at *33.  The
court rejected that argument because it "necessarily reads facts into the Complaint

which are not present." *Id*. The court explained that its "charge at this stage of the proceedings is to interpret the Complaint as written, not as it might have been written." *Id*. at *33-34. The fact that the IPO stock was underpriced could not support SLUSA preemption because the plaintiff did not allege that the underpricing was deceptive. *Id*. at *34.

Also, in *Norman*, the plaintiffs held investment accounts with the defendant, which offered investment management services based on recommendations of its research analysts, which the plaintiffs alleged were tainted by undisclosed conflicts of interest. 350 F. Supp. 2d at 384. The court held that the plaintiff's claims were not preempted by SLUSA because "the gravamen of the Complaint is plainly a straightforward breach claim[.]" *Id*. at 387. As here, the plaintiffs simply alleged that the defendant "breached its fiduciary duty to plaintiffs to act in their best interests and not engage in activities that would place its interests in conflict with theirs." *Id*. The court also addressed the contention that the complaint could be read as alleging misstatements or omissions by the defendant's analysts:

> [T]o the extent the factual recitation in the Complaint may be read to suggest that Salomon analysts may have made material misstatements or omissions in their analysis of securities, plaintiffs do not claim that they ever saw these reports, relied on them in any way, or made any investment decisions based on their specific recommendations or on the effects those recommendations may have had on the stock market in general. Plaintiffs' claim is simply that Salomon said it would do something in exchange for plaintiffs' fees, and then didn't do what it had promised. The fact that the actions underlying the alleged breach could also form the factual predicate for a securities fraud action by different plaintiffs cannot magically transform every dispute between broker-dealers and their customers into a federal securities claim[.]

18

*Id*.

The same result is appropriate here.  The Complaint does not state nor imply that statements by Defendants regarding the perpetual term of the AMPS were untrue or deceptive in any way.  Nor does it allege that Plaintiff or any member of the Class ever read those statements, relied on them, or made an investment decisions based on them.  *See Gantchev v. Predicto Mobile*, LLC, No. 09-2312, 2009 U.S. Dist. LEXIS 85898, at *6 (N.D. Ill. Sept. 18, 2009) ("Because plaintiffs do not allege that they were the recipients of or relied on defendants' alleged misrepresentations, their ICFA claim does not sound in fraud.").  Far from alleging any sort of deception, the Complaint actually alleges that the Defendants announced publically their intention to redeem the AMPS in advance of doing so.  Complaint ¶ 26 (SA-23).  Defendants' misconduct, in other words, was public and as nothing was concealed, there could be no reliance on any fraudulent acts.  *See Jackson v. N'Genuity Enters., Co.*, No. 09-6010, 2010 U.S. Dist. LEXIS 118268, at *8-9 (N.D. Ill. Nov. 8, 2010) (claim did not sound in fraud where defendant "acted within public view").

### C.     The Action Does Not Allege Any Omissions of Material Facts

The District Court also erred when it held that the action alleged an omission of material fact, namely, "defendants' undisclosed conflict of interest."  Opinion (A-10).  As discussed above, the District Court was presumably referring to paragraph 27 in the Complaint, which describes how the Defendants caused the redemptions of the AMPS in order to provide liquidity to the preferred shareholders and to placate their investment banks and brokers.  Complaint ¶ 27 (SA-23-SA-24).  More specifically, the

Complaint alleges that the Calamos Sponsorship Group relies on good relationships with the investment banks and brokers to enable them to market new funds and earn fees for the management of those funds, and that those motivations contributed to Defendants' decision to redeem the AMPS.  *Id.*

Despite the fact that the District Court described this as an "undisclosed conflict of interest," the Complaint contains no allegations that this conflict was undisclosed.  In fact, the paragraph discussing the conflict quotes from a *public* document that addresses Defendant Calamos Asset Management's relationship with third-party intermediaries. *Id.*  To conclude that the conflict was undisclosed, one would have to read additional facts into the Complaint, which is improper at this stage of the proceedings.  *See Levinson*, 2010 U.S. Dist. LEXIS 137537, at *31 (rejecting attempt by defendants to "read allegations into the Amended Complaint that simply do not exist"); *Breakaway Solutions*, 2004 Del. Ch. LEXIS 125, at *33-34 (the court's "charge at this stage of the proceedings is to interpret the Complaint as written, not as it might have been written"); *MDCM Holdings, Inc. v. Credit Suisse First Bos. Corp.*, 216 F. Supp. 2d 251, 257 n.12 (S.D.N.Y. 2002) ("Because the determination of whether SLUSA applies may only be made by reference to what a party has alleged, and not what it *could* have alleged, courts should be wary of a defendant's attempts to recast the plaintiff's complaint as a securities lawsuit in order to have it preempted by SLUSA.") (emphasis in original); *Paru v. Mut. of Am. Life Ins. Co.*, No. 04-6907, 2006 U.S. Dist. LEXIS 28125, at *10 (S.D.N.Y. May 11, 2006) ("According to defendant's logic, a disguised allegation of non-disclosure hides behind each of these claims . . . . This result is at odds with the well-established

20

principle that federal preemption provisions must be read with the presumption that Congress did not intend to displace state law entirely[.]").[9]

Even if the Complaint could be construed as alleging an undisclosed conflict (which is simply not possible on a fair reading), the conflict would still not qualify as an "omission of a material fact" under SLUSA because the Complaint does not allege that Defendants were obliged to disclose the conflict. In *Breakaway Solutions*, the defendants argued that an undisclosed conflict of interest in the form of kickbacks warranted SLUSA preemption. 2004 Del. Ch. LEXIS 125, at *25. The Court held that "the mere fact that something was not disclosed does not make it an 'omission of a material fact' within the meaning of SLUSA." *Id.* The plaintiff in *Breakaway Solutions* had "not alleged that the defendants were under any obligation to make such a disclosure" so there was "no basis for concluding that [the plaintiff had] alleged a material omission." *Id.* at *26; *see also Norman*, 350 F. Supp. 2d at 384, 387 (denying motion to dismiss on SLUSA grounds even though the complaint alleged undisclosed conflicts of interest).

Regardless of whether the conflict of interest is considered disclosed or undisclosed, it is an extraneous fact that does not support liability and is therefore irrelevant to the SLUSA analysis. The conflict allegations merely provide context and describe the motivations that led Defendants to redeem the AMPS. As with the statements about the perpetual term of the AMPS, Plaintiff's claims do not in any way

---

[9] The lack of allegations that the conflict was undisclosed distinguishes this case from the cases cited by the District Court on this point. *See Felton v. Morgan Stanley Dean Witter & Co.*, 429 F. Supp. 2d 684, 693 (S.D.N.Y. 2006) (complaint alleged that the conflicts "were undisclosed to Plaintiffs and the class members"); *Daniels*, 743 F. Supp. 2d at 738-39 ("this undisclosed conflict of interest is the theory on which Plaintiffs base their breach of contract claims").

depend on these allegations, which could be excised from the Complaint without any effect on the viability of Plaintiff's claims. In contrast, in cases in which undisclosed conflicts of interest were held to justify SLUSA preemption, the failure to disclose the conflict was itself the violation giving rise to the claim. For example, in *Montoya v. New York State United Teachers*, No. 10-2068, 2010 U.S. Dist. LEXIS 127101 (E.D.N.Y. Nov. 23, 2010), the court found SLUSA preemption where an undisclosed endorsement agreement creating a conflict of interest was itself "an act that violated the . . . Defendants' fiduciary obligations to the Plaintiffs and the class." *Id*. at *4. Moreover, had the defendants in that case "disclosed the relationship that is alleged to have driven the exclusive endorsement, there would be no breach of fiduciary duty alleged." *Id*. at *15.

Likewise, in *Felton*, relied on by the District Court, the crux of the plaintiff's argument was that they had contracted for unbiased investment research but instead received recommendations based on the defendant's existing or desired investment banking deals. 429 F. Supp. 2d at 693. Had the defendant disclosed the conflict, the plaintiff would have had no claim because the plaintiff would be receiving what he had been promised.

In contrast to these cases, here, it is irrelevant whether the conflict was disclosed or undisclosed. Full disclosure of Defendants' conflict of interest would not permit Defendants to redeem the AMPS at the expense of the common shareholders. The propriety of the redemptions simply does not turn on whether any conflict was

disclosed.  Therefore, the conflict of interest – even if it is considered undisclosed – does not justify SLUSA preemption.

## IV. The District Court Erred in Holding that the "In Connection With the Purchase or Sale of a Covered Security" Element of SLUSA was Satisfied

For SLUSA to bar a claim, it is not enough for the claim to allege an "untrue statement or omission of a material fact."  15 U.S.C. § 77p(b)(1).  It must also allege that the statement or omission was "in connection with the purchase or sale of a covered security."  *Id*.  A statement or omission is "in connection with" a purchase or sale when the "scheme to defraud and the sale of securities coincide."  *SEC v. Zandford*, 535 U.S. 813, 822 (2002); *see also Dabit*, 547 U.S. at 85.

Here, the District Court erred when it held that this element was met.  Opinion (A-10-A-11).  First and foremost, the Complaint does not allege any purchases or sales of securities (other than the redemptions of the AMPS by non class-members).  Indeed, the class is not defined in terms of purchases or sales but in terms of ownership.  *See* Complaint ¶ 35 (SA-31-SA-32) (class defined as "all persons and entities that were the beneficial owners of common shares of the Fund at any time from March 19, 2008 through the present").  Without a purchase or sale alleged in the Complaint, there obviously is no connection between any untrue statement or omission and a purchase or sale.  The District Court's decision should be reversed for this reason alone.[10]

---

[10] The Supreme Court's decision in *Dabit* is not to the contrary.  There, the Court found SLUSA preemption because the complaint alleged a fraud in connection with a purchase or sale, though not one by the plaintiff.  547 U.S. at 85 ("[I]t is enough that the fraud alleged 'coincide' with a securities transaction – whether by the plaintiff or by someone else.").  Here, there is no allegation of a purchase or sale by Plaintiff or anyone else.  Also, the class in *Dabit* was defined as those individuals who were fraudulently induced to hold their shares.  547 U.S. at 77.  Here,

Any attempt by Defendants to imply a purchase into the Complaint would conflict with abundant authority holding that a Complaint analyzed for SLUSA purposes must be evaluated based on the facts actually alleged.  *See Levinson*, 2010 U.S. Dist. LEXIS 137537, at *31; *Breakaway Solutions*, 2004 Del. Ch. LEXIS 125, at *33-34; *MDCM Holdings*, 216 F. Supp. 2d at 257 n.12.  Indeed, SLUSA expressly directs courts to consider what the "private party [is] *alleging*."  15 U.S.C. § 77p(b) (emphasis added); *see also MDCM Holdings*, 216 F. Supp. 2d at 257.

But even if a purchase were read into the Complaint, such a purchase would not be connected to any statements or omissions by Defendants.  The Complaint contains no allegations that Plaintiff or any member of the class ever read any of Defendants' statements, much less that they relied on them in making investment decisions.  *See Norman*, 350 F. Supp. 2d at 387 (failure by defendant brokerage firm to reveal conflict of interests tainting its research analysts' recommendations, where plaintiffs never saw the analysts' reports with the alleged misrepresentations or relied on them in any way, was not claim falling within SLUSA's purview).  In fact, the Complaint alleges that Plaintiff has owned common shares in the Fund since March 21, 2006, Complaint ¶ 5 (SA-14), *years before* the supposedly untrue statements were made.  Specifically, paragraph 13 of the Complaint refers to statements made in a June 26, 2008 document and the statement quoted in paragraph 31 comes from a document dated January 14, 2009.  *Id*. ¶¶ 13, 31

---

the class is defined simply in terms of ownership, and there is no allegation that Plaintiff or any class member held their shares in reliance on any statements or omissions by Defendants.

(SA-18, SA-26-SA27).[11]  Statements made *after* a transaction logically cannot be

connected to that transaction in the sense required by SLUSA.  *See Burns v. Prudential*

*Secs., Inc.*, 218 F. Supp. 2d 911, 915 (N.D. Ohio 2002) ("[W]here otherwise fraudulent

statements or omissions occur after the decision to buy or sell securities, those

statements or omissions are not deemed 'in connection with' such purchases or

sales.").[12]

     The lack of temporal connectivity here is similar to the facts in *Gavin*, in which

the Seventh Circuit reversed a district court's dismissal of an action on SLUSA grounds.

*Gavin* involved a merger between MediaOne and AT&T in which MediaOne

shareholders were entitled to receive a combination of AT&T stock and cash in

exchange for their MediaOne shares.  464 F.3d at 637.  After the merger was complete,

the defendant mailed a notice to the MediaOne shareholders who had not exercised

their right to receive the shares and cash.  *Id.*  The plaintiffs alleged that the notice was

---

[11] Plaintiff has moved for judicial notice of the SEC filing quoted in paragraph 31 of the
Complaint.  *See* Plaintiff's Motion for Judicial Notice.  The date of the filing is reflected in the
document.  *See id.*, Ex. A at 41.

[12] *See also Cohen v. McAllister*, 688 F. Supp. 1040, 1044 (W.D. Pa. 1988) ("Violations of §10(b) and
Rule 10b-5 can take place before and up to the time when the sales of securities take place, but
not after the investment is made."); *Citron v. Rollins Envtl. Servs., Inc.*, 644 F. Supp. 733, 736-37
(D. Del. 1986) (Plaintiff's "argument that a section 10(b) action can be maintained against [the
defendant] based on purchases or sales of stock prior to [the date of the alleged
misrepresentations] is clearly incorrect."); *Crummere v. Smith Barney, Harris Upham & Co.*, 624 F.
Supp. 751, 755 (S.D.N.Y. 1985) ("To satisfy the purchase and sale requirements of rule 10b-5,
there must be a causal connection between the misstatements or omissions and the plaintiff's
purchases or sales, and there can be no such connection where the misstatement occurs after the
purchase."); *In re Investors Funding Corp.*, 523 F. Supp. 563, 565 (S.D.N.Y. 1980) (no Section 10(b)
liability for purchases made before misrepresentations were made); *Du Pont v. Wyly*, 61 F.R.D.
615, 625 (D. Del. 1973) ("[T]he defendants are correct in their assertion that the plaintiff can only
recover for fraudulent conduct committed before [the purchase] date; subsequent conduct
would lack the requisite causal relationship to the plaintiff's purchase.").

fraudulent in that it specified a fee for the exchange service it offered, but failed to mention that shareholders could exchange their shares elsewhere at no charge. *Id*. at 637-38.

The Seventh Circuit held that alleged fraud was not "in connection with the purchase or sale of a covered security." *Id*. at 638. The plaintiffs became the beneficial owners of AT&T stock as soon as the merger was consummated, but the alleged fraud "happened afterwards" and did not implicate the federal securities laws. *Id*. As the Court explained, "[w]hat happens to shares after they are sold is 'not in connection' with the sale." *Id*. at 639. The Court acknowledged that there was a literal connection between the fraud and the stock transaction: "there is a literal sense in which anything that happens that would not have happened but for some prior event is connected to that event." *Id*. However, "a mere 'but for' cause linking a securities transaction . . . to a subsequent injury . . . does not make the injury suffered 'in connection with the purchase or sale of securities.'" *Id*.

Likewise, here, there is no meaningful connection between any statements or omissions and any purchases or sales of Fund shares. The elements of SLUSA are not satisfied here so the District Court lacked jurisdiction over the action and should have remanded the case.

## V.    The District Court's Decision is Contrary to the Purpose of SLUSA

The District Court's broad ruling is contrary to the legislative intent underlying SLUSA and the presumption that Congress did not intend to displace state law entirely. As discussed above, Congress enacted SLUSA in order "to prevent plaintiffs from

making an end run around the restrictions on suits for federal securities fraud suits introduced by the" PSLRA. *Gavin*, 464 F.3d at 640; *see also Dabit*, 547 U.S. at 81; *LaSala*, 519 F.3d at 127-28. Consistent with this legislative intent, SLUSA preempts only cases that "in essence allege securities fraud" as opposed to those that "allege other wrongs." *LaSala*, 519 F.3d at 128. In enacting SLUSA, Congress wanted to prevent plaintiffs from bringing securities fraud class actions under state law but did not intend to displace state law entirely. *See Paru*, 2006 U.S. Dist. LEXIS 28125, at *10 (applying "the well-established principle that federal preemption provisions must be read with the presumption that Congress did not intent to displace state law entirely" to reject argument of SLUSA preemption).

Plaintiffs' action is a classic shareholders' rights case – which are exclusively within the province of state law – and is therefore not the kind of case to which SLUSA applies. *See Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 98-99 (1991) ("Corporations . . . are creatures of state law . . . and it is state law which is the font of corporate directors' powers.") (internal quotation marks omitted); *Business Roundtable v. SEC*, 905 F.2d 406, 408 (D.C. Cir. 1990) (holding that an SEC rule against shareholder disenfranchisement exceeded the SEC's authority because the Securities Exchange Act of 1934 "cannot be understood to include regulation of an issue that is so far beyond matters of disclosure . . . and of the management and practices of self-regulatory organizations, and that is concededly a part of corporate governance traditionally left to the states").

The issue in this case is whether Defendants improperly favored one group of shareholders over another, which does not involve any of the elements of a fraud claim

and does not implicate any of the questions associated with fraud claims, such as falsity, scienter, or reliance. Indeed, Defendants themselves argued to the District Court that Plaintiffs' claims are "derivative in nature" and must be dismissed for failure to make a pre-suit demand on the Fund's board of directors. Dkt 17 at 2-4. By arguing that Plaintiffs' claims are "derivative in nature" because they are "based upon injuries ostensibly sustained *by the Fund*," *id*. at 2 (emphasis in original), Defendants effectively concede the inapplicability of SLUSA. In fact, federal court jurisdiction is expressly precluded on this ground by the Class Action Fairness Act of 2005 ("CAFA"). *See* 28 U.S.C. § 1332(d)(9) (excluding from CAFA's grant of federal jurisdiction state law claims concerning corporate governance);[13] *see also In re Textainer P'ship Sec. Litig.*, No. 05-0969, 2005 U.S. Dist. LEXIS 26711, at *19-21 (N.D. Cal. July 27, 2005) (holding the court lacked jurisdiction over class action asserting a breach of fiduciary duty claim arising from the proposed sale of a partnership's assets because the claim related to the "internal affairs or governance" of the partnership). Although Plaintiff of course disagrees that his claims are derivative rather than direct, that determination is one that is left to the State court to decide.

If the District Court's decision is allowed to stand and is followed by other district courts, it will put almost every shareholders' rights class action at risk of being dismissed under SLUSA. In any shareholder class action, a defendant can argue that it made some public statement that, in retrospect, could in some sense be viewed as

---

[13] Federal court jurisdiction is also precluded by CAFA on the grounds that the case involves covered securities and asserts claims relating to fiduciary duties related to or created by a security. *Id*.

inconsistent with its later conduct, or that some fact was inadequately disclosed, such that the plaintiff's claim is actually one for fraud. By finding SLUSA preemption here – in a case that turns on the propriety of the Fund's redemptions and alleges no false statements or omissions and no purchases or sales of securities – the District Court has broadened the scope of SLUSA preemption far beyond the terms of the statute, beyond Congress' intentions, and beyond the interpretations of numerous other federal courts.

## CONCLUSION

For the reasons discussed above, Plaintiffs respectfully request the Court to reverse the decision of the District Court and remand the case with instructions to vacate all previous rulings in the litigation and remand the case to Illinois state court.

Dated: May 16, 2011

Respectfully submitted:

By: /s/ Carol V. Gilden

Carol V. Gilden
Cohen Milstein Sellers & Toll PLLC
190 South LaSalle Street, Suite 1705
Chicago, Illinois 60603
t: (312) 357-0370
f: (312) 357-0369
cgilden@cohenmilstein.com

Steven J. Toll
Joshua S. Devore
Joshua M. Kolsky
Cohen Milstein Sellers & Toll PLLC
1100 New York Avenue, NW
Suite 500, West Tower
Washington, DC 20005
t:  (202) 408-4600
f:  (202) 408-4699
stoll@cohenmilstein.com
jdevore@cohenmilstein.com
jkolsky@cohenmilstein.com

Lynn L. Sarko
Keller Rohrback, LLP
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
t: (206) 623-1900
f: (206) 623-3384
lsarko@kellerrohrback.com

Gary Gotto
James A. Bloom
Keller Rohrback, P.L.C.
3101 North Central Avenue, Suite 1400
Phoenix, Arizona 85012
t: (602) 248-0088
f: (602) 248-2822
ggotto@krplc.com
jbloom@krplc.com

*Attorneys for Plaintiff-Appellant Christopher Brown*

**CIRCUIT RULE 30(d) STATEMENT**

Pursuant to Seventh Circuit Rule 30(d), the undersigned hereby certifies that all

materials required by Circuit Rule 30(a) and Circuit Rule 30(b) are included in the

appendices.

/s/ Carol V. Gilden
Carol V. Gilden
*Attorney for Plaintiff-Appellant*
*Christopher Brown*

## CERTIFICATE OF SERVICE

I hereby certify that on May 16, 2011, the Brief and Short Appendix of Plaintiff-Appellant was filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system.

The following participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system and one courtesy paper copy will be sent  via first-class mail, proper postage prepaid:

Michael F. Derksen
Morgan, Lewis & Bockius
77 W. Wacker Drive
Fifth Floor
Chicago, IL 60601


I further certify that the following participants in the case are not registered CM/ECF users. On May 16, 2011, two copies of the Brief and Short Appendix of Plaintiff-Appellant was sent via first-class mail, proper postage prepaid to the following non-CM/ECF participants:

John W. Rotunno
K&L Gates LLP
70 W. Madison Street
Suite 3100
Chicago, IL 60602


/s/ Carol V. Gilden
Carol V. Gilden

# APPENDIX

## **Table of Contents**

1.  Minute Order, Filed March 14, 2011
    (Docket Entry No. 30) ........................................................................ A-1

2.  Memorandum Opinion and Order, Filed March 14, 2011
    (Docket Entry No. 31) ........................................................................ A-2

3.  Entered Judgment in a Civil Case, Filed March 14, 2011
    (Docket Entry No. 32) ...................................................................... A-12

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 4.2
### Eastern Division

Christopher Brown

                                   Plaintiff,

v.                                          Case No.: 1:10–cv–06558

                                          Honorable Elaine E. Bucklo

John P. Calamos, Sr., et al.

                                   Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Monday, March 14, 2011:

      MINUTE entry before Honorable Elaine E. Bucklo: For the reasons set forth in the Memorandum Opinion and Order, I conclude that this action is barred by SLUSA. Plaintiff's motion to remand (22) is denied. Defendants' omnibus motion (16) to dismiss is granted. All other motions are denied as moot. Status hearing set for 3/18/11 is now vacated. Civil case terminated. Mailed notice(mpj, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at *www.ilnd.uscourts.gov*.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


CHRISTOPHER BROWN, individually and    )
on behalf of all others similarly      )
situated,                              )
                                       )
          Plaintiff,                   )
     v.                                )    No. 10 C 6558
                                       )
JOHN P. CALAMOS, SR. Trusted of the    )
Calamos Convertible Opportunities      )
and Income Fund, WESTON W. MARSH,      )
Trustee of the Calamos Convertible     )
Opportunities and Income Fund, JOE     )
F. HANAUER, former Trustee of the      )
Calamos Convertible Opportunities      )
and Income Fund, JOHN E. NEAL,         )
Trustee of the Calamos Convertible     )
Opportunities and Income Fund,         )
WILLIAM R. RYBAK, Trustee of the       )
Calamos Convertible Opportunities      )
and Income Fund, STEPHEN B. TIMBERS,   )
Trustee of the Calamos Convertible     )
Opportunities and Income Fund, DAVID   )
D. TRIPPLE, Trustee of the Calamos     )
Convertible Opportunities and Income   )
Fund, CALAMOS ADVISORS, LLC, an        )
investment advisor and Delaware        )
Limited Liability company, CALAMOS     )
ASSET MANAGEMENT, INC., a Delaware     )
corporation and publicly-held          )
holding company, CALAMOS CONVERTIBLE   )
OPPORTUNITIES AND INCOME FUND, a       )
Delaware statutory trust, and JOHN     )
AND JANE DOES 1-100,                   )
                                       )
          Defendants.                  )


MEMORANDUM OPINION AND ORDER

     Plaintiff Christopher Brown filed this action in Cook

County Circuit Court on behalf of a class comprised of

1

A-2

common    shareholders    of    the    Calamos    Convertible
Opportunities and Income Fund (the "Fund").  The complaint
alleges that defendants breached their fiduciary duty to
the Fund's common shareholders, and were unjustly enriched,
by causing the Fund to redeem certain preferred shares in a
manner that unfairly benefited the preferred shareholders
at the expense of the common shareholders.  Defendants
removed the case to this court, then moved to dismiss,
arguing that the Securities Litigation Uniform Standards
Act of 1998, 15 U.S.C. §§ 77p and 78bb ("SLUSA"), permits
the  removal  of,  and  precludes,  plaintiff's  claim.[1]
Plaintiff disputes the applicability of SLUSA and has moved
to remand to state court.  For the reasons that follow, I
deny plaintiff's motion for remand and grant defendants'
motion to dismiss.

I.

The basic story plaintiff tells is this: the Fund is
an investment company that issued both common shares and
auction market preferred shares ("AMPS").  AMPS provided
certain advantages not only to the holders of those shares,

---

[1] In addition to an "omnibus" motion based on SLUSA in which
all defendants join, certain defendants have asserted
additional bases for dismissal in separate motions.
Because I agree that dismissal based on SLUSA is warranted,
I need not address the issues presented in the remaining
motions to dismiss.

2

A-3

but also to the holders of common shares. The complaint
explains that the AMPS "represented quite favorable
financing for the Fund's common shareholders," because,
among other reasons, the AMPS "had no maturity and did not
ever have to be repaid." Compl. at ¶ 2. Indeed, plaintiff
alleges that the Fund stated publicly that "a key piece of
the return to the Fund's common shareholders was financial
leverage," and that one of the "significant benefits" of
investing in the Fund was "leverage that would continue
indefinitely, because...the term of the AMPS was
perpetual." *Id.* at ¶ 13.

Notwithstanding these representations, defendants
caused the Fund to redeem all of the outstanding AMPS
between June of 2008 and August of 2009, and to replace
them with financing that was less advantageous for common
shareholders. Compl. at ¶ 25. The complaint alleges that
the Fund had no valid business reason to redeem the AMPS.
*Id.* After the financial meltdown of 2008, however, which
caused the auction mechanism that had previously provided
liquidity to the AMPS to fail, defendants decided to redeem
the AMPS "to provide liquidity to the holders of the AMPS
and...to placate their investment banks and brokers." *Id.*
at ¶ 27. Plaintiff explains that the investment banks and
brokers who had sold the AMPS to investors were "a key

3

A-4

part" of a business model from which defendants reaped significant economic benefits. *Id.* at ¶¶ 27, 14-19. Accordingly, defendants had an economic interest in maintaining their relationships with these banks and brokers, which they did at the expense of, and in violation of their fiduciary duties to, the common shareholders. *Id.* at 27.

II.

Congress enacted SLUSA to remediate an "unintended consequence" of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), which was a spike in previously rare state-court litigation of class actions involving nationally traded securities. *Merrill Lynch, Pierce, Fenner & Smith Inc., v. Dabit*, 547 U.S. 71, 82 (2006). The goal of the PSLRA was to curb nuisance suits and other perceived abuses of securities class actions. *Id.* at 81-82. But rather than stem the tide of such suits, the PSLRA prompted some plaintiffs (or rather their lawyers) to avoid the PSLRA's stringent pleading requirements and other provisions designed to ward off meritless suits by simply reformulating their claims as state law causes of action and bringing them in state courts. *Id.* To prevent private plaintiffs from frustrating the objectives of the PSLRA in this way, Congress enacted SLUSA, which provides:

4

A-5

No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging-

(1) an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security; or

(2) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security

15 U.S.C. § 77p(b).

SLUSA thus precludes any suit that: 1) is a "covered class action" (i.e., an action seeking damages on behalf of more than fifty people); 2) is based on state law; 3) alleges a misrepresentation or omission of a material fact, or the use of any manipulative or deceptive device or contrivance; 4) in connection with the purchase or sale of a covered security. *Rabin v. JPMorgan Chase Bank, N.A.*, 06 C 5452, 2007 WL 2295795 at *5 (N.D. Ill. 2007) (Hibbler, J.).

"Consistent with Congress's intent, courts construe SLUSA's 'expansive language broadly' to prevent frustration of the PSLRA's objectives." *Daniels v. Morgan Asset Management, Inc.*, ---F. Supp. 2d---, 2010 WL 4024604 at *5 (W.D. Tenn. Sept 30, 2010) (quoting *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305 (6th Cir. 2009)). In particular, the Supreme Court held in *Dabit* that the "in connection

with the purchase or sale of securities" requirement should be construed broadly to preclude suits by holders of securities, not just purchasers and sellers. 547 U.S. at 86–87.

III.

Plaintiff does not dispute that this is a "covered class action," that it is based on state law, or that the securities in question are "covered securities." He argues, however, that the complaint does not allege any misrepresentation in connection with the purchase or sale of a security. Defendants insist that, to the contrary, alleged misrepresentations are at the heart of plaintiff's claims.

Defendants argue that the "overarching theme" of the complaint is that defendants misled common shareholders by portraying the financing provided by AMPS as a significant benefit that they would enjoy "indefinitely," but later redeemed the AMPS in favor of less favorable financing. Defendants liken this case to numerous others in which courts have dismissed claims that they concluded amounted to "a securities fraud wolf dressed up in a [state law] sheep's clothing." *See*, e.g., *Daniels*, 2010 WL 4024604 at *9 (dismissing breach of contract and breach of fiduciary duties claims); *Kurz v. Fidelity Management & Research Co.*,

6

No. 07-cv-709-JPG, 2008 WL 2397582 (S.D. Ill. June 10,
2008) (dismissing breach of contract claim), *aff'd*, 556
F.3d 639 (7th Cir. 2009)); *Kutten v. Bank of America*, N.A.,
No. 06-0937 (PAM), 2007 WL 2485001 at *6 (E.D. Mo. Aug, 29,
2007) (dismissing breach of fiduciary duty claims), *aff'd*,
530 F.3d 669 (8th Cir. 2008); *Felton v. Morgan Stanley Dean
Witter & Co.*, 429 F. Supp. 2d 684, 693 (S.D.N.Y 2006)
(dismissing breach of contract claim).

Plaintiff disputes that the complaint alleges any
misrepresentation or omission by defendants and points to
the allegation that expressly states, "[p]laintiff does not
assert by this action any claim arising from a misstatement
or omission in connection with the purchase or sale of a
security, nor does Plaintiff allege that Defendants engaged
in fraud in connection with the purchase or sale of a
security." Compl. At ¶ 4.  Of course, this type of
disclaimer is of little moment, since whether SLUSA applies
turns on "the substance rather than the form of a claim."
*Kurz* 2008 WL 2397582 at *3 (S.D. Ill. June 10, 2008)
(citing, *inter alia*, *Dabit v. Merrill Lynch, Pierce, Fenner
& Smith, Inc.*, 395 F.3d 25, 34 (2d Cir. 2005) and *Miller v.
Nationwide Life Ins. Co.*, 391 F.3d 698, 702 (5th Cir.
2004)); *see also Kutten*, 2007 WL 2485001 at *4 ("[e]ven
where plaintiffs attempt to conceal claims based on the

7

A-8

misrepresentation or omission of material facts with state law labels, courts disregard such labels and dismiss the claims as preempted by SLUSA"). Accordingly, regardless of how a plaintiff characterizes his or her claims, if they include the "covered concepts" of misrepresentations or material omissions, they must be dismissed. *Daniels*, 2010 WL 4024604 at *7 (citations omitted).

Here, plaintiff's claims plainly include the "covered concepts," alleging both misrepresentations (that the AMPS were "perpetual") and omissions (defendants' undisclosed conflict of interest). Plaintiff's argument that he does not allege misrepresentations because defendants' alleged statements characterizing the AMPS as "perpetual" and "indefinite" were "true when they were made" is unavailing. Even if I accept plaintiff's cleverly wrought argument that these statements can be considered to have been "true" in some fleeting sense, there is no question that by the time plaintiff's claim accrued, any "truth" the statements may once have had had plainly evaporated. In fact, had the alleged statements about the "perpetual" nature of the AMPS been true in any meaningful sense, plaintiff presumably would have no claim at all, since the AMPS would never have been redeemed in the first place. Simply put, the alleged

8

misstatements are at the heart of plaintiff's claims, which thus fall squarely within SLUSA's broad sweep.

Plaintiff's further allegations that undisclosed conflicts of interest drove defendants' decision to redeem the AMPS reinforces this conclusion. *See Felton v. Morgan Stanley Dean Witter & Co.*, 429, F. Supp. 2d 684, 693 (S.D.N.Y. 2006) (securities broker's undisclosed conflict of interest was "a quintessential example of a fraudulent omission of a material fact under the federal securities laws."); *Daniels*, 2010 WL at *13 (barring state law claims under SLUSA where undisclosed conflicts of interests allegedly caused the plaintiff's injury).

Plaintiff's argument that the alleged misrepresentations and omissions are merely background facts, rather than the basis for his claim, is similarly unavailing. SLUSA preemption "does not turn on whether allegations are characterized as facts or as essential legal elements of a claim, but rather on whether the SLUSA prerequisites are 'alleged' in one form or another." *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 300 (3rd Cir. 2005). And his argument that the alleged misrepresentations are not "in connection with the purchase or sale" of plaintiff's securities is without merit in view

A-10

of the Supreme Court's broad construction of this phrase in *Dabit.* 547 U.S. at 86-87.

Most telling of all, perhaps, is the striking absence of *any* authority in which claims such as those plaintiff asserts were allowed to proceed under state law. Indeed, plaintiff's eight page memorandum in support of its motion for remand cites not a single case from any court.

IV.

For the foregoing reasons, I conclude that this action is barred by SLUSA. Plaintiff's motion to remand is denied. Defendants' omnibus motion to dismiss is granted. All other motions are denied as moot.

ENTER ORDER:

_____
        **Elaine E. Bucklo**
    United States District Judge

Dated: March 14, 2011

A-11

Case: 11-1785     Document: 11     Filed: 05/16/2011     Pages: 55
Case: 1:10-cv-06558 Document #: 32  Filed: 03/14/11 Page 1 of 1 PageID #:197
AO 450(Rev. 5/85)Judgment in a Civil Case

# United States District Court
## Northern District of Illinois
### Eastern Division

Brown

**JUDGMENT IN A CIVIL CASE**

v.

Case Number: 10 C 6558

Calamos, Sr., et al.

☐    Jury Verdict.  This action came before the Court for a trial by jury.  The issues have been tried and the jury rendered its verdict.

■    Decision by Court.  This action came to hearing before the Court.  The issues have been heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that this action is barred by SLUSA. Plaintiff's motion to remand  is denied.  Defendants' omnibus motion  to dismiss the complaint is granted and it is so ordered.

Michael W. Dobbins, Clerk of Court

Date: 3/14/2011

_____
/s/ Mathew P. John, Deputy Clerk

A-12