## No. 11-1785

# In the
# United States Court of Appeals
## for the Seventh Circuit

———————————◆———————————

CHRISTOPHER BROWN, Individually and on Behalf of
All Others Similarly Situated,

*Plaintiff-Appellant,*

v.

JOHN P. CALAMOS, SR., Trustee of the Calamos
Convertible Opportunities and Income Fund, et al.,

*Defendants-Appellees.*

———————————————————————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division, No. 1:10-cv-6558.
The Honorable **Elaine E. Bucklo**, Judge Presiding.

## BRIEF AND SUPPLEMENTAL APPENDIX
## OF DEFENDANTS-APPELLEES

JOHN W. ROTUNNO
PAUL J. WALSEN
MOLLY K. MCGINLEY
K&L GATES LLP
70 West Madison Street, Suite 3100
Chicago, Illinois 60602-4207
(312) 372.1121

*Attorneys for Defendants-Appellees
Weston W. Marsh, Joe F. Hanauer, John E.
Neal, William R. Rybak,  Stephen B.
Timbers, David D. Tripple  and Calamos
Convertible Opportunities and Income Fund*

CHRISTIAN J. MIXTER
PATRICK D. CONNER
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
(202) 739.3000

MICHAEL F. DERKSEN
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, Illinois 60601-5094
(312) 324.1000

*Attorneys for Defendants-Appellees
John P. Calamos, Sr., Calamos Advisors
LLC and Calamos Asset Management, Inc.*

## ORAL ARGUMENT REQUESTED

 

**CIRCUIT RULE 26.1    DISCLOSURE STATEMENT**

Appellate Court No: 11-1785

Short Caption: Brown v. Calamos, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**[  ]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Weston W. Marsh, Joe F. Hanauer, John E. Neal, William R. Rybak, Stephen B. Timbers, David D. Tripple, and

Calamos Convertible Opportunities and Income Fund

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

K&L Gates LLP

(3)  If the party or amicus is a corporation:

  i)  Identify all its parent corporations, if any; and

  Calamos Convertible Opportunity and Income Fund (the "Trust") is a Delaware Statutory Trust and has no parent corporation.

  ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

  Bank of New York Mellon and Merrill Lynch Pierce Fenner & Smith each hold more than 10% of the outstanding shares issued by the Trust.

Attorney's Signature: /s/ John W. Rotunno          Date: April 25, 2011

Attorney's Printed Name: John W. Rotunno (Counsel of Record) Paul J. Walsen (admission pending)/Molly K. McGinley

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** [X]    **No** [  ]

Address: 70 West Madison Street, Suite 3100

Chicago, Illinois 60602

Phone Number: 312-807-4213          Fax Number: 312-827-8154

E-Mail Address: john.rotunno@klgates.com

rev. 01/08 AK

i

## CIRCUIT RULE 26.1   DISCLOSURE STATEMENT

Appellate Court No: 11-1785

Short Caption: Brown v. Calamos, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R.  App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[✔]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

John P. Calamos, Sr., Calamos Advisors, LLC, and Calamos Asset Management, Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Morgan, Lewis & Bockius LLP

(3)    If the party or amicus is a corporation:

    i)    Identify all its parent corporations, if any; and

Calamos Advisors, LLC is an indirect, wholly-owned subsidiary of Calamos Asset Management, Inc. ("CAM")

    ii)    list any publicly held company that owns 10% or more of the party's or amicus' stock:

CAM is a publicly-traded corporation owning 10% or more of the stock of Calamos Advisors, LLC

Attorney's Signature: /s/ Michael F. Derksen    Date: June 15, 2011

Attorney's Printed Name: Michael F. Derksen

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes [ ]    No [X]

Address: 77 W. Wacker Drive, Fifth Floor

Chicago, IL 60601

Phone Number: 312-324-1000    Fax Number: 312-324-1001

E-Mail Address: mderksen@morganlewis.com

ii

rev. 01/08 AK

**CIRCUIT RULE 26.1    DISCLOSURE STATEMENT**

Appellate Court No: 11-1785

Short Caption: Brown v. Calamos, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    **[✓]    PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH  INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

    John P. Calamos, Sr., Calamos Advisors, LLC, and Calamos Asset Management, Inc.

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including  proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Morgan, Lewis & Bockius LLP

(3)   If the party or amicus is a corporation:

    i)   Identify all its parent corporations, if any; and

       Calamos Advisors, LLC is an indirect, wholly-owned subsidiary of Calamos Asset Management, Inc. ("CAM")

    ii)  list any publicly held company that owns 10% or more of the party's or amicus' stock:

       CAM is a publicly-traded corporation owning 10% or more of the stock of Calamos Advisors, LLC

Attorney's Signature:   /s/ Christian J. Mixter    Date: June 15, 2011

Attorney's Printed Name: Christian J. Mixter

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** [X]  **No** [ ]

Address: Morgan, Lewis & Bockius, LLP

    1111 Pennsylvania Avenue, N.W., Washington, D.C. 20004

Phone Number: 202-739-5594    Fax Number: 877-432-9652

E-Mail Address: cmixter@morganlewis.com

rev. 01/08 AK

# TABLE OF CONTENTS

Page

JURISDICTIONAL STATEMENT ..................................................................... 1

STATEMENT OF THE ISSUE ........................................................................... 1

STATEMENT OF THE CASE ............................................................................ 2

STATEMENT OF FACTS .................................................................................. 5

SUMMARY OF ARGUMENT ........................................................................... 11

ARGUMENT ..................................................................................................... 14

    I.    SLUSA MUST BE CONSTRUED BROADLY, TO
        EFFECTUATE ITS PURPOSES ................................................. 14

    II.   PLAINTIFF DID NOT DISPUTE BELOW, AND DOES NOT
        DISPUTE ON APPEAL, THAT THREE OF THE FOUR
        CONDITIONS FOR SLUSA REMOVAL AND PRECLUSION
        ARE SATISFIED .......................................................................... 17

    III.  THE DISTRICT COURT CORRECTLY CONCLUDED THAT
        SLUSA'S FOURTH CONDITION ALSO IS SATISFIED ........... 18

        A.   The Complaint Alleges Misrepresentations And
              Omissions Of Material Fact Within The Meaning Of
              SLUSA ................................................................................... 19

              1.   Misrepresentations Of Material Fact ....................... 19

              2.   Omissions Of Material Fact ...................................... 26

        B.   Brown Cannot Evade SLUSA Preclusion By Claiming
              Now That His Own Allegations Are "Immaterial" Or
              Unnecessary To His Claims ................................................ 32

              1.   Brown's "Necessary Component" Argument Has
                    Been Waived.............................................................. 33

              2.   Alternatively, The "Necessary Component Test"
                    Relied Upon By Brown Should Be Rejected ............. 33

3.    Brown's Allegations Are, In Any Event, A Factual Predicate Of His Claims ........................................... 38

C.    SLUSA'S "In Connection With" Requirement Is Squarely Met ...................................................... 42

IV.    SLUSA'S PURPOSES ARE FULLY SERVED BY THE DISMISSAL OF THIS CASE ....................................... 48

CONCLUSION ................................................................ 54

CERTIFICATE OF COMPLIANCE ................................................. 56

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Anderson v. Merrill Lynch Pierce Fenner & Smith*,
   521 F.3d 1278 (10th Cir. 2008)............................................. 38, 41, 46, 53

*Arlin-Golf, LLC v. Vill. of Arlington Heights*,
   631 F.3d 818 (7th Cir. 2011)..................................................................... 33

*Atkinson v. Morgan Asset Mgmt., Inc.*,
   664 F. Supp. 2d 898 (W.D. Tenn. 2009).......................................... 35, 49

*Beckett v. Mellon Investor Servs., Inc.*,
   No. C06-5245, 2006 WL 3249189 (W.D. Wash. Nov. 8, 2006),
   *aff'd in relevant part*, 329 Fed. Appx. 721 (9th Cir. 2009) ........ 24, 28, 32

*Belom v. Nat'l Futures Ass'n*,
   284 F.3d 795 (7th Cir. 2002).................................................................... 33

*Benihana of Tokyo, Inc. v. Benihana, Inc.*
   891 A.2d 150 (Del. Ch. 2005)................................................................... 40

*Borsellino v. Goldman Sachs Group, Inc.*,
   477 F.3d 502 (7th Cir. 2007).................................................................... 35

*Conn. Nat'l Bank v. Germain*,
   503 U.S. 249 (1992).................................................................................. 36

*Daniels v. Morgan Asset Mgmt., Inc.*
   743 F. Supp. 2d 730 (W.D. Tenn. 2010).......................................... 19, 31

*Dommert v. Raymond James Fin. Servs., Inc.*,
   No. 06-cv-102, 2007 WL 1018234 (E.D. Tex. May 29, 2007) ................ 39

*Feht v. Price Co.*,
   70 F.3d 1078 (9th Cir. 1995).................................................................... 22

*Felton v. Morgan Stanley Dean Witter & Co.*,
   429 F. Supp. 2d 684 (S.D.N.Y. 2006) ..................................................... 24

*Gantchev v. Predicto Mobile, LLC*,
    No. 09-2312, 2009 WL 3055317 (N.D. Ill. Sept. 18, 2009) ..................... 46

*Gavin v. AT&T Corp.*,
    464 F.3d 634 (7th Cir. 2006) ........................................................ 47, 48, 49

*Gray v. Seaboard Securities, Inc.*,
    126 Fed. Appx. 14 (2d Cir. 2005) ............................................................ 37

*Green v. Nuveen Advisory Corp.*,
    295 F.3d 738 (7th Cir. 2002) ............................................................ 27, 44

*Grobow v. Perot*,
    539 A.2d 180 (Del. 1988), *overruled on other grounds*,
    *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000) ........................................... 41

*Hanson v. Morgan Stanley Smith Barney, LLC*,
    No. 10-cv-06945, 2011 WL 311011 (C.D. Cal. Jan. 18, 2011) ............... 34

*Hicks v. Midwest Transit, Inc.*,
    500 F.3d 647 (7th Cir. 2007) .................................................................. 33

*In re Lord Abbett Mut. Funds Fee Litig.*,
    553 F.3d 248 (3d Cir. 2009) ................................................................... 41

*In re Mut. Funds Inv. Litig.*,
    309 Fed. Appx. 722 (4th Cir. 2009), *cert. denied*,
    130 S. Ct. 65 (2009) ............................................................................... 25

*In re Mut. Funds Inv. Litig.*,
    384 F. Supp. 2d 845 (D. Md. 2005) ........................................................ 38

*Instituto de Prevision Militar v. Lehman Bros., Inc.*,
    485 F. Supp. 2d 1340 (S.D. Fla. 2007) ................................................... 53

*Jackson v. N'Genuity Enters., Co.*,
    No. 09-6010, 2010 WL 4628668 (N.D. Ill. Nov. 8, 2010) ....................... 23

*Katz v. Gerardi*,
    552 F.3d 558 (7th Cir. 2009) ........................................................ 5, 24, 49

*Kircher v. Putnam Funds Trust*,
    398 Ill. App. 3d 664, 922 N.E. 2d 1164 (5th Dist. 2010) ........................ 30

*Kircher v. Putnam Funds Trust*, 403 F.3d 478 (7th Cir. 2005),
    *vacated for lack of appellate jurisdiction*, 547 U.S. 633 (2006) ...... passim

*Kurz v. Fid. Mgmt. & Research Co.*,
    No. 07-cv-709, 2008 WL 2397582 (S.D. Ill. June 10, 2008),
    *aff'd*, 556 F.3d 639 (7th Cir. 2009) ............................................. 19, 24, 25

*Kutten v. Bank of America, N.A.*,
    530 F.3d 669 (8th Cir. 2008), *cert. denied*, 129 S. Ct. 598 (2008) ......... 25

*LaSala v. Bordier et Cie*,
    519 F.3d 121 (3d Cir. 2008) .................................................... 37

*LaSala v. UBS, AG*,
    510 F. Supp. 2d 213 (S.D.N.Y. 2007) ...................................... 37

*Local 15, Int'l Broth. of Elec. Workers v. Exelon Corp.*,
    495 F.3d 779 (7th Cir. 2007)................................................... 33

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
    437 F.3d 588 (7th Cir. 2006), *rev'd on other grounds*,
    551 U.S. 308 (2007)............................................................... 22

*McMullin v. Beran*
    765 A.2d 910 (Del. 2000)........................................................ 40

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*,
    547 U.S. 71 (2006)...........................................................passim

*Miller v. Nationwide Life Ins. Co.*,
    391 F.3d 698 (5th Cir. 2004)................................................... 35

*Norman v. Salomon Smith Barney Inc.*,
    350 F. Supp. 2d 382 (S.D.N.Y. 2004) ...................................... 46

*Off v. Ross*,
    No. 3468-VCP, 2008 WL 5053448 (Del. Ch. Nov. 26, 2008) .................. 40

*Panter v. Marshall Field & Co.*,
    646 F.2d 271 (7th Cir. 1981).................................................... 49

*Potter v. Janus Inv. Fund*,
    483 F. Supp. 2d 692 (S.D. Ill. 2007) .................................... 23, 53

*Rabin v. JPMorgan Chase Bank, N.A.*,
　　No. 06-cv-5452, 2007 WL 2295795 (N.D. Ill. Aug. 3, 2007) ............ 24, 25

*Radaszewski ex rel. Radaszewski v. Maram*,
　　383 F.3d 599 (7th Cir. 2004) ..................................................................... 8

*Romano v. Kazacos*,
　　609 F.3d 512 (2d Cir. 2010) ..................................................................... 24

*Rowinski v. Salomon Smith Barney, Inc.*,
　　398 F.3d 294 (3d Cir. 2005) ................................................... 10, 36, 37, 43

*Santa Fe Indus., Inc. v. Green*,
　　430 U.S. 462 (1977) ................................................................................... 49

*Segal v. Fifth Third Bank*,
　　581 F.3d 305 (6th Cir. 2009) ................................................... 23, 34, 37, 51

*Siepel v. Bank of America*,
　　526 F.3d 1122 (8th Cir. 2008) ................................................................. 31

*Smit v. Charles Schwab & Co., Inc.*,
　　No. 10-cv-03971, 2011 WL 846697 (N.D. Cal. March 8, 2011) ........ 20, 21

*Stevens v. Umsted*,
　　131 F.3d 697 (7th Cir. 1997) ................................................................... 17

*Stoody-Broser v. Bank of America, N.A.*,
　　No. C08-02705, 2009 WL 2707393 (N.D. Cal. Aug. 25, 2009),
　　*aff'd in relevant part*, No. 09-17112, 2011 WL 2181364
　　(9th Cir. June 6, 2011) ............................................................. 25, 32, 50

*U.S. Mortg., Inc. v. Saxton*
　　494 F.3d 833 (9th Cir. 2007) ................................................................... 46

*United States v. Clintwood Elkhorn Mining Co.*,
　　553 U.S. 1 (2008) ....................................................................................... 36

*United States v. O'Hagan*
　　521 U.S. 642 (1997) ................................................................................... 46

*Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*,
　　341 F. Supp. 2d 258 (S.D.N.Y. 2004) ...............................................passim

## Statutes

15 U.S.C. § 77p ................................................................................passim

15 U.S.C. § 77z-1 ........................................................................... 14

15 U.S.C. § 78bb ..............................................................................passim

15 U.S.C. § 78j ............................................................................... 16

15 U.S.C. § 78u-4 ........................................................................... 14

15 U.S.C. § 80a-13 .......................................................................... 40

15 U.S.C. § 80a-8 ............................................................................ 39

17 C.F.R. § 240.10b-5 ..................................................................... 16

28 U.S.C. § 1332 ............................................................................... 4

## Other Authorities

H.R. Rep. No. 104-369 (1995) ........................................................ 14

In the Matter of Calamos Convertible Opportunities and Income Fund,
    et al., Investment Company Act of 1940 Release No. 28615
    (Feb. 10, 2009) .......................................................................... 8

S. Rep. No. 105-182 (1998) ............................................................ 14

# JURISDICTIONAL STATEMENT

The jurisdictional statement in Plaintiff-Appellant's Brief is not complete and correct.

The District Court possessed subject matter jurisdiction over this action pursuant to the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), in that (1) the action is a "covered class action"; (2) the action is based upon state statutory or common law; (3) the action concerns a "covered security"; and (4) the Complaint alleges "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security," all within the meaning of SLUSA.  15 U.S.C. §§ 77p(b), (c) and 78bb(f)(1), (2).

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, in that this is an appeal from a final decision and judgment of the District Court dismissing the action pursuant to SLUSA and disposing of all claims asserted therein.  The judgment of the District Court was entered on March 14, 2011 (Judgment, A-12), and Plaintiff-Appellant timely filed a Notice of Appeal from the judgment on April 4, 2011.  (Dkt. 33)

# STATEMENT OF THE ISSUE

SLUSA permits the removal of and precludes "covered class actions" brought under state law that allege a misrepresentation or omission of material fact "in connection with" the purchase or sale of "covered securities." The Complaint in this case alleges purported state law claims on behalf of a

"covered class" comprised of beneficial owners of closed-end fund common shares constituting "covered securities" within the meaning of SLUSA. The issue on appeal is whether the District Court correctly denied a motion to remand and dismissed the action pursuant to SLUSA where the Complaint alleged, in summary: (1) that the mutual fund publicly represented that investment leverage provided by auction rate preferred shares "would continue indefinitely" but then instead redeemed the preferred shares, (2) that the redemption allegedly was undertaken to serve the economic interests of certain of the defendants, and (3) that the redemption allegedly defeated "a significant feature of the investment rationale for the common shareholders" of the mutual fund, depriving common shareholders of "the benefits of an investment in the fund, as described in the Fund's statements to the SEC and the public," and causing a loss in the value of fund common shares.

## STATEMENT OF THE CASE

Plaintiff Christopher Brown purports to sue on behalf of a putative class comprised of persons who were beneficial owners of common shares of the Calamos Convertible Opportunities and Income Fund (the "Fund") during the period from March 19, 2008 to the present. The Fund is a Delaware statutory trust and a closed-end investment company registered under the Investment Company Act of 1940, as amended (the "ICA"). (SA-13 at ¶1; SA-15 at ¶ 6(k); SA-16 at ¶9) Plaintiff claims that the Fund publicly

represented, *inter alia*, that investors would "indefinitely" enjoy the benefits of investment leverage provided by auction market preferred shares ("AMPS")[1] issued by the Fund (SA-18 at ¶13), but that the Fund instead redeemed the shares following the collapse of the AMPS auction market. (SA-22-23 at ¶25)  It is alleged that the Defendants caused the Fund to redeem the AMPS in order "to provide liquidity to the holders of the AMPS and likely as an attempt to placate their investment banks and brokers (who would thereby be protected from. . .liability for the illiquidity of the AMPS and from the risk that they would be required to buy the redeemed AMPS from the holders). . . ."  (SA-23 at ¶27)  The redemption of the AMPS is alleged to have deprived common shareholders of the benefit of low cost, "perpetual" investment leverage and caused a decline in the value of Fund common shares. (SA-18 at ¶13; SA-31 at ¶34(d), (e); SA-33 at ¶42; SA-34 at ¶45)

The Complaint is pleaded in three counts, alleging breach of fiduciary duty, aiding and abetting breach of fiduciary duty, and unjust enrichment. Defendant-Appellee Calamos Advisors, LLC, is the investment adviser to the Fund, and Calamos Asset Management, Inc. is the adviser's corporate parent.

---

[1]     The Complaint refers to the auction rate preferred shares issued by the Fund by two different acronyms, "AMPS" and "ARS."  This Brief will refer to the shares as "AMPS," which is the terminology used by the District Court in its decision below.

(These entities are referred to collectively in the Complaint as the "Calamos Sponsorship Group." (SA-18 at ¶14)) Defendants-Appellees Weston W. Marsh, John E. Neal, William Rybak, Stephen B. Timbers and David D. Tripple are Independent Trustees of the Fund; Defendant-Appellee Joe F. Hanauer is a former Independent Trustee. (SA-14-15 at ¶6(b)-(g)) Defendant-Appellee John P. Calamos, Sr., is a Trustee of the Fund and an employee of the Calamos Sponsorship Group. (SA-14 at ¶6(a); SA-20 at ¶16)

This is the second of two similar actions filed by Brown. (Docketing Stmt. at ¶4) The first was filed in the United States District Court for the Northern District of Illinois on July 15, 2010, invoking federal jurisdiction under the Class Action Fairness Act ("CAFA"). Plaintiff then thought better of his choice of a federal forum and voluntarily dismissed the case on September 7, 2010. (*Id.*) Plaintiff re-filed in the Circuit Court of Cook County, Illinois, a week later, alleging this time that CAFA jurisdiction did not exist "because the claims concern covered securities" -- a reference to a CAFA exclusion (appearing in 28 U.S.C. § 1332(d)(9)(A)) incorporating provisions in SLUSA.[2] (SA-15-16 at ¶8)

---

[2] CAFA excludes claims "concerning a covered security as defined under [section] 16(f)(3) of the Securities Act of 1933 (15 U.S.C. [77p(f)(3)]) and section 28(f)(5)(E) of the Securities Exchange Act of 1934 (15 U.S.C. 78bb(f)(5)(E))." 28 U.S.C. § 1332(d)(9)(A). The definitions of "covered security" incorporated in this exclusion from CAFA were added to the Securities Act of 1933 (the "1933 Act") and the Securities Exchange Act of 1934 (the "1934 Act") by SLUSA. They define the

Defendants timely removed the case to the Northern District of Illinois on October 13, 2010, pursuant to SLUSA.  (Dkt. 1)  Following removal, Defendants moved to dismiss pursuant to SLUSA (as well as on several alternative grounds), and Plaintiff responded with a motion to remand. (Dkt. 16, 22)  On March 14, 2011, the District Court held that the case was properly removed and that the claims pleaded in the Complaint are precluded by SLUSA.  (A-2-11)  The District Court therefore denied Plaintiff's motion to remand, granted Defendants' motion to dismiss pursuant to SLUSA, and entered judgment for Defendants.  (A-12)  Plaintiff filed a notice of appeal from the judgment on April 4, 2011.  (Dkt. 33)

## STATEMENT OF FACTS

Brown has been an owner of common shares of the Fund since 2006. (SA-14 at ¶5)  He alleges that the primary investment objective of the shares he purchased, as stated by the Fund in reports filed with the Securities and Exchange Commission (the "SEC"), "is to provide total return through a combination of capital appreciation and current income."  (SA-16 at ¶10) According to the Complaint, financial leverage was described in the Fund's SEC filings and other publications as a "key piece of the return to the Fund's

---

term "covered security" to mean, in pertinent part, "a security that satisfies the standards for a covered security. . .at the time during which it is alleged that the misrepresentation, omission, or manipulative or deceptive conduct occurred. . . ." *See Katz v. Gerardi*, 552 F.3d 558, 562 (7th Cir. 2009).

common shareholders. . . ." (SA-18 at ¶13)  At the time of Brown's purchase of common shares, this leverage was provided by AMPS issued by the Fund, which Brown alleges provided the Fund with very favorable financing. (SA-13 at ¶2; SA-16-17 at ¶12)  The beneficial effect of the financing provided by AMPS was "described in the Fund's regular reports to its shareholders." (SA-18 at ¶13)

The Complaint alleges that the Fund represented publicly that "one of the significant benefits of. . .[an]. . .investment" in common shares was "leverage that would continue *indefinitely*, because. . .the term of the AMPS was perpetual."  (SA-18 at ¶13; emphasis supplied)  According to the Complaint, AMPS never had to be repaid, nor were they subject to redemption rights.  (SA-17 at ¶12(b); SA-22 at ¶24)  On the latter point, Plaintiff alleges that the Fund represented, in a 2003 AMPS prospectus, that "AMPS are not redeemable by the holders of AMPS. . . ." (SA-22 at ¶ 24)

Notwithstanding these representations, the "Individual Defendants" -- the Independent Trustees of the Fund and John P. Calamos, Sr. (a Trustee and the President of the Fund) -- are alleged to have caused the Fund to redeem its outstanding AMPS in June 2008 and August 2009, and to have replaced the AMPS with debt financing that was not perpetual, and ostensibly is more risky and costly to the Fund than AMPS.  (SA-14 at ¶3; SA-22-23 at ¶25; SA-25-30 at ¶30-32)  Plaintiff contends that this action

deprived common shareholders of "the benefits of an investment in the Fund, as *described in the Fund's statements to the SEC and the public*." (SA-33 at ¶42 (emphasis supplied); *see also* SA-34 at ¶45 (alleging that redemption of the AMPS "eliminat[ed] one of major benefits of the investment" in common shares); SA-31 at ¶34(d) (alleging that loss of the leverage provided by AMPS has "materially altered the business model of the Fund. . .and. . .defeated a significant feature of the investment rationale for the common shareholder")) In particular, the redemption is alleged to have impaired the ability of the Fund to pay dividends and reduced the value of the Fund's common shares. (SA-30-31 at ¶34(a)-(e))

Replacement of the AMPS with debt financing took place during the unprecedented economic downturn of 2008. (SA-22 at ¶25) Beginning in February of that year, the auctions in which AMPS were purchased and sold (and which established the dividend rate payable by the Fund to AMPS shareholders) failed, and have continued to fail to date. (SA-21 at ¶22) The collapse of the auction market left the Fund's preferred shareholders with illiquid investments. (SA-21 at ¶¶21-22)

Redemption of the AMPS relieved the Fund's preferred shareholders from the illiquidity crisis they faced while at the same time enabling common stockholders to continue to enjoy the benefits of leverage, albeit leverage provided by debt financing rather than AMPS. (SA-18 at ¶13; SA-29-30 at

¶32)  To facilitate the use of debt financing to effect the final stage of the redemption, the Fund applied to the SEC for relief from asset coverage requirements otherwise applicable under the ICA.  (SA-27-29 at ¶31(c)(2))  The SEC granted the requested relief in February 2009, permitting the use of debt to retire the AMPS which remained outstanding at that time. (*Id.*)  The SEC Order cited, but not quoted, in the Complaint (SA-28-29 at ¶31(c)(2)) found that "granting the requested exemption is appropriate in and consistent with the public interest, and consistent with the protection of investors and the purposes fairly intended by the policy and provisions of the. . .[ICA]."[3]

The Complaint claims that the Individual Defendants were motivated to undertake the redemption of the AMPS by "economic interests" they allegedly shared with the Calamos Sponsorship Group.  (SA-20 at ¶19; SA-21-22 at ¶23; SA-23-24 at ¶27)  These "shared economic interests" ostensibly were served by providing liquidity to holders of AMPS, some of whom sought to hold investment banks and brokers responsible for the

---

[3]     A copy of the SEC's Order, In the Matter of Calamos Convertible Opportunities and Income Fund, et al., Investment Company Act of 1940 Release No. 28615 (Feb. 10, 2009), appears in the Supplemental Appendix to this Brief and also is available at www.sec.gov/rules/ic/2009/ic-28615.pdf.  The Court may take judicial notice of the SEC Order, which is cited in (and thus incorporated in) the Complaint, as a matter of public record.  *See Radaszewski ex rel. Radaszewski v. Maram*, 383 F.3d 599, 600 (7th Cir. 2004) ("We also take judicial notice of the contents of certain matters in the public record, including administrative findings").

illiquidity of their investments. (*Id.*) Plaintiff contends that the redemption furthered the interests of the Calamos Sponsorship Group by "placat[ing] their investment banks and brokers" that marketed Calamos fund shares. (SA-23-24 at ¶27; SA-29-30 at ¶32)

Defendants removed the action to the Northern District of Illinois pursuant to SLUSA on October 13, 2010. (Dkt. 1) On November 4, 2010, the Defendants moved to dismiss the case on the ground that it is precluded by SLUSA and submitted a memorandum supporting that ground of their motion.[4] (Dkt. 16, 18-1) The following day, Plaintiff filed a motion to remand the case. (Dkt. 22) An eight-page memorandum accompanying Plaintiff's motion (Dkt. 23) consisted largely of a rote recital of paragraphs in the Complaint and cited no authority -- not a single decision of any court -- supporting Plaintiff's contention that the class claims asserted in the Complaint were not within SLUSA's scope.[5]

---

[4]    Defendants also raised several alternative grounds for dismissal, with separate supporting memoranda. (Dkt. 17, 21) Having dismissed the action under SLUSA, the District Court did not address the Defendants' alternative grounds for dismissal.

[5]    Brown asserts that the District Court stated at a hearing in the case that "Plaintiffs [sic] were not entitled to a reply" brief. (Pl's Br. at 3) What the District Court actually stated was that on a motion to remand, "all I usually have" is the motion and a response. (SA-43) Moreover, when counsel for the Independent Trustees stated his understanding at the hearing that the parties had agreed to a briefing schedule including cross-responses to the parties' respective motions and cross-replies, the District Court responded "That's a lot of brief, but okay." (SA-41)

Following a careful analysis of Brown's allegations, District Judge Elaine E. Bucklo held in a March 14, 2011 Memorandum Opinion and Order that Brown's claims "plainly include. . .[SLUSA's]. . .'covered concepts,' alleging both misrepresentations (that the AMPS were 'perpetual') and omissions (defendants' undisclosed conflict of interest)." (A-9) The District Court rejected Brown's argument that the statements attributed to the Defendants in his Complaint were true when they were made, concluding that even if the alleged misrepresentations were true "in some fleeting sense" at the time they were made, "there is no question that by the time plaintiff's claim accrued, any 'truth' the statements may once have had had plainly evaporated." (*Id.*) The District Court also rejected Brown's argument that the misrepresentations and omissions alleged in his Complaint were "merely background facts" not central to his claims, observing that "SLUSA preemption 'does not turn on whether allegations are characterized as facts or as essential legal elements of a claim, but rather on whether the SLUSA prerequisites are 'alleged' in one form or another.'" (A-10, *citing Rowinski v. Salomon Smith Barney, Inc.*, 398 F.3d 294, 300 (3d Cir. 2005)) Judge Bucklo found equally unconvincing Brown's argument that the alleged misrepresentations were not "in connection with" the purchase or sale of

The only reason that briefing schedule did not go forward was the assertion of Plaintiff's counsel that Plaintiff had not agreed to the schedule. (SA-41-43)

securities, in light of the "broad construction" given that phrase by the Supreme Court in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 86-87 (2006). (A-10-11) The District Court therefore denied Brown's motion to remand and granted the Defendants' motion to dismiss under SLUSA. (A-11)

## SUMMARY OF ARGUMENT

Although the Complaint in this case is pleaded in counts asserting breach of fiduciary duty by the Fund's Trustees (Count I), aiding and abetting that alleged breach of duty (Count II, brought against the Fund and the Calamos Sponsorship Group), and unjust enrichment (Count III, brought against the defendants named in Count II), the Complaint is not pleaded as a derivative action on behalf of the Fund, as one would expect of such state law claims. Instead, the Complaint is brought as a class action on behalf of "beneficial owners" of the Fund's common shares based upon the Fund's alleged pronouncements concerning the benefits and advantages of an investment in Fund common shares. These allegations, drawn from the Fund's SEC filings and other, unidentified public statements, betray Plaintiff's use of state law labels to mask claims predicated upon misrepresentations and omissions in connection with the sale of Fund common shares. They also steer the Complaint directly into the path of

SLUSA, which authorizes the removal of, and precludes, actions within its broad scope.

SLUSA applies to actions meeting four conditions.  In this case, it is uncontested that three of those four conditions are met: (1) the suit is a "covered class action"; (2) the action is based upon state law; and (3) the action concerns a "covered security," *i.e.*, Fund common shares.  The District Court correctly concluded that the fourth condition to the application of SLUSA also is satisfied, *i.e.*, that the Complaint alleges a "misrepresentation or omission of a material fact in connection with the purchase or sale" of Fund common shares.

The substance of Brown's claims in this case is that the Fund's public statements led prospective investors in Fund common shares to believe that the Fund's AMPS would not be redeemed, such that the "significant benefit[ ]" afforded by AMPS financing would be enjoyed by common shareholders "indefinitely" and in "perpetuity" (SA-18 at ¶13), but that the Defendants instead caused the Fund to redeem the AMPS in order to serve the Defendants' self-interests.  These are allegations of the "misrepresentation" and "omission" of material facts within the meaning of SLUSA, and it is irrelevant that the Complaint studiously avoids the use of those statutory terms in an effort to avoid preclusion.

SLUSA applies when the elements specified in the Act are met, even where a claim would not be actionable in a private civil suit under the federal securities laws. It also is unnecessary that the state law claims pleaded in a complaint "sound in fraud," or otherwise require fraud as a necessary component of the claim. Plaintiff's contrary argument, in addition to being erroneous, also has been waived, since it was not raised in the District Court. Plaintiff's allegations concerning the Fund's public statements and the Defendants' supposed conduct in their own alleged self-interest are, in any case, a factual predicate of Brown's claims, since the decision to redeem the AMPS would be protected by the business judgment rule in the absence of well-pleaded allegations that the Defendants engaged in fraud, bad faith or self-dealing in the sense of personal profit.

Plaintiff's contention that SLUSA's "in connection with" requirement is not satisfied because the class defined in the Complaint is comprised of "owners" of Fund common shares who are not specifically alleged to have read and relied upon the Fund's SEC filings and other public statements is erroneous. SLUSA does not require that a plaintiff must be a purchaser or seller of securities; rather, it is enough that an alleged misstatement coincides with a securities transaction by any investor. Nor is reliance required to trigger SLUSA preclusion, although in this case the Complaint directly ties the continued availability of the leverage provided by AMPS (and

13

hence the Fund's alleged statements about the continued availability of AMPS) to the "investment rationale" of common shareholders.

The District Court's dismissal of the Complaint fully comports with the purpose of SLUSA to curb abuses resulting from the use of state law class actions to circumvent restrictions on federal securities claims. This case is a paradigm of the type of action SLUSA was enacted to address, and to extinguish.

## ARGUMENT

## I.   SLUSA MUST BE CONSTRUED BROADLY, TO EFFECTUATE ITS PURPOSES

Congress enacted the Private Securities Litigation Reform Act (the "PSLRA"), Pub. L. No. 104-67, 109 Stat. 737, 15 U.S.C. §§ 77z-1, 78u-4, in 1995 to "implement[] needed procedural protections to discourage frivolous litigation." H.R. Rep. No. 104-369, at 31-33 (1995). Among other things, the PSLRA imposed new, stringent pleading requirements in securities fraud actions, provided for an automatic stay of discovery pending a determination of the sufficiency of the claims pleaded, and imposed new restrictions on the selection and compensation of lead plaintiffs. *Dabit*, 547 U.S. at 81-82. The PSLRA was directed only to federal litigation because "state-court class actions involving nationally traded securities were virtually unknown" at the time the PSLRA was enacted. S. Rep. No. 105-182, at 4 (1998). But the

plaintiffs' bar soon began circumventing the requirements (and defeating the objectives) of the PSLRA by filing securities-based class actions in state court, invoking theories under state law. *Dabit*, 547 U.S. at 82.

To stem the flow of securities class action litigation to state courts, SLUSA added to the Securities Act of 1933, as amended, and the Securities Exchange Act of 1934, as amended, parallel provisions authorizing the removal and precluding the maintenance of certain class actions brought under state law.[6] As amended by SLUSA, the 1934 Act provides:

> (1) *Class action limitations.* No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging--
>
>> (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or
>>
>> (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.
>
> (2) *Removal of covered class actions.* Any covered class action brought in any State court involving a covered security, as set forth in paragraph (1) shall be removable to Federal district court for the district in which the action is pending, and shall be subject to paragraph (1).

---

[6]     For ease of reference, citations to SLUSA in this Brief will be to the provisions of SLUSA appearing in the 1934 Act, unless otherwise appropriate.

15 U.S.C. § 78bb(f)(1)-(2). The parallel provision in the 1933 Act uses identical language, with the exception that it employs the phrase "untrue statement or omission of a material fact" in lieu of "misrepresentation or omission of a material fact. . . ." 15 U.S.C. § 77p(b)-(c)

The Supreme Court has construed SLUSA's expansive language broadly, observing that "[a] narrow reading of the statute" would "undercut the effectiveness" of the PSLRA and would "run contrary to SLUSA's stated purpose. . . ." *Dabit*, 547 U.S. at 86 "[P]resum[ing] that Congress envisioned a broad construction" of SLUSA, the Court has held SLUSA applicable even where a plaintiff's claim would not be actionable in a private civil suit under the federal securities laws. *Id.* at 86-87 (holding that SLUSA precluded an alleged state law action for breach of fiduciary duty brought on behalf of a putative class comprised of "holders" of securities, even though such persons would not have a private right of action under Section 10(b) of the 1934 Act, 15 U.S.C. § 78j, and Rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5). Thus, although SLUSA does not preempt individual claims, or claims asserted derivatively, it altogether precludes class actions asserting claims within its scope, even where those claims could not be brought in a private federal securities action because of the absence of one or more of the elements of such a cause of action.

## II.   PLAINTIFF DID NOT DISPUTE BELOW, AND DOES NOT DISPUTE ON APPEAL, THAT THREE OF THE FOUR CONDITIONS FOR SLUSA REMOVAL AND PRECLUSION ARE SATISFIED

By its terms, SLUSA authorizes the removal of, and precludes, actions meeting four conditions.  SLUSA applies where (1) the underlying suit is a "covered class action"; (2) the action is based upon state statutory or common law; (3) the action concerns a "covered security"; and (4) the case alleges either "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security," or that the defendant "used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security."  15 U.S.C. §§ 78bb(f)(1), (2).

Plaintiff has never contested that each of the first three conditions for SLUSA removal and preclusion is satisfied in this case.  (Dkt. 23 at 2; Pl's Br. at 6-7)  Thus, it was and is uncontested that this *is* a "covered class action"; that the action *is* based upon state law; and that the case *does* concern a "covered security" (*i.e.,* Fund common shares).[7]   Plaintiff contests only

---

[7]    Having failed to contest the first three conditions to SLUSA preclusion in the District Court, Brown may not do so in this Court.  *Stevens v. Umsted*, 131 F.3d 697, 705 (7th Cir. 1997).  In any case, each of these conditions is squarely met: (1) the class allegations in the Complaint (SA-13 at ¶1; SA-32-33 at ¶¶36, 38; SA-37 at ¶F) meet the requirements of a "covered class action" under SLUSA (15 U.S.C. § 78bb(f)(5)(B)(i)); (2) Brown bases his claims on state law theories; and (3) mutual fund shares are "covered securities" within the meaning of SLUSA (SA-15-16 at ¶¶8-9).  *Kircher v. Putnam Funds Trust*, 403 F.3d 478, 484 (7th Cir. 2005), *vacated for lack of appellate jurisdiction*, 547 U.S. 633 (2006).

whether the fourth element of SLUSA preclusion is satisfied, *i.e.*, whether the Complaint contains allegations of a misrepresentation or omission of material fact in connection with the purchase or sale of Fund common shares.  The Complaint unequivocally satisfies this requirement, as well.

## III.  THE DISTRICT COURT CORRECTLY CONCLUDED THAT SLUSA'S FOURTH CONDITION ALSO IS SATISFIED

Plaintiff Brown gives only passing attention -- little more than a page of argument in his brief on appeal -- to his contention that the Complaint does not allege a misrepresentation.  He devotes somewhat more attention to his argument that the Complaint does not allege the omission of material facts, but that argument is directed largely at a straw man rather the omission at the center of his Complaint.  The remainder of Brown's argument on this element of SLUSA is devoted to his contentions that any misstatements or omissions that are alleged in the Complaint should be disregarded because they ostensibly are "immaterial," are not "necessary components" of his claims, and purportedly were not "in connection with" the purchase or sale of Fund common shares.

Brown's arguments concerning the allegations of his Complaint are incorrect, as the Complaint itself demonstrates.  Brown's "necessary component" argument, in addition to being incorrect and contrary to the

weight of authority, also has been waived.  His final argument, addressed to

SLUSA's "in connection with" requirement, is frivolous.

### A. The Complaint Alleges Misrepresentations And Omissions Of Material Fact Within The Meaning Of SLUSA

#### 1. Misrepresentations Of Material Fact

Brown's brief on appeal attempts to confine the basis of the District

Court's ruling -- and the application of SLUSA -- to the Complaint's

"statements about the perpetual term of the AMPS," which Brown asserts

"are in fact alleged to be true."[8]  (Pl's Br. at 1, 12)  His argument fails, for

several reasons.

First, the Complaint does not "in fact" allege that the Fund's

statements regarding the perpetual term of the AMPS were true.[9]  But even

---

[8]    In the District Court, Plaintiff argued that SLUSA had no application because of an allegation in the Complaint disclaiming any intention to assert a claim based upon misstatements or omissions.  (Dkt. 23 at 2, citing the disclaimer in Compl. ¶ 4, which appears at SA-14)  Plaintiff has abandoned this argument on appeal, and rightly so.  Numerous decisions hold that such disclaimers are of no effect.  *See, e.g., Kurz v. Fid. Mgmt. & Research Co.*, No. 07-cv-709, 2008 WL 2397582, *3 (S.D. Ill. June 10, 2008), *aff'd*, 556 F.3d 639 (7th Cir. 2009) (paragraph in complaint "specifically disclaiming" any allegations of fraud, misrepresentation or omission was ineffective to avoid SLUSA preclusion); *Segal v. Fifth Third Bank*, 581 F.3d 305, 311 (6th Cir. 2009) ("a claimant does not have the. . .authority to disclaim the applicability of SLUSA to a complaint"); *Daniels v. Morgan Asset Mgmt., Inc.*, 743 F. Supp. 2d 730, 737 (W.D. Tenn. 2010) (disregarding express disclaimer of any relief based on an "untrue statement or omission of material fact in connection with the purchase, sale, or retention of a security").

[9]    By pointing out this mischaracterization of the Complaint's allegations, the Defendants do not in any way concede that there was any material failure of

if the Complaint did contain such an allegation, it would be of no consequence.  As the District Court recognized, "by the time plaintiff's claim accrued, any 'truth' the statements may once have had had plainly evaporated." (A-9)  It is only because any alleged representations concerning the "indefinite" and "perpetual" nature of AMPS financing proved to be *untrue* that this action was brought; if the statements attributed to the Defendants were literally true, "plaintiff presumably would have no claim at all, since the AMPS would never have been redeemed in the first place." (*Id.*)

The District Court for the Northern District of California recently reached the same conclusion on very similar facts.  In *Smit v. Charles Schwab & Co., Inc.*, No. 10-cv-03971, 2011 WL 846697 (N.D. Cal. March 8, 2011), the plaintiff alleged that a mutual fund deviated from its stated investment objectives and that the failure of the defendants to keep their word resulted in investment losses.  Much like Brown, the plaintiff argued that the defendants' statements concerning the fund's investment objectives were true at the time they were made, and that the complaint therefore did not allege a misrepresentation within the meaning of SLUSA.  The court disagreed:

---

disclosure, or any misrepresentation of material fact, as to any matter alleged in Plaintiff's Complaint.

> Plaintiff argues that the statements from the. . .[complaint]. . .are not properly characterized as misrepresentations, because they were generally true at the time they were made, and only became false or misleading after the beginning of the class period. Plaintiff criticizes defendants for relying on 'statements that *were true when made*, but became incorrect years later.' However, this does not remove the claims from SLUSA's scope. Even though Plaintiff alleges the statements were true at some point, the class definition starts the clock for the class claims on May 31, 2007, at the moment Plaintiff alleges the statements became untrue.

*Id.* at *6. The court went on to reject the plaintiff's further argument based on the requirement of Rule 10b-5 that a statement must be known to be untrue at the time it is made, noting decisions holding that scienter is not necessary to SLUSA preclusion. *Id.* a *7-8.

Second, as the District Court recognized (A-9), the application of SLUSA to Brown's Complaint does not hinge on whether AMPS may be described technically as having a "perpetual" term. The substance of Brown's claims is that prospective investors in Fund common shares ostensibly were led to believe that the AMPS *would not* be redeemed by the Fund, such that the "significant benefit[]" afforded by AMPS financing would be enjoyed by common shareholders "indefinitely" and in "perpetuity." (SA-18, at ¶13) It is for this reason that the Complaint alleges that the redemption of the AMPS "defeated a significant feature of the investment rationale for the common shareholders, namely that such leverage *would be available* to provide cash

flow for distribution to the common shareholders."   (SA-31 at ¶34(d); emphasis supplied)

If the "investment rationale" for common shareholders assumed that AMPS financing would be available "indefinitely" and in "perpetuity," as the Complaint alleges, it can only be because the Fund's "SEC filings and other public statements" supposedly led common shareholders to that mistaken conclusion.  *Cf. Makor Issues & Rights, Ltd. v. Tellabs, Inc.,* 437 F.3d 588, 598 (7th Cir. 2006), *rev'd on other grounds,* 551 U.S. 308 (2007) (providing excess product supply to distributors created "misleading impression" of supplier's financial health); *Feht v. Price Co.,* 70 F.3d 1078, 1080 (9th Cir. 1995) (representations that gave shareholders false impression of financial strength were actionable under Rule 10b-5).  Brown's Complaint thus focuses on AMPS financing as a "benefit[ ] of an investment in the Fund. . . described in the Fund's statements to the SEC and the public."  (SA-33 at ¶42; SA-18 at ¶13).  Even now, in his Brief on appeal, when Brown argues (without benefit of allegations in the Complaint) that the Fund was entitled to redeem AMPS "under appropriate circumstances," he reads the Fund's publications to mean

that redemption might occur *only if it were beneficial to common shareholders*.[10]  (Pl's Br. at 12)

Third, the fact that the Complaint does not expressly characterize the statements attributed to Defendants as "misrepresentations" or as untrue is of no consequence.  Attempts to evade SLUSA's application by the artful avoidance of its terminology routinely are held to be ineffective.  *Segal v. Fifth Third Bank*, 581 F.3d 305, 310-11 (6th Cir. 2009) (a claimant cannot "elude SLUSA's prohibitions by editing out covered words" or using "artful pleading that removes the covered words from the complaint but leaves in the

---

[10]    Brown argues that the Complaint cannot allege shareholder deception because the Fund publicly announced its intention to redeem the AMPS before the redemptions occurred, and thus "there could be no reliance on any fraudulent acts." (Pl's Br. at 19, *citing Jackson v. N'Genuity Enters., Co.*, No. 09-6010, 2010 WL 4628668 (N.D. Ill. Nov. 8, 2010), for the proposition that a claim does not sound in fraud where it takes place in public view)  As an argument on the law, the point fails since reliance is not necessary to SLUSA preclusion.  *Anderson*, 521 F.3d at 1285 (rejecting argument that "SLUSA only precludes state law claims. . .requiring plaintiffs to allege the 'essential elements' of scienter and reliance"); *Potter v. Janus Inv. Fund*, 483 F. Supp. 2d 692 (S.D. Ill. 2007), ("the applicability of SLUSA preclusion. . .does not hinge on whether the omissions at issue were made with intent to deceive or not").  As an argument on the facts, Brown's point is irrelevant: although it is certainly true that the Fund disclosed its intention to redeem AMPS in its SEC filings and otherwise, these publications, and the redemptions themselves, occurred in 2008 and 2009, years after the Fund's common shares were first issued.  (SA-23 at ¶26)  Consequently, the disclosures have no bearing on the supposed claims of Brown and other investors like him who purchased shares before the Fund's intention to redeem the AMPS was announced.  (Presumably even Brown would agree that investors who purchased common shares *after* it became known publicly that the Fund's AMPS would be, or had been, redeemed have no claim of *any kind*, whether for breach of fiduciary duty or otherwise.)

covered concepts"); *Kurz*, 2008 WL 2397582 at *3 (complaint that "scrupulously avoid[ed] using the words fraud, misrepresentation, or omission" was nonetheless precluded by SLUSA).  As this Court recently observed in another context, "it cannot be right to say that a pleader's choice of language always defeats removal."  *Katz*, 552 F.3d at 560.

In applying SLUSA, the courts look to "the realities underlying the claims," not merely how the claims are cloaked in a complaint.  *Romano v. Kazacos*, 609 F.3d 512, 523 (2d Cir. 2010); *see also Rabin v. JPMorgan Chase Bank, N.A.*, No. 06-cv-5452, 2007 WL 2295795, *6 (N.D. Ill. Aug. 3, 2007) ("attempt by Plaintiffs to characterize their allegations of misrepresentation and omission of material facts as claims for breach of fiduciary duty and unjust enrichment is futile"); *Felton v. Morgan Stanley Dean Witter & Co.*, 429 F. Supp. 2d 684, 692-93 (S.D.N.Y. 2006) (holding that court "must look beyond the face of the complaint to analyze the substance of the allegations made," and concluding "that [p]laintiff's claim is a securities fraud wolf dressed up in a breach of contract sheep's clothing"); *Beckett v. Mellon Investor Servs., Inc.*, No. C06-5245, 2006 WL 3249189, *3 (W.D. Wash. Nov. 8, 2006), *aff'd in relevant part*, 329 Fed. Appx. 721 (9th Cir. 2009) (holding that although there was "no explicit reference [in the complaint] to any fraudulent activity," such as a misrepresentation or omission of fact, "[o]ne may reasonably infer that [p]laintiff has framed the pleading in an effort to

avoid SLUSA preemption"); *Stoody-Broser v. Bank of America, N.A.*, No. C08-02705, 2009 WL 2707393, *2-3 (N.D. Cal. Aug. 25, 2009), *aff'd in relevant part*, No. 09-17112, 2011 WL 2181364 (9th Cir. June 6, 2011) (same).

The Complaint in this case presents a paradigm case for application of SLUSA. Its allegations betray a design to avoid the prescriptions of the PSLRA and to evade SLUSA by editing out the specific words "misrepresentation" and "omission" while leaving the covered concepts. *Kurz*, 2008 WL 2397582 at *3 (complaint that "scrupulously avoid[ed] using the words fraud, misrepresentation, or omission" was nonetheless precluded by SLUSA). The District Court's conclusion that the Complaint alleges misrepresentations within the meaning of SLUSA was correct, and should be affirmed. *Rabin*, 2007 WL 2295795, at *6 (analyzing the substance of allegations of breach of fiduciary duty and unjust enrichment asserted by trust beneficiaries, the court found "the heart of the Amended Complaint is that Defendants misrepresented and omitted material facts related to the purchase of shares" in the trustee's proprietary mutual fund); *see also In re Mut. Funds Inv. Litig.*, 309 Fed. Appx. 722, 725 (4th Cir. 2009), *cert. denied*, 130 S. Ct. 65 (2009) ("[d]espite their emphatic disavowal of their prior explicit allegations of misrepresentation. . .at bottom the plaintiffs simply allege" a misrepresentation claim precluded by SLUSA); *Kutten v. Bank of America, N.A.*, 530 F.3d 669, 670-71 (8th Cir. 2008), *cert. denied,* 129 S. Ct. 598 (2008)

(holding, in a case where the complaint did not allege omissions of fact or misrepresentations made to plaintiffs, that "SLUSA preemption is based on the conduct alleged, not the words used to describe the conduct").

###    2.    Omissions Of Material Fact

Brown's argument that the Complaint does not allege a material failure to disclose is based upon the false premise that the relevant "omission," for purposes of SLUSA, is simply an "undisclosed conflict of interest" resulting from relationships between the Calamos Sponsorship Group and various brokers and investment banks.  He contends that the Complaint "contains no allegations that this conflict was undisclosed" and that, in any case, a Fund SEC filing cited in paragraph 27 of his Complaint "addresses Defendant Calamos Asset Management's relationship with third-party intermediaries."[11]  (Pl's Br. at 20)

This is a misdirection play.  The mere *fact* of a business relationship between the Calamos Sponsorship Group and the brokers and underwriters who distribute fund shares, and the potential for a conflict of interest, are not the omissions at the heart of the Complaint (nor would the existence of such a

---

[11]    At one point, Plaintiff argues that even if his Complaint alleges an undisclosed conflict, the conflict does not constitute an "omission of a material fact" for purposes of SLUSA because the Complaint does not allege that the Defendants were obligated to *disclose* the conflict.  (Pl's Br. at 21)  SLUSA applies, however, even where a plaintiff's claim would not be actionable under the federal securities laws.  *Dabit*, 547 U.S. at 86.

relationship or potential conflict, standing alone, even support a claim for breach of fiduciary duty). *See Green v. Nuveen Advisory Corp.*, 295 F.3d 738, 742 (7th Cir. 2002) (mere existence of an investment adviser's conflict of interest does not violate fiduciary duty created by Section 36(a) of the ICA). But the Complaint weaves a more complex story. According to Plaintiff, the investment banks and brokers on which the Calamos Sponsorship Group "relies heavily" to preserve the "viability" of its business (SA-24 at ¶27) "counseled their clients to rely on the auctions and use the [AMPS] as a vehicle for short term investing." (SA-21 at ¶ 20) When the AMPS became illiquid, "many [AMPS] holders sought to hold the investment banks and brokers responsible for the illiquidity of the investment." (SA-21 at ¶23) Ultimately, investment banks and brokers were required to repurchase the AMPS from their clients as a result of "settlements concluded with government agencies." (*Id.*)

Brown's theory is that the need to preserve good relationships with investment banks and brokers came into conflict with the interests of the common shareholders when the banks and brokers became unwilling purchasers of AMPS. Plaintiff alleges, "[o]n information and belief," that the Defendants caused the redemptions:

> not to further the interests of the Fund or of the holders of its
> common stock; they did so to provide liquidity to the holders of
> the AMPS and likely as an attempt to placate their investment

27

> banks and brokers (who would thereby be protected from further
> liability for the illiquidity of the AMPS and from the risk that
> they would be required to buy the redeemed AMPS from the
> holders), so as to further the business objectives of the Calamos
> Sponsorship Group by responding to the pressures they
> experienced as a result of the failure of the auction rate securities
> auctions.

(SA-23 at ¶27) Plaintiff makes no argument that *these* supposed "facts" were disclosed to investors. Indeed, if there had been such disclosure, Brown presumably would not have found it necessary to make these allegations "[o]n information and belief."

The omission at the heart of the Complaint, and the conflict that is the subject of Plaintiff's allegations made "[o]n information and belief," is a failure to disclose that (purportedly) the AMPS would be replaced with shorter term and/or higher cost leverage if that became necessary in order to provide liquidity to AMPS holders and thereby "placate" investment banks and brokers by "protect[ing] them from further liability." (SA-23-24 at ¶27) The claims asserted in Brown's Complaint thus necessarily are dependent upon statements "made *or omitted*," since the claims would fail in the event the Fund had announced its intention, prior to purchases of Fund common shares by Plaintiff Brown or other members of the putative class, to redeem the AMPS in event of auction market failure. *Beckett*, 2006 WL 3249189, at *4 (allegation that fees charged to plaintiff were not authorized by contract "implicitly allege[d] an omission of material fact").

This Court's decision in *Kircher*, 403 F.3d at 484, illustrates the point. In *Kircher*, investors in various mutual funds alleged that the funds calculated the value of fund shares using a methodology that permitted short swing traders to exploit differences in the times at which foreign securities markets closed, to the detriment of long-term shareholders. The Court held that purported state law negligence cases brought on behalf of putative classes of "holders" of fund shares were removable to federal court and ordered the cases dismissed pursuant to SLUSA. In so ruling, the Court observed that the plaintiffs' claims necessarily were dependent upon "statements made or omitted" in connection with the purchase or sale of fund shares because disclosure of the effects of the valuation methodology employed by the funds would have defeated the plaintiffs' claims:

> Suppose the funds stated in their prospectuses that they took action to prevent arbitrageurs from exploiting the fact that each fund's net asset value is calculated only once a day. That statement, if false (and known to be so), could support enforcement action, for the deceit would have occurred in connection with investors' purchases of the funds' securities. Similarly, if these funds had stated bluntly in their prospectuses (or otherwise disclosed to investors) that daily valuations left no-load funds exposed to short-swing trading strategies, that revelation would have squelched litigation of this kind.
>
> These observations show that plaintiffs' claims depend on statements made or omitted in connection with *their own* purchases of the funds' securities.

> They could have brought them directly under Rule
> 10b-5 in federal court. . . .

*Id.* at 484.[12]

*Kircher* thus focuses on the issue of whether disclosure would defeat the claim asserted in a complaint; if so, and the other requirements of SLUSA are satisfied, the claim is precluded. The same reasoning applies here, where Plaintiff's allegations necessarily assume a purported failure to disclose that, ostensibly to serve the Defendants' self-interest, the AMPS would be replaced with shorter term and higher cost leverage in the event that the auction markets failed. Had such a disclosure been made, no claim could exist. Consequently, the Complaint asserts claims for the misrepresentation or omission of material facts within the meaning of SLUSA.

---

[12]    This Court's decision in *Kircher* ultimately was vacated by the Supreme Court for lack of appellate jurisdiction, with the result that the underlying cases were remanded to state court. One of those cases resulted in a decision by the Illinois Appellate Court, which held the plaintiffs' claims precluded by SLUSA. *Kircher v. Putnam Funds Trust*, 398 Ill. App. 3d 664, 667-68, 922 N.E. 2d 1164, 1167 (5th Dist. 2010). The plaintiffs alleged, as they had previously, that although the defendants operated a mutual fund with the stated goal of providing long-term capital growth to investors, they followed portfolio valuation procedures which benefited short-term traders at the expense of long-term shareholders. *Id.* The plaintiffs argued that SLUSA did not apply because their claims did not sound in fraud or misrepresentation. *Id.* at 670, 922 N.E. 2d at 1169-70. The Illinois Appellate Court held that "the plaintiffs' allegations are based, at least implicitly, on the defendants' failure to disclose. . .their method of calculating the NAV and the fact that this method has a potential to reward market-timing investors at the expense of long-term investors." *Id.* at 673-74, 922 N.E. 2d at 1171-72. The court reasoned, much like this Court had in its 2006 decision in the case, that if the defendants had disclosed the risks and potential impact of market timing, there could be no claim for negligence or breach of duty. *Id.*

Moreover, contrary to Brown's assertion on appeal that it "is simply not possible" to fairly read the Complaint to allege an undisclosed conflict (Pl's Br. at 21), Brown conceded in the District Court that his Complaint may "suggest" that Defendants "misrepresented the reasons for their redemptions of AMPS" by failing to disclose that the redemption supposedly was motivated by a desire to "further the business objectives of the Calamos Sponsorship Group. . . ." (Dkt. 23 at 6; SA-23 at ¶27)  This is enough to satisfy the "misrepresentation or omission" element of SLUSA.  *Siepel v. Bank of America*, 526 F.3d 1122, 1124 (8th Cir. 2008) (SLUSA prohibits "state-law claims that a trustee breached its fiduciary duty by failing to disclose conflicts of interest in its selection of nationally-traded investment securities"); *Daniels*, 743 F. Supp. 2d at 740 (rejecting argument that claim was based on "what. . .the defendants *did*," rather than on the defendants' disclosures, observing that the defendants' "undisclosed conflict of interest is precisely what Plaintiffs argue caused Defendants to do what they 'did'").

The Complaint alleges an "omission" of material fact within the meaning of SLUSA for an additional, independent reason.  Plaintiff claims that the "Calamos Defendants" (a term defined to include the Calamos Sponsorship Group and the Fund itself) improperly received "fees and other revenues. . .from the Fund and from other Calamos Sister Funds as a result of the inequitable conduct complained of herein," including (ostensibly)

"fees. . .in connection with the Replacement Borrowing. . . ."  (SA-15 at C; SA-18 at ¶14; SA-36 at ¶57)   In discussing claims that inherently require disclosure, courts have recognized that claims "for excessive fees. . .have been universally found to be preempted by SLUSA."  *Stoody-Broser*, 2009 WL 2707393, at *4; *see also Beckett*, 2006 WL 3249189, at *4 (a "request for recovery of allegedly unlawfully obtained fees and charges. . .[on the]. . .sale of securities is subject to SLUSA preemption").  Thus, Plaintiff's allegations concerning the Calamos Defendants' supposed receipt of improper "fees and other revenues" also bring the Complaint within SLUSA's broad reach.

### B.   Brown Cannot Evade SLUSA Preclusion By Claiming Now That His Own Allegations Are "Immaterial" Or Unnecessary To His Claims

Most of Brown's argument on appeal concerning the fourth element of SLUSA preclusion is devoted to the contention that the Complaint's allegations regarding the Fund's public statements are "extraneous details" "wholly immaterial to Plaintiff's claims" which supposedly were included in the Complaint (*four* times, since the allegations are made in the body of the Complaint, and then repeated in each count) only to show that "Defendants understood the benefits that the AMPS provided to the common shareholders."  (Pl's Br. at 13)  He contends that SLUSA preclusion is "not warranted simply because a misrepresentation is alleged," but rather only when the misrepresentation is "an element of the claim or a factual predicate

thereof." (*Id.*)  In support, Brown relies upon district court decisions in other Circuits applying a so-called "necessary component test."  These arguments should be rejected, for several independent reasons.

### 1.  Brown's "Necessary Component" Argument Has Been Waived

Brown failed to make his new-found "necessary component" argument in the District Court, much less cite any authority to that court in support of any such argument.  (Indeed, *none* of the decisions cited in Brown's brief on appeal were cited in the District Court; not a single decision.)  Consequently, the argument has been waived.  *Arlin-Golf, LLC v. Vill. of Arlington Heights*, 631 F.3d 818, 822 (7th Cir. 2011) (argument waived on appeal because plaintiffs cited no relevant legal authority to the district court to support the proposition); *Local 15, Int'l Broth. of Elec. Workers v. Exelon Corp.*, 495 F.3d 779, 783 (7th Cir. 2007) ("A party waives any argument that it does not raise before the district court"); *Hicks v. Midwest Transit, Inc.*, 500 F.3d 647, 652 (7th Cir. 2007) (arguments not raised before district court are waived on appeal); *Belom v. Nat'l Futures Ass'n*, 284 F.3d 795, 799 (7th Cir. 2002) (same).

### 2.  Alternatively, The "Necessary Component Test" Relied Upon By Brown Should Be Rejected

Brown's efforts to marginalize his own allegations concerning the Fund's public statements as "extraneous details" should be rejected, just as

other courts have rejected similar attempts to evade SLUSA by characterizing allegations as mere background facts. *Segal*, 581 F.3d at 311 (contention that "the state-law claims do not depend upon allegations of misrepresentation or manipulation—and thus are not material to them" are unavailing); *Hanson v. Morgan Stanley Smith Barney, LLC*, No. 10-cv-06945, 2011 WL 311011, *4 (C.D. Cal. Jan. 18, 2011) ("SLUSA does not ask whether the complaint makes material or dependent allegations of misrepresentations in connection with buying or selling securities. It asks whether the complaint includes these types of allegations, pure and simple") (internal quotations omitted).

Brown attempts to justify his efforts to distance himself from his own allegations by invoking what has been referred to as the "necessary component test." That "test" is a judicial invention of pre-*Dabit* district court decisions, and is contrary to the unambiguous language of SLUSA itself.

The "necessary component test" usually is attributed to a decision of the Southern District of New York (*Xpedior Creditor Trust v. Credit Suisse First Boston (USA) Inc.*, 341 F. Supp. 2d 258 (S.D.N.Y. 2004)) rendered two years prior to the decision in *Dabit*. According to the version of the "test" quoted in Brown's Brief at 14, SLUSA's scope would be narrowed to cases involving "an explicit claim of fraud or misrepresentation (*e.g.,* common law fraud, negligent misrepresentations, or fraudulent inducement") or "other

garden-variety state law claims that 'sound in fraud.'"[13]  *Id.* at 261.  Narrowly circumscribing SLUSA in this manner contravenes not only the plain language of the statute, but the Supreme Court's admonition in *Dabit* that SLUSA is to be given a broad construction. 547 U.S. at 86 ("[t]he presumption that Congress envisioned a broad construction follows not only from ordinary principles of statutory construction but also from the particular concerns that culminated in SLUSA's enactment").

SLUSA preclusion is triggered by the allegations in a complaint; the Act contains no requirement that those allegations must be "necessary components" or elements of whatever state law cause of action a complaint may purport to plead.  *Miller v. Nationwide Life Ins. Co.*, 391 F.3d 698, 702 (5th Cir. 2004) ("[t]he issue of preemption. . .hinges on the content of the allegations – not on the label affixed to the cause of action. Moreover, we have previously recognized that SLUSA was designed to ensure that all causes of action involving allegations of misrepresentation or omission in connection with covered securities would be subject to the requirements" of the PSLRA); *Atkinson v. Morgan Asset Mgmt., Inc.*, 664 F. Supp. 2d 898, 906

---

[13]     Brown cites this Court's decision in *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007), for the proposition that a complaint "sounds in fraud" when it is based upon a course of fraudulent conduct.  The Court was discussing the parameters of Rule 9(b) of the Federal Rules of Civil Procedure; SLUSA was not implicated in that case in any way.

(W.D. Tenn. 2009) ("[a]lthough a breach of contract claim would be difficult to characterize as a claim for misrepresentation or omission, SLUSA requires dismissal based on the allegations contained in the complaint").  Reading a "necessary component" requirement into SLUSA where none appears in the Act would contravene the plain meaning of the statute no less than reading in the "purchaser or seller" requirement rejected by the Supreme Court in *Dabit*.  As the Third Circuit has stated:

> [P]reemption does not turn on whether allegations are characterized as facts or as essential legal elements of a claim, but rather on whether the SLUSA prerequisites are 'alleged' in one form or another.  A contrary approach, under which only essential legal elements of a state law claim trigger preemption, is inconsistent with the plain meaning of the statute.  Furthermore, it would allow artful pleading to undermine SLUSA's goal of uniformity – a result manifestly contrary to congressional intent.

*Rowinski*, 398 F.3d at 300; *cf. United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 11 (2008) ("the strong presumption that the plain language of the [Tucker Act] expresses congressional intent is rebutted only in rare and exceptional circumstances") (internal quotations omitted); *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("we have stated time and again that Courts must presume that a legislature says in a statute what it means and means in a statute what it says there").

Research has uncovered no published decisions in this Circuit applying the *Xpedior* "necessary component test" and, indeed, it has never been adopted by the Second Circuit itself.[14]  The "necessary component test," or its functional equivalent, has, however, been rejected in decisions of several Courts of Appeals.  *Rowinski*, 398 F.3d at 300 (rejecting argument that SLUSA had no application because "misrepresentation" was not "an essential legal element" of a claim for breach of contract)[15]; *Segal*, 581 F.3d at 312

---

[14]    The Second Circuit has, however, cited the Third Circuit's decision in *Rowinski*, 398 F. 3d at 299-300, for the proposition (antithetical to Brown's reading of *Xpedior*) that "SLUSA preempts claims which allege a material misrepresentation or omission in connection with the purchase or sale of securities whether or not that allegation is an element of or otherwise necessary to the putative state claim."  *Gray v. Seaboard Securities, Inc.*, 126 Fed. Appx. 14, 16 (2d Cir. 2005).  Although *Gray* is an unpublished summary order rendered prior to January 1, 2007 and thus may not be cited in the Second Circuit pursuant to Local Rule 32.1 of that Court, the Southern District of New York has observed, in citing *Gray* for another proposition, that unpublished opinions of the Second Circuit are "highly persuasive, at least as worthy of citation as law review student notes, and eminently predictive of how the Court would in fact decide a future case such as this one."  *LaSala v. UBS, AG*, 510 F. Supp. 2d 213, 241 n.15 (S.D.N.Y. 2007) (internal citation omitted).

[15]    Brown cites (Pl's Br. at 13) another decision of the Third Circuit, *LaSala v. Bordier et Cie*, 519 F.3d 121 (3d Cir. 2008), for the proposition that SLUSA precludes claims only where a misrepresentation is "an element of the claim or factual predicate thereof," rather than an "extraneous detail."  *LaSala* does not, however, suggest that any more is required to trigger SLUSA than that an allegation of misrepresentation be a "factual predicate" of a state law claim.  519 F.3d at 141 (reaffirming that SLUSA applies "when an allegation of a misrepresentation in connection with a securities trade is a 'factual predicate' of the claim, even if misrepresentation is not a legal element of the claim").  Moreover, as the Sixth Circuit has observed, the passage in *LaSala* favored by Brown is *dicta*, and to the extent it contradicts *Rowinski*, the *Rowinski* decision is more persuasive.  *Segal*, 581 F.3d at 311-12.  In any case, as discussed immediately below, Brown's

(SLUSA's provisions do not "speak to 'material,' 'dependent,' or 'extraneous' allegations; they speak to covered allegations"); *see also Anderson v. Merrill Lynch Pierce Fenner & Smith*, 521 F.3d 1278, 1285-88 (10th Cir. 2008) (rejecting argument that SLUSA precludes only state law claims that are "virtually identical" to a federal securities claim and which require "essential elements" of scienter and reliance, collecting cases rejecting similar arguments, and concluding that notwithstanding plaintiffs' reliance on *Xpedior*, "the weight of authority is overwhelmingly against them").  Because the District Court's decision in *Xpedior* is contrary to the plain language of SLUSA, *Xpedior* should be rejected by this Court, as well.

### 3.    Brown's Allegations Are, In Any Event, A Factual Predicate Of His Claims

Even under *Xpedior*, "'Courts must probe the plaintiff's pleading' to examine not just the 'technical elements of a claim' but also the 'factual allegations intrinsic to the claims as alleged." *Xpedior*, 341 F. Supp. 2d at 265-66; *see also In re Mut. Funds Inv. Litig.*, 384 F. Supp. 2d 845, 871 (D. Md. 2005) (stating that *Xpedior* is not contrary to the proposition that preemption turns "on whether the SLUSA prerequisites are 'alleged' in one form or another"); *Dommert v. Raymond James Fin. Servs., Inc.*, No. 06-cv-

---

allegations concerning the Fund's statements are in every sense a "factual predicate" of his claims.

102, 2007 WL 1018234, *8 (E.D. Tex. May 29, 2007) (under *Xpedior*, the "phrase 'necessary component' encompasses both the technical elements of a claim as well as the factual allegations intrinsic to the claim as alleged"). Here, Brown found it necessary to his purported breach of fiduciary duty, aiding and abetting, and unjust enrichment claims to include allegations clearly designed to convey the message that the Defendants lured investors to the Fund's common shares with a promise of favorable financing that would last "indefinitely," and then acted in a contrary manner because it supposedly was in their self-interest to do so. (*See, e.g.*, SA-18 at ¶13; SA-23-24 at ¶27) The inclusion of these allegations was not fortuitous. To the contrary, these allegations were essential to the state law claims Brown sought to assert in his Complaint.

Whether to employ leverage and, if so, what form of leverage to employ, are business decisions of the sort normally left to a company's board.[16] As

---

[16]    The ICA specifically leaves the decisions whether to borrow, and whether to issue preferred shares, to investment companies. The ICA requires that an investment company disclose in its registration statement its policy "in respect of. . .borrowing money. . .[and]. . .the issuance of senior securities" (*i.e.* preferred shares), as well as whether the investment company "reserves freedom of action to engage in activities of such type" and, if so, the "extent to which the registrant intends to engage therein. . . ." 15 U.S.C. § 80a-8(b)(1). Thus, the ICA contemplates that an investment company may determine its own policies regarding borrowing or the issuance of preferred shares, and requires only that the investment company disclose its policies on those questions. Once an investment company has disclosed its policies with respect to those decisions, it may not "borrow money. . .[or]. . .issue senior securities. . .except in each case in accordance with the recitals of policy

such, they are decisions afforded the protection of the business judgment rule. *See, e.g.*, *Benihana of Tokyo, Inc. v. Benihana, Inc.*, 891 A.2d 150 (Del. Ch. 2005) (decision of board to finance corporate projects through the issuance of preferred stock with preemptive rights, which had a dilutive effect, rather than through debt financing, was protected by the business judgment rule); *Off v. Ross*, No. 3468-VCP, 2008 WL 5053448, *11 (Del. Ch. Nov. 26, 2008) (considering application of business judgment rule to action of board of Delaware statutory trust approving transaction which would have allowed purchase of preferred stock). Pursuant to the business judgment rule, a board of trustees is afforded a presumption that "the board acted independently, with due care, in good faith, and in the honest belief that its actions were in the best interests of the stockholders." *Off*, 2008 WL 5053448 at *11. Unless this presumption is rebutted, challenged board conduct is not actionable. *McMullin v. Beran*, 765 A.2d 910, 918 (Del. 2000) ("unless effectively pled factual allegations in the shareholder plaintiff's Amended Complaint successfully rebut the procedural presumption of the business judgment rule, the…[directors]…would be protected by the substantive operation of the business judgment rule").

---

contained in its registration statement in respect thereto," unless authorized by a shareholder vote. 15 U.S.C. § 80a-13(a).

The presumptions afforded by the business judgment rule apply in the absence of well-pleaded allegations of "fraud, bad faith or self-dealing in the usual sense of personal profit or betterment" on the part of the board. *Grobow v. Perot*, 539 A.2d 180, 187 (Del. 1988), *overruled on other grounds*, *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000). The Complaint's allegations describing the Fund's "statements to the SEC and the public" concerning the (supposedly) semipiternal benefits of AMPS financing and the manner in which the Defendants supposedly benefited personally from the redemption of the AMPS thus serve as an attempt to rebut the presumptions of the business judgment rule. Consequently, the allegations are a "factual predicate" of Brown's claims in every sense of that term and are, of necessity, incorporated into each count of the Complaint.[17]

The example offered in this Court's decision in *Kircher* (quoted *supra* at p. 29-30) illustrates the centrality of Brown's allegations of statements regarding "leverage that would continue indefinitely," and Brown's allegations that the AMPS redemption purportedly was undertaken to serve

---

[17]    As a result of the incorporation of Brown's allegations into each count, *In re Lord Abbett Mut. Funds Fee Litig.*, 553 F.3d 248, 254-57 (3d Cir. 2009), which Plaintiff cites for the proposition that SLUSA preempts claims, not entire actions (Pl's Br. at 14 n.6), is inapposite. *See also Anderson*, 521 F.3d at 1287 n.6 (dismissing an entire complaint as preempted under SLUSA where plaintiffs had incorporated their allegations into each of their claims, each of which was based on state law).

the Defendants' self-interest, to his claims.  Had the Fund "stated bluntly" in

its registration statement (1) that it intended never to employ leverage, or (2)

that it would employ only debt-based leverage, or (3) that it would issue

AMPS to provide leverage but would redeem the AMPS using less favorable

debt financing in the event necessary to provide liquidity to AMPS holders

and serve the interests of the Calamos Sponsorship Group, Brown's claims

would have been "squelched."  403 F.3d at 484.  This further demonstrates

that a misrepresentation as to the permanence of AMPS financing and the

circumstances under which AMPS might, if ever, be redeemed are factual

predicates of the claims asserted in the Complaint.  Consequently, if it were

necessary that Plaintiffs' allegations constitute a factual predicate of his

purported state law claims, any such requirement would be satisfied.

## C.     SLUSA's "In Connection With" Requirement Is Squarely Met

The Complaint easily meets the requirement of SLUSA that a

misrepresentation or omission of material fact be "in connection with" the

purchase or sale of a covered security.  The Supreme Court has construed the

"in connection with" requirement broadly, holding that "it is enough that the

fraud alleged 'coincide' with a securities transaction—whether by the plaintiff

or by someone else."  *Dabit*, 547 U.S. at 85, 89.  That unquestionably is the

case alleged here, where the Complaint asserts that the Fund filed SEC

reports and made public pronouncements concerning the allegedly

"perpetual" nature of AMPS financing that was "a significant benefit[ ] of. . .[an]. . .investment" in the Fund's common shares that would "continue indefinitely." (SA-16 at ¶10; SA-16-17 at ¶12; SA-18 at ¶13) The availability of this leverage is alleged to have been a "significant feature of the investment rationale" for an investment in Fund common shares. (SA-18 at ¶13; SA-31 at ¶34(d)) The Complaint thus directly ties the continued availability of the leverage provided by AMPS (and hence the Fund's alleged statements *about* the continued availability of AMPS) to the "investment rationale" -- and thus the investment decisions -- of common shareholders.[18]

The Complaint attempts to evade SLUSA preclusion by defining a class consisting of "owners," rather than purchasers or sellers, of the Fund's common shares. (SA-31-32 ¶35) From this, Brown argues that "there obviously is no connection between any untrue statement or omission and a purchase or sale" of Fund common shares. (Pl's Br. at 23) This contention is incorrect -- frivolously so.

SLUSA preclusion cannot be averted by the simple failure of the Complaint to allege that some (in all probability, very many) of the investors

---

[18]    "The plaintiff's theory of damages also bears on the SLUSA 'in connection' inquiry." *Rowinski*, 398 F.3d at 301. Here, Brown alleges that "[t]he value of the Fund's common shares is lower than it would have been if the AMPS had not been redeemed," and that dividends on the common shares have been and will be reduced. (SA-30-31 at ¶34)

who beneficially *owned* Fund common shares during the period from March 19, 2008 to the present also *purchased* their shares sometime after November 2003 (the date of the first SEC filing relied upon in the Complaint) and prior to redemption of the AMPS.  (SA-13 at ¶2; SA-31-32 ¶35)  This Court already has observed that "[a]s an effort to evade SLUSA," a class definition which is limited to investors who "held" mutual fund shares between two specified dates "is a flop."  *Kircher*, 403 F.3d at 482.  This is so because a "class of 'all holders' during even a single day contains many purchasers and sellers."[19] (*Id.*)

Moreover, under *Dabit*, it is irrelevant whether *any* of the members of the putative class purchased or sold securities during the relevant time period.  The Supreme Court squarely rejected such an attempted end-run around SLUSA in *Dabit* (a case, like this one, in which the plaintiff sought to avoid SLUSA by alleging a class of "owners"), holding that "[f]or purposes of SLUSA pre-emption, that distinction [between holders and purchasers or sellers of securities] is irrelevant; the identity of the plaintiffs does not determine whether the complaint alleges fraud 'in connection with the purchase or sale' of securities."  *Dabit*, 547 U.S. at 89.  Thus, Brown's

---

[19]    As this Court explained in *Green*, 295 F.3d at 740 n.1, after the initial offering, common shares of a closed-end investment company are traded on a secondary market, and usually are listed on a national stock exchange (in this case, the New York Stock Exchange). (*See also* Pl's Br. at 3 n.2)

argument on appeal that "the class is not defined in terms of purchases or sales but in terms of ownership" (Pl's Br. at 23) is utterly irrelevant.[20]   It is enough that some investors -- any investor -- purchased Fund common shares during the period from November 2003 to the time of the redemption of the AMPS.

The absence of an allegation in the Complaint that any particular prospective investor read and relied upon Fund publications is equally irrelevant.  In *Dabit*, the Supreme Court made clear that the "in connection with" requirement is met, and SLUSA applies, where there is "deception 'in connection with the purchase or sale of any security,' not deception of an

---

[20]    Brown purports to distinguish *Dabit* on the ground that the Complaint in this case contains "no allegation of a purchase or sale by Plaintiff or anyone else."  (Pl's Br. at 23 n.10)  This is a distinction without a difference.  The decision of the Second Circuit reversed in *Dabit* would have allowed the plaintiff in that case to replead to allege a class *excluding* persons who had purchased or sold shares in connection with an alleged fraud.  *Dabit*, 547 U.S. at 77-78.  If, as *Dabit* indicates, an affirmative *exclusion* of purchasers or sellers is not enough to escape SLUSA preclusion, it is inconceivable that the simple *omission* of any reference to purchasers or sellers could achieve that result.  The further distinction which Brown attempts to draw between shareholders alleged to have been fraudulently induced to "hold" their shares and the class of inert "owners" he wishes to represent is equally untenable, for two reasons: first, there is no relevant distinction between "owners" and "holders" of securities for purposes of SLUSA (the *Dabit* decision itself refers to a class of persons who "owned and continued to own" the securities in question, 547 U.S. at 76); and second, the application of SLUSA in *Dabit* did not turn on the allegation that the class members had been fraudulently induced to "hold" their shares.

identifiable purchaser or seller."[21]   547 U.S. at 85 (*citing United States v. O'Hagan*, 521 U.S. 642, 658 (1997) (internal quotation omitted).

The same principles dispose of Plaintiff's apparent contention that the "in connection with" requirement of SLUSA is not met as to *his* purchase of Fund common shares because two of the Fund publications referenced in the Complaint were made after Plaintiff's purchase.  (Pl's Br. at 24)  *Dabit* makes clear that SLUSA applies even when *neither* the named plaintiff, *nor* any member of the class the named plaintiff purports to represent, was a purchaser or seller of securities at the time when alleged misrepresentations were made.  547 U.S. at 77-78, 88-89; *see also U.S. Mortg., Inc. v. Saxton*, 494 F.3d 833, 842 (9th Cir. 2007) (plaintiffs' contention that SLUSA did not apply because they did not purchase or sell securities in response to alleged misrepresentations was "the very argument that *Dabit* rejected").

---

[21]    *Norman v. Salomon Smith Barney Inc.*, 350 F. Supp. 2d 382 (S.D.N.Y. 2004), cited by *Brown* as a case holding that SLUSA had no application "where plaintiffs never saw. . .or relied on" analysts' recommendations, was decided prior to *Dabit*. Subsequent decisions have held that SLUSA preclusion does not require reliance. *Anderson*, 521 F.3d at 1285-87.  Moreover, in *Norman*, the plaintiffs and other members of the class they sought to represent did not "purchase or sell any securities to or from Solomon, or in the market generally," but rather contracted for portfolio management services.  *Gantchev v. Predicto Mobile, LLC*, No. 09-2312, 2009 WL 3055317 (N.D. Ill. Sept. 18, 2009), cited by Brown, involved a claim brought under the Illinois Consumer Fraud and Deceptive Business Practices Act. The case concerned "premium" telephone services, not "covered securities," and did not implicate SLUSA in any way.

Consequently, the timing of Plaintiff Brown's purchase of Fund common shares has no bearing upon SLUSA's application.[22]

Brown also contends (Pl's Br. at 25-26) that the misstatements and omissions in this case lack "temporal connectivity" with the purchase or sale of Fund shares similar, he says, to the circumstances in *Gavin v. AT&T Corp.*, 464 F.3d 634 (7th Cir. 2006). The analogy is inapposite. In *Gavin*, the alleged misrepresentation came months *after* the consummation of a merger and hence related not to the merger itself (which clearly would have qualified as a transaction for the purchase or sale of securities), but rather to a fee for a share exchange service. As this Court observed, the alleged fraud was not "in connection with the purchase or sale of securities" but rather "happened afterwards," at a time when the shareholders of the acquired company had *already* become beneficial owners of the acquiring company's stock.

Brown's Complaint, on the other hand, alleges Fund publications reaching back to 2003, years before Brown's 2006 investment, before the 2008 commencement of the "beneficial owner" class Brown wishes to represent, and necessarily before innumerable transactions in Fund common shares.

---

[22]    Moreover, Plaintiff does not contend that *each* of the "Fund's statements to the SEC and the public" (SA-33 at ¶42) alleged in the Complaint was made after his share purchase.

47

Consequently, *Gavin* has no application here, and the Complaint unquestionably satisfies SLUSA's "in connection with" requirement.

## IV.  SLUSA'S PURPOSES ARE FULLY SERVED BY THE DISMISSAL OF THIS CASE

Finally, Brown erroneously contends that the District Court's decision somehow is contrary to the legislative intent underlying SLUSA (which he asserts precludes only cases in essence alleging securities fraud) and the "presumption that Congress did not intend to displace state law entirely." (Pl's Br. at 26-27)  The purpose of SLUSA has been described in decisions of the Supreme Court, this Court, and numerous other courts. *See, e.g.*, *Dabit*, 547 U.S. 71 at 81 (SLUSA represents "Congress' effort to curb. . . perceived abuses" of the class-action vehicle "in litigation involving nationally traded securities").  Suffice it to say, as this Court did in *Gavin*, 464 F.3d at 640, that the Act's purpose "was to prevent plaintiffs from making an end run around the restrictions on federal securities fraud suits introduced by" the PSLRA. SLUSA accomplishes this purpose by precluding the maintenance of covered class actions that meet the requirements of the Act; it contains no separate requirement that precluded actions must otherwise be maintainable as federal securities claims.  As this Court observed in *Kircher*, 403 F.3d at 484, SLUSA's "preemptive effect is not confined to knocking out state-law claims

by investors who have *winning* federal claims, as plaintiffs suppose. It covers both good and bad securities claims – *especially* bad ones."

SLUSA's preclusive reach thus extends beyond claims cognizable in private civil litigation under the securities laws, but this is in no way *inconsistent* with SLUSA's statutory purpose: "[t]he terms of a statute can carry beyond its purpose, to prevent the opening of loopholes." *Gavin*, 464 F.3d at 640. Nor can application of the Act be defeated by affixing a label to a cause of action that may appear far afield from a securities case. *Atkinson*, 664 F. Supp. 2d at 906 ("SLUSA requires dismissal based on the allegations contained in the complaint, not the state-law label placed on the claim"); *cf. Katz*, 552 F.3d at 560-61 ("it cannot be right to say that a pleader's choice of language always defeats removal;" instead, a "federal court must decide for itself the claim's legal classification"). Consequently, affixing the "shareholders rights" or "fiduciary duty" labels to Brown's claims cannot remove them from SLUSA's reach.[23]

---

[23]    Although allegations of a breach of fiduciary duty, or a failure to disclose a breach of fiduciary duty, standing alone will not support a private action under Rule 10b-5, *Santa Fe Indus., Inc.*, 430 U.S. 462, it is equally true that the fact that alleged misconduct may constitute a breach of fiduciary duty does not *insulate* that conduct from Rule 10b-5. "The critical issue. . .is whether the conduct complained of includes the omission or misrepresentation of a material fact, or whether it merely states a claim for breach of a state law duty." *Panter v. Marshall Field & Co.*, 646 F.2d 271, 288 (7th Cir. 1981).

"The magnitude of the federal interest in protecting the integrity and efficient operation of the market for nationally traded securities cannot be overstated." *Dabit*, 547 U.S. at 78. Mutual funds are regulated by the SEC under several federal statutory regimes, including the ICA, the Securities Act of 1933, and the Securities Exchange Act of 1934. "[F]ederal law comprehensively regulates the purchase and sale of mutual fund shares and requires the disclosure of material information about the fund's objectives, performance, fees and interests of its managers. . . ." *Stoody-Broser*, 2009 WL 2707393 at *3. In this case, Brown has attempted to invoke state law to challenge action undertaken with the authorization of the SEC, and in the process, he has run afoul of the proscriptions of SLUSA. Application of SLUSA to this action does not infringe on any state interest, but allowing this action to proceed under state law would threaten the comprehensive federal regulatory regime that governs mutual funds. *Dabit*, 547 U.S. at 88 (noting "the congressional preference for 'national standards for securities class action lawsuits involving nationally traded securities'") (citation omitted).

Nor does the application of SLUSA to this case infringe any legitimate shareholder interest. Brown's argument that the District Court's decision "put[s] almost every shareholders' rights class action at risk of being dismissed under SLUSA" (Pl's Br. at 28) is sheer hyperbole. As the Supreme

Court observed in *Dabit*, SLUSA "carefully exempts from its operation certain class actions" brought under state law.  *Dabit*, 547 U.S. at 87.  The Sixth Circuit catalogued some of SLUSA's exemptions in *Segal*:

> SLUSA may be unforgiving when it applies, but it details in clear language when that is so.  It puts claimants to a choice.  Here, for example. . .[plaintiff] . . .could have filed an identical complaint on behalf of himself and up to forty-eight others and avoided SLUSA preclusion.  Or he could have filed a complaint on behalf of a large class of plaintiffs, so long as he complied with the requirements of the PSLRA.  Or he might have been able to press some class action counts -- perhaps the breach of contract claim -- in a complaint that included no covered allegations.  But where, as here, a complaint meets the relatively straightforward requirements of 15 U.S.C. §§ 77p(b), 78bb(f)(1), we must dismiss the action.

581 F.3d at 312.  Here, Brown chose none of the alternatives described by the Court in *Segal*, nor the alternative of bringing an "exclusively derivative" action.  *Cf. Kircher*, 403 F.3d at 483 ("A claim based on mismanagement likely would need to be cast as a derivative action, which none of these suits purports to be").  He chose, instead, to bring a putative class action.  Consequently, the District Court's dismissal of Brown's action was fully correct, and comported with the purposes of SLUSA as well as the Act's plain terms.

In a last ditch effort to save his claims, Brown contends that "Defendants themselves argued to the District Court that Plaintiffs' [sic]

claims are 'derivative in nature' and must be dismissed for failure to make a pre-suit demand," and that in so doing, "Defendants effectively concede[d] the inapplicability of SLUSA."  (Pl's Br. at 28)  This is a gross misstatement of Defendants' position.  Defendants did, to be sure, point out in the District Court that the injuries to common shareholders alleged in Brown's Complaint flowed from alleged harm to the Fund, resulting from an asserted increase in the Fund's cost of leverage.  (Dkt. 17 at 2-3; Dkt. 18-1 at 13-15) Consequently, concurrent with their motion to dismiss pursuant to SLUSA, Defendants also moved "*[a]lternatively*, with respect to any claims that the Court may find *are not precluded by SLUSA*," to dismiss "any claims derivative in nature. . .for failure to allege demand on the Board of Trustees and the Fund, or to state with particularity the reasons Plaintiff should be excused from making demand. . . ."  (Dkt. 16 at 1-2; emphasis supplied) Defendants never "conceded" in any way that the claims asserted in Brown's Complaint came within the exception of "exclusively derivative" actions from SLUSA preclusion, nor did Brown ever argue that this exception had any application.[24]

---

[24]    The relevance of Plaintiff's argument (Pl's Br. at 28) that federal jurisdiction under CAFA "[i]n fact. . .is expressly precluded" as to derivative claims is unclear, since the jurisdiction of the District Court was not predicated upon CAFA, and this case was not brought as a derivative action.    To the extent Plaintiff may be suggesting that the inapplicability of CAFA somehow renders SLUSA inapplicable as well, there is no statutory or other basis whatever for such a contention.

To the contrary, Defendants specifically pleaded in their Notice of Removal and argued in briefing on their Motion to Dismiss that SLUSA's exclusion (15 U.S.C. § 78bb(f)(5)(C)) of "exclusively derivative" actions had no *application*, in that the Complaint unequivocally purports to be brought as a class action, not a derivative action, and asserts claims *against* the Fund rather than on its behalf.  (SA-6 at ¶6(a); Dkt. 18-1 at 13-15)  *See Instituto de Prevision Militar v. Lehman Bros., Inc.*, 485 F. Supp. 2d 1340, 1346 (S.D. Fla. 2007) (where plaintiff failed to allege that it had met the Rule 23.1 requirements for a derivative action and had not styled its action as a derivative suit, case did not qualify for exception to SLUSA preclusion); *Potter*, 483 F. Supp. 2d at 700 ("the injury alleged by Plaintiffs, specifically, dilution of share value due to market-timing arbitrage, obviously is derivative in nature," but "[a]s the *Kircher II* court recognized, these claims. . .are within the scope of SLUSA *unless* brought derivatively on behalf of the funds after a demand by shareholders on corporate officers") (emphasis supplied).  Brown never contended in the proceedings below that his Complaint was anything other than the class action it purports to be, nor did he ever seek leave of the District Court to amend his Complaint to assert a derivative action or submit a proposed derivative complaint for the District Court's consideration.  *Anderson*, 521 F.3d at 1289 (affirming denial of leave to amend complaint asserting claims under state law where plaintiffs did not

submit a proposed amended pleading or "describe what changes they would make to avoid SLUSA preemption"). In short, SLUSA's exemption of "exclusively derivative actions" is irrelevant to this appeal.

## CONCLUSION

This case is prototypical of the kind of action that SLUSA was enacted to address, and to extinguish. It is a case which, if brought as a class action prior to adoption of the PSLRA, undoubtedly would have been filed pursuant to the federal securities laws under a complaint openly (and liberally) invoking the terms "misrepresentation" and "omission," which this Complaint attempts to avoid. The District Court correctly held that this action was properly removed to federal court pursuant to SLUSA, and is precluded by that Act. Its judgment dismissing this action should be affirmed.

Respectfully submitted:

By:   s/ John W. Rotunno

John W. Rotunno
Paul J. Walsen
Molly K. McGinley
K&L Gates LLP
70 West Madison Street, Suite 3100
Chicago, Illinois  60602-4207
t: (312) 372.1121
f: (312) 827-8000
john.rotunno@klgates.com

*Attorneys for Defendants-Appellees Weston W. Marsh, Joe F. Hanauer, John E. Neal, William R. Rybak, Stephen B. Timbers, David D. Tripple and Calamos Convertible Opportunities and Income Fund*

By:    s/ Christian J. Mixter

Christian J. Mixter
Patrick D. Conner
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC  20004-2541
t: (202) 739-3000
f: (202) 739-3001
cmixter@morganlewis.com
pconner@morganlewis.com

Michael F. Derksen
Morgan, Lewis & Bockius LLP
77 West Wacker Drive
Chicago, Illinois  60601-5094
t: (312) 324.1000
f: (312) 324.1001
mderksen@morganlewis.com

*Attorneys for Defendants-Appellees John P. Calamos, Sr., Calamos Advisors LLC and Calamos Asset Management, Inc.*

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that the foregoing Brief of Defendants-Appellees complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 13,764 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(b)(iii). The undersigned further certifies that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and Cir. Rule 32 and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word Version 97-2003 in 13-point Century font in the body of the brief, and 12-point Century font in the footnotes.

June 15, 2011                       By:    s/ John W. Rotunno

John W. Rotunno
K&L Gates LLP
70 West Madison Street, Suite 3100
Chicago, Illinois  60602-4207
t: (312) 372.1121
f: (312) 827-8000
john.rotunno@klgates.com

*Attorney for Defendants-Appellees Weston W. Marsh, Joe F. Hanauer, John E. Neal, William R. Rybak, Stephen B. Timbers, David D. Tripple and Calamos Convertible Opportunities and Income Fund*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 15, 2011, the Brief and Supplemental Appendix of Defendants-Appellees was filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system.

The undersigned also certifies that the following participant listed below is a registered CM/ECF user and that service of the Brief will be accomplished by the CM/ECF system.  On June 15, 2011, one copy of the Brief was sent via U.S. Mail, proper postage prepaid:

Carol V. Gilden
Cohen Milstein Sellers & Toll PLLC
190 South LaSalle Street
Suite 1705
Chicago, Illinois 60603

June 15, 2011                          By:   s/ John W. Rotunno

John W. Rotunno
K&L Gates LLP
70 West Madison Street, Suite 3100
Chicago, Illinois  60602-4207
t: (312) 372.1121
f: (312) 827-8000
john.rotunno@klgates.com

*Attorney for Defendants-Appellees Weston W. Marsh, Joe F. Hanauer, John E. Neal, William R. Rybak,  Stephen B. Timbers, David D. Tripple and Calamos Convertible Opportunities and Income Fund*

# SUPPLEMENTAL APPENDIX

UNITED STATES OF AMERICA
BEFORE THE
SECURITIES AND EXCHANGE COMMISSION

INVESTMENT COMPANY ACT OF 1940
Release No. 28615 / February 10, 2009

_____
                                                        :
In the Matter of                                        :
                                                        :
CALAMOS CONVERTIBLE OPPORTUNITIES AND INCOME FUND :
CALAMOS CONVERTIBLE AND HIGH INCOME FUND                :
CALAMOS STRATEGIC TOTAL RETURN FUND                     :
CALAMOS GLOBAL DYNAMIC INCOME FUND                      :
                                                        :
c/o Calamos Advisors LLC                                :
2020 Calamos Court                                      :
Naperville, IL 60563                                    :
                                                        :
(812-13552)                                             :
_____:


ORDER UNDER SECTION 6(c) OF THE INVESTMENT COMPANY ACT OF 1940
GRANTING AN EXEMPTION FROM SECTIONS 18(a)(1)(A) AND (B) OF THE ACT

Calamos Convertible Opportunities and Income Fund, Calamos Convertible and High
Income Fund, Calamos Strategic Total Return Fund, and Calamos Global Dynamic
Income Fund filed an application on July 24, 2008 and amendments to the application on
October 14, 2008, December 18, 2008, January 12, 2009, and January 14, 2009,
requesting an order under section 6(c) of the Investment Company Act of 1940 (Act) for
an exemption from sections 18(a)(1)(A) and (B) of the Act.  The order would permit the
applicants, for a period from the date of the order until October 31, 2010, to issue or incur
debt subject to asset coverage of 200% that would be used to refinance all of the
applicants' auction rate preferred shares issued prior to February 1, 2008 that are
outstanding at the time of the order.  The order also would permit the applicants to
declare dividends or any other distributions on, or purchase, capital stock during the term
of the order, provided that any such debt has asset coverage of at least 200% after
deducting the amount of such transaction.

On January 14, 2009, a notice of the filing of the application was issued (Investment
Company Act Release No. 28603).  The notice gave interested persons an opportunity to
request a hearing and stated that an order disposing of the application would be issued

unless a hearing was ordered.  No request for a hearing has been filed, and the Commission has not ordered a hearing.

The matter has been considered and it is found, on the basis of the information set forth in the application, as amended, that granting the requested exemption is appropriate in and consistent with the public interest, and consistent with the protection of investors and the purposes fairly intended by the policy and provisions of the Act.

Accordingly, in the matter of Calamos Convertible Opportunities and Income Fund, *et al*., (File No. 812-13552),

IT IS ORDERED, under section 6(c) of the Act, that the requested exemption from sections 18(a)(1)(A) and (B) of the Act is granted, effective immediately, subject to the conditions contained in the application, as amended.

For the Commission, by the Division of Investment Management, under delegated authority.

Florence E. Harmon
Deputy Secretary