## No. 11-1785

# In the
# United States Court of Appeals
## for the Seventh Circuit

CHRISTOPHER BROWN, Individually and
on Behalf of All Others Similarly Situated,

*Plaintiff-Appellant,*

v.

JOHN P. CALAMOS, SR., Trustee of the
Calamos Convertible Opportunities and Income Fund, et al.,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division, No. 10-cv-6558.
The Honorable **Elaine E. Bucklo**, Judge Presiding.

## REPLY BRIEF OF PLAINTIFF-APPELLANT

CAROL V. GILDEN
COHEN MILSTEIN SELLERS & TOLL PLLC
190 South LaSalle Street, Suite 1705
Chicago, Illinois 60603
(312) 357-0370

STEVEN J. TOLL
JOSHUA S. DEVORE
JOSHUA M. KOLSKY
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue, NW, Suite 500 West
Washington, DC 20005
(202) 408-4600

LYNN L. SARKO
KELLER ROHRBACK, LLP
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
(206) 623-1900

GARY GOTTO
JAMES A. BLOOM
KELLER ROHRBACK, P.L.C.
3101 North Central Avenue, Suite 1400
Phoenix, Arizona 85012
(602) 248-0088

*Attorneys for Plaintiff-Appellant*

## ORAL ARGUMENT REQUESTED



PRINTED ON RECYCLED PAPER



# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ......................................................................................................... 3

I.      The Complaint Does Not Allege any Untrue Statements ....................................... 3

II.     The Complaint Does Not Allege any Omissions of Material Fact .......................... 9

III.    The Allegations at Issue are Immaterial to Plaintiff's Claims ............................... 12

        A.      The Necessary Component Test is Supported by the Overwhelming
                Weight of Authority, the Statutory Text and Intent, and the
                Realities of Pleading Requirements .............................................................. 12

        B.      The Allegations of Defendants' Statements and Conflicts of Interest
                are Immaterial Details .................................................................................. 17

        C.      Plaintiff has not Waived this Issue ............................................................... 19

IV.     There is no Connection Between Any Untrue Statements or Material
        Omissions and any Purchases or Sales of Covered Securities ............................... 20

V.      The District Court's Decision is Contrary to the Purposes of SLUSA .................. 24

CONCLUSION .................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Amcast Indus. Corp. v. Detrex Corp.*,
   2 F.3d 746 (7th Cir. 1993) ............................................................................20

*Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*,
   521 F.3d 1278 (10th Cir. 2008) ...................................................................13

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ...........................................................................17, 18

*Atkinson v. Morgan Asset Management, Inc.*,
   664 F. Supp. 2d 898 (W.D. Tenn. 2009) ....................................................13

*Beckett v. Mellon Investor Servs., Inc.*,
   No. 06-5245, 2006 U.S. Dist. LEXIS 81911 (W.D. Wash. Nov. 8, 2006) ......................8, 12

*Beckett v. Mellon Investor Servs. LLC*,
   329 Fed. Appx. 721 (9th Cir. 2009) ...................................................8, 11, 12

*Blue Chip Stamps v. Manor Drug Stores*,
   421 U.S. 723 (1975) ......................................................................................22

*Bomarko, Inc. v. Int'l Telecharge, Inc.*,
   794 A.2d 1161 (Del. Ch. 1999) ...................................................................12

*Boyce v. AIM Mgmt. Group, Inc.*,
   No. 04-2587, 2007 U.S. Dist. LEXIS 99251 (S.D. Tex. Sept. 17, 2007) .......................15-16

*Boyd v. Phoenix Funding Corp.*,
   366 F.3d 524 (7th Cir. 2004) ......................................................................20

*Breakaway Solutions, Inc. v. Morgan Stanley & Co.*,
   C.A. No. 19522, 2004 Del. Ch. LEXIS 125 (Del. Ch. Aug. 27, 2004) ................................14

*Brehm v. Eisner*,
   746 A.2d 244 (Del. 2000) ............................................................................19

*In re Charles Schwab Corp. Sec. Litig.*,
   257 F.R.D. 534 (N.D. Cal. 2009) ................................................................14

*City of Chicago v. Beretta U.S.A. Corp.*,
    821 N.E.2d 1099 (Ill. 2004) ........................................................................17

*Daniels v. Morgan Asset Mgmt.*,
    743 F. Supp. 2d 730 (W.D. Tenn. 2010) ...................................................15

*Felton v. Morgan Stanley Dean Witter & Co.*,
    429 F. Supp. 2d 684 (S.D.N.Y. 2006) ..........................................................7

*Gantler v. Stephens*,
    965 A.2d 695 (Del. 2009) ............................................................................19

*Gavin v. AT&T Corp.*,
    464 F.3d 634 (7th Cir. 2006) ...........................................................16 21, 23

*Grund v. Delaware Charter Guarantee & Trust Co.*,
    No. 09-8025, 2011 U.S. Dist. LEXIS 56918 (S.D.N.Y. May 26, 2011) ...........7, 14

*Gurfein v. Ameritrade, Inc.*,
    No. 04-9526, 2006 U.S. Dist. LEXIS 75374 (S.D.N.Y. Oct. 16, 2006) ...............14

*Jones v. Bock*,
    549 U.S. 199 (2007) .....................................................................................16

*Kircher v. Putnam Funds Trust*,
    403 F.3d 478 (7th Cir. 2005) .......................................................................11

*Kircher v. Putnam Funds Trust*,
    547 U.S. 633 (2006) .....................................................................................11

*Kurz v. Fidelity Mgmt. & Research Co.*,
    No. 07-709, 2008 U.S. Dist. LEXIS 45332 (S.D. Ill. June 10, 2008) .................7

*Kutten v. Bank of Am., N.A.*,
    530 F.3d 669 (8th Cir. 2008) .........................................................................8

*LaSala v. Bank of Cyprus Pub. Co. Ltd.*,
    510 F. Supp. 2d 246 (S.D.N.Y. 2007) ...................................................14, 15

*LaSala v. Bordier Et Cie*,
    519 F.3d 121 (3d Cir. 2008) .....................................................................14, 16

*LaSala v. UBS, AG*,
    510 F. Supp. 2d 213 (S.D.N.Y. 2007) ..........................................................14

*Levinson v. PSCC Servs., Inc.*,
    No. 09-00269, 2010 U.S. Dist. LEXIS 137537 (D. Conn. Dec. 29, 2010) ........................14

*LID Assocs. v. Dolan*,
    324 Ill. App. 3d 1047 (2001) .................................................................................12

*In re Lord Abbett Mut. Funds Fee Litig.*,
    553 F.3d 248 (3d Cir. 2009) ..................................................................................15

*Merill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*,
    547 U.S. 71 (2006) ...............................................................................15, 22, 23

*Miller v. Nationwide Life Ins. Co.*,
    391 F.3d 698 (5th Cir. 2004) ................................................................................13

*In re Mut. Funds Inv. Litig.*,
    309 Fed. Appx. 722 (4th Cir. 2009) .........................................................................8

*Norman v. Salomon Smith Barney Inc.*,
    350 F. Supp. 2d 382 (S.D.N.Y. 2004) ....................................................................23

*Patterson v. IRS*,
    56 F.3d 832 (7th Cir. 1995) ...................................................................................20

*Rabin v. JPMorgan Chase Bank*,
    No. 06-5452, 2007 U.S. Dist. LEXIS 57437 (N.D. Ill. Aug. 3, 2007)..................................7

*Romano v. Kazacos*,
    609 F.3d 512 (2d Cir. 2010) ............................................................................7, 23

*Rowinski v. Salomon Smith Barney, Inc.*,
    398 F.3d 294 (3d Cir. 2005) ............................................................................13, 20

*SEC v. Zandford*,
    535 U.S. 813 (2002)..............................................................................................23

*Segal v. Fifth Third Bank*,
    581 F.3d 305 (6th Cir. 2009) .............................................................................7, 14

*Singleton v. Wulff*,
    428 U.S. 106 (1976)..............................................................................................20

*Smit v. Charles Schwab & Co., Inc.*,
    No. 10-03971, 2011 U.S. Dist. LEXIS 25589 (N.D. Cal. Mar. 8, 2011).............................5

*Stoody-Broser v. Bank of America*,
   No. 08-02705, 2009 U.S. Dist. LEXIS 75599 (N.D. Cal. Aug. 25, 2009) ................8, 12, 14

*Xpedior Creditor Trust v. Credit Suisse First Bos. (USA) Inc.*,
   341 F. Supp. 2d 258 (S.D.N.Y. 2004)...................................................................14

**STATUTES**

15 U.S.C. § 77p(b) ...............................................................................................7, 15, 16

15 U.S.C. § 77p(f)(2)(A)(ii)...................................................................................16

28 U.S.C. § 1332(d)(9)...........................................................................................10

## PRELIMINARY STATEMENT

It is an irony worth noting that the only misrepresentations in this case are in Defendants' appellate brief, which is filled with self-serving and hyperbolic mischaracterizations of the Complaint.  Defendants assert that Plaintiff's case is a "paradigm case for application of SLUSA" and "prototypical of the kind of action that SLUSA was enacted to address."  Def's Br. at 14, 25, 54.  Whatever one can say about this case, it is anything but the typical SLUSA case.

For example, far from the "prototypical" case, Defendants here do not seriously dispute that the statements at issue were indeed true.  Instead, they reach desperately in an attempt to show that the statements "led common shareholders to [a] mistaken conclusion" but base their argument on unwarranted assumptions, not the allegations in the Complaint.  Also, unlike other cases involving SLUSA preemption, the only purchases at issue for the SLUSA analysis occurred *before* the statements Defendants contend were misleading were made, so the statements could not have been made "in connection with" any such purchases.

Defendants are relegated to arguing that the (true) statements made by Defendants were nonetheless misleading because Defendants failed to disclose that they would later breach their fiduciary duties.  This argument is extreme, unsupported, and could be made in <u>every</u> case because every case implicitly involves a failure to disclose that the defendants would violate their obligations somehow in the future.

1

Despite their insistence that this case is "prototypical," Defendants cite no apposite authority – no case where a court has dismissed a complaint under SLUSA on similar facts as here. Instead, each of the cases cited by Defendants either expressly alleged a misrepresentation or clearly implied a misrepresentation. Tellingly, Defendants completely ignore almost every one of the several cases that Plaintiff cited in his opening brief where courts have declined to find SLUSA preemption applicable.

Lacking helpful authority, Defendants resort to distorting the allegations in the Complaint. For example, they repeatedly draw a false contrast by juxtaposing the statements referenced in the Complaint and the AMPS redemptions. Defendants assert that "the Complaint allege[s] . . . that the mutual fund publicly represented that investment leverage provided by auction rate preferred shares 'would continue indefinitely' but then instead redeemed the preferred shares." Def's Br. at 2; *see also id.* at 2-3 (stating that Plaintiff "claims that the Fund publicly represented . . . that investors would 'indefinitely' enjoy the benefits of investment leverage provided by [AMPS]. . . but that the Fund instead redeemed the shares"), *id.* at 6, 12. But the Complaint contains no such allegations – it merely alleges that Defendants mentioned the indisputably true fact that the terms of the AMPS were perpetual. Defendants hope to create the impression that the Complaint alleges misleading statements by taking those statements out of context and contrasting them with unrelated allegations – a tactic which should be rejected.[1]

---

[1]Defendants erroneously question Plaintiff's assertion that the District Court stated that Plaintiff was not entitled to submit a reply brief. Def's Br. at 9. The District Court was

## ARGUMENT

**I.     The Complaint Does Not Allege any Untrue Statements**

Defendants do not seriously dispute that the statements regarding the perpetual term of the AMPS were true.  Instead, they argue (1) that the Complaint does not allege that the statements were true, (2) that the truth of the statements later "evaporated," and (3) that the statements created a misleading impression.  Each of these arguments is erroneous.

First, Defendants are simply incorrect in claiming that the Complaint does not allege that the statements were true.  Def's Br. at 19.  The Complaint expressly states, several times, that the term of the AMPS were perpetual.  ¶2 (SA-13) ("the AMPS had no maturity"); ¶12 (SA-16) ( "the [AMPS] financing was perpetual"); ¶12(b) (SA-17) ("The term of the AMPS financing . . . was perpetual."); ¶20 (SA-21) ("the AMPS issued by the Fund, [had] no maturity date[.]"); ¶31 (SA-26) ("[T]he AMPS have a perpetual term"); *id*. ("The AMPS . . . had a perpetual term").  It is difficult to understand how a complaint could be read to allege that a statement was false when the complaint repeatedly alleges the very same thing as a fact.

Notably, Defendants do <u>not</u> and <u>cannot</u> state that the AMPS had a term of limited duration.  Nor do they address the definitions of "perpetual preferred stock" contained in multiple federal regulations, cited in Plaintiff's opening brief.  Pl's Br. at 12.  Nor do they offer any competing definition of the term.

---

clear: "I'll give you two weeks to file your response, and that's going to be the end of briefing on this.  That's it. . . .   [Y]ou [Defendants] get a response.  That's all I usually have on a motion for remand."  (SA-43).

Instead, Defendants quote the District Court's opinion stating that "any 'truth' the statements may once have had had plainly evaporated" and that if the statements were literally true, "plaintiff presumably would have no claim at all, since the AMPS would never have been redeemed in the first place." Def's Br. at 20. This argument is based on a misunderstanding of the nature of the AMPS. The fact that the redemptions occurred does <u>not</u> mean the term of the AMPS was non-perpetual. Financing with a perpetual term simply means that there is no predetermined end-date, as there is with a traditional 30-year home loan or a 5-year car loan. Unlike these types of debt financing, AMPS are <u>equity</u> securities and therefore have no term that specifies a particular duration. Complaint ¶2 (SA-13). But the lack of a predetermined end-date does not mean that the financing will continue forever. Perpetual financing can be discontinued on any number of grounds, which are typically specified in the agreements governing the financing. The fact that the financing ends at some point does not mean that the financing has a non-perpetual term. The District Court was simply incorrect to conclude that the perpetual term meant that "the AMPS would never have been redeemed." Opinion (A-9). All parties agree that Defendants had the right to redeem the AMPS under appropriate circumstances, so the fact that they did so does not somehow change the term of the AMPS.[2]

---

[2] The same is true of non-perpetual debt financing. If a person takes out a 30-year mortgage but repays it after 15 years, that does not convert the 30-year mortgage into a 15-year mortgage; it just means that the 30-year mortgage was paid off early. Likewise, if financing with a perpetual term is redeemed at some point, that does not impose a term of limited duration onto the financing.

*Smit v. Charles Schwab & Co.*, No. 10-03971, 2011 U.S. Dist. LEXIS 25589 (N.D. Cal. Mar. 8, 2011), on which Defendants rely, is distinguishable on this ground. There, the plaintiff alleged that the "defendants made statements about the fund and how it would manage investors' money" but that the "defendants did not keep their word." *Id*. at *14-15. The plaintiffs there expressly recognized that the defendants' statements "became false or misleading" and that they "became incorrect years later[.]" *Id*. at 18. Here, as explained above, the statements at issue are as true today as they were when made. Indeed, Defendants do not contend that the AMPS now have some non-perpetual term.

In fact, Defendants appear to suggest that the AMPS "technically" have a "'perpetual' term." Def's Br. at 21. Apparently realizing that the statements at issue are literally true, Defendants attempt to show that those statements nonetheless "led common shareholders to [a] mistaken conclusion." *Id*. at 22. Defendants assert that the "substance of Brown's claim is that prospective investors in Fund common shares ostensibly were led to believe that the AMPS *would not* be redeemed[.]" *Id*. at 21. This argument must be rejected, for several reasons.

First, despite Defendants' self-serving assertion that it is "[t]he substance of Brown's claims," there is nothing in the Complaint to suggest that any prospective investor had the impression that redemptions would never take place, and certainly nothing to suggest that any statements by Defendants created such an impression. Indeed, common shareholders would have expected Defendants to redeem the AMPS if doing so would benefit the Fund and the common shareholders. Defendants argue that

by recognizing this fact, Plaintiff "reads the Fund's publications to mean that redemption might occur *only if it were beneficial to common shareholders*."  Def's Br. at 22-23.  That is not an expectation derived from any of the "Fund's publications," but rather a belief that Defendants would act in accordance with their fiduciary obligations imposed by the law.

Likewise, the fact that one of the investment rationales was that leverage would be available to provide cash flow did not mean that redemptions would never take place, particularly if changed circumstances meant that redemptions were appropriate.  *See* Def's Br. at 21-22.  Again, any expectation of the common shareholders that Defendants would follow their fiduciary duties in determining whether to redeem was not a misleading impression created by Defendants' statements but rather a general background assumption of all investors.

Second, Defendants' argument has near-universal application.  Their argument is effectively this: because Defendants discussed (accurately) a feature of the AMPS, but did not also disclose that they would later breach their fiduciary duties, the statements were misleading.  That argument could be made <u>anytime</u> a defendant makes an accurate statement without disclosing its wrongful conduct in advance.  A defendant could always argue that the accurate statement created a misleading impression because the plaintiff expected that the defendant would follow the law.

Third, Defendants cannot manufacture SLUSA preemption by implying a false statement into a Complaint where one does not exist.  SLUSA preemption does not turn on whether a defendant can concoct a post-hoc argument for why a true statement was

misleading. Rather, it turns on whether the "private party alleg[es]" an untrue statement. 15 U.S.C. § 77p(b). Defendants do not even address <u>any</u> of the several cases cited in Plaintiff's opening brief where courts squarely rejected similar attempts by defendants to read allegations of misrepresentations into a complaint. Pl's Br. at 20-21.[3]

Defendants cite several cases in an attempt to argue that the Complaint implicitly alleges a misrepresentation. Each of those cases is distinguishable as each involved a complaint that clearly alleged misrepresentations. *See Segal v. Fifth Third Bank*, 581 F.3d 305, 309-10 (6th Cir. 2009) (complaint expressly alleged misrepresentations and omissions including that the defendant "failed to inform" the plaintiffs of certain information and that the defendant carried out a "scheme" that was "intended to (and did) lure" plaintiffs); *Kurz v. Fidelity Mgmt. & Research Co.*, No. 07-709, 2008 U.S. Dist. LEXIS 45332, at *9-10 (S.D. Ill. June 10, 2008) (complaint alleged that the defendant had no intention of complying with its contractual provision and alleged that plaintiffs were "unaware" of a secret bribery scheme); *Romano v. Kazacos*, 609 F.3d 512, 521 (2d Cir. 2010) (complaint expressly alleged that defendants made "uniform misrepresentations," "misrepresented or concealed material facts" and communicated "inaccurate, incomplete, or erroneous information"); *Rabin v. JPMorgan Chase Bank*, No. 06-5452, 2007 U.S. Dist. LEXIS 57437, at *17-18 (N.D. Ill. Aug. 3, 2007) (complaint expressly alleged that registration statements "omitted material facts . . . and misrepresented material facts"); *Felton v. Morgan Stanley Dean Witter & Co.*, 429 F. Supp. 2d 684, 693 (S.D.N.Y.

---

[3] A case decided since Plaintiff filed his opening brief reaffirms this principle. *See Grund v. Delaware Charter Guarantee & Trust Co.*, No. 09-8025, 2011 U.S. Dist. LEXIS 56918, at *25 (S.D.N.Y. May 26, 2011).

2006) (complaint alleged that the plaintiffs were misled about what they were paying for: "While [the defendant's] customers believed that they were paying for and receiving informed and objective investment advice, they actually received recommendations based on [the defendant's] existing or desired investment banking deals"); *Beckett v. Mellon Investor Servs.*, No. 06-5245, 2006 U.S. Dist. LEXIS 81911, at *10 (W.D. Wash. Nov. 8, 2006) (allegation that defendants were charging "undisclosed fees");[4] *Stoody-Broser v. Bank of America*, No. 08-02705, 2009 U.S. Dist. LEXIS 75599, at *12-13 (N.D. Cal. Aug. 25, 2009) (allegations of violations "inherently require disclosure and notice"; plaintiff alleged "that the Defendants' conduct kept Plaintiff uninformed and statements reflecting the investments were made only after the investment decisions were effected").[5]

---

[4] The Ninth Circuit's affirmance of part of the *Beckett* ruling relied on the fact that the plaintiff specifically alleged that the fees were undisclosed. *See Beckett v. Mellon Investor Servs. LLC ("Beckett II")*, 329 Fed. Appx. 721, 723 (9th Cir. 2009) ("Beckett himself alleges in the complaint, 'Defendant charged Plaintiff a Trading Fee . . . and a Service Fee . . . in connection with its sale of the shares of Washington Mutual, notwithstanding that such fees were never disclosed or agreed to by Plaintiff.' All his claims to some extent rely on the allegation that Mellon did not disclose its fees[.].").  Notably, the Ninth Circuit reversed the district court in part and permitted the plaintiff to amend his complaint, holding that the plaintiff "could allege a breach of fiduciary duty class claim[.]"  *Id.* at 723-24.

[5] Defendants also cite two very short opinions that give almost no details of the allegations of the complaints in those cases.  As best one can tell, those cases do not support Defendants' argument.  *See In re Mut. Funds Inv. Litig.*, 309 Fed. Appx. 722, 724-25 (4th Cir. 2009) (initial complaint in the matter expressly alleged "Defendants deceived policyholders" and the operative complaint was based on the same conduct); *Kutten v. Bank of Am., N.A.*, 530 F.3d 669, 670 (8th Cir. 2008) (noting plaintiffs in "nearly identical" case had actually conceded that their complaint alleged the defendant "misrepresented and omitted material facts").

In each of these cases, the courts found that the complaint's allegations revealed that the claims were based fundamentally on fraudulent conduct. None of the cases support Defendants' extreme interpretation of SLUSA, which would require preemption any time a complaint alleges a true statement by a defendant unless the defendant revealed its intention to violate the law. It is telling that Defendants cannot cite even a single case where a court held SLUSA applicable on facts similar to here.

## II.     The Complaint Does Not Allege any Omissions of Material Fact

Defendants do not dispute that the business relationships between the Calamos Sponsorship Group and various investment banks and brokers were fully disclosed. Instead, Defendants' argument is essentially that the business relationship created a motive for Defendants to redeem the AMPS, and that motive was undisclosed. Def's Br. at 26-28. Defendants are splitting hairs. It was the business relationship itself that constituted the conflict of interest and that was disclosed. Defendants cite no cases holding that the failure to disclose a motive is an omission of material fact giving rise to SLUSA preemption.

Defendants did not argue in their notice of removal or omnibus memorandum filed with the District Court that the Complaint alleges any undisclosed conflict of interest or motive. Dkt. 1, 18-1. Now, however, they maintain that the "omission at the heart of the Complaint . . . is a failure to disclose that (purportedly) the AMPS would be replaced with shorter term and/or higher cost leverage if that became necessary in order to provide liquidity to AMPS holders and thereby 'placate' investment banks and brokers[.]" Def's Br. at 28. This is so because Plaintiff's claims would supposedly "fail

in the event the Fund had announced its intention . . . to redeem the AMPS in event of auction market failure." *Id*. In other words, according to Defendants, the failure of Defendants to announce that they would breach their fiduciary duties in order to satisfy the investment banks and brokers is itself a material omission. Defendants believe that if "disclosure would defeat the claim asserted in a complaint," the failure to disclose it is a material omission. *Id*. at 30.

Defendants' argument is ludicrous. If the argument were correct, SLUSA would apply to <u>every</u> state law class action involving covered securities, because a defendant could always argue that its failure to disclose its wrongful conduct in advance constituted an omission of a material fact. Therefore, Defendants' argument effectively reads out of SLUSA the requirement of an untrue statement or material omission because, under Defendants' interpretation, that element would be present in every case. In <u>every</u> action alleging a breach of fiduciary duty by corporate directors, the defendants would simply have to assert they did not announce they were going to breach their duties, and SLUSA preemption would apply – effectively ending shareholders' rights class actions; something that Congress has seen fit to ensure does not occur. *See* 28 U.S.C. § 1332(d)(9) (excluding state law claims concerning corporate governance from grant of federal jurisdiction in Class Action Fairness Act of 2005).[6]

---

[6] Moreover, Plaintiff's claims would not fail had the redemptions been announced earlier. Even if a defendant could immunize itself by announcing its plan to breach its duties, in this case, investors could not be seen to have acquiesced in any breaches of fiduciary duty relating to the redemptions because announcements of the redemptions would not necessarily indicate that the redemptions would be harmful to the investors' interests.

Unsurprisingly, *Kircher v. Putnam Funds Trust*, 403 F.3d 478 (7th Cir. 2005) does not support Defendants' extremely broad interpretation of SLUSA.  In *Kircher*, whether the claim involved untrue statements or material omissions was expressly not at issue. *Id*. at 482-83.  The issue there was whether the misrepresentations were "in connection with" purchases or sales of securities and the Court's ruling did not address how to determine whether a complaint alleges a misrepresentation in the first instance.  *Id*. at 484.[7]  Nor does *Beckett* support Defendants' position.  There, the plaintiff specifically alleged that he was charged undisclosed fees.  *See Beckett II*, 329 Fed. Appx. at 723.

Defendants claim that Plaintiff conceded in the District Court that the Complaint may allege misrepresentations regarding the reasons for the redemptions.  Def's Br. at 31.  There was no such concession.  In fact, the previous sentence to the one quoted by Defendants states outright: "There is no allegation of any misrepresentation or omission."  Dkt. 23 at 6.  Plaintiff was merely pointing out that even if, hypothetically, the Complaint was construed to allege a misrepresentation regarding the reasons the redemptions had taken place, those misrepresentations would not be "in connection with" any purchase or sale as they were made *after* the redemptions occurred, and after any purchase by Plaintiff.

Finally, Defendants also argue that the Complaint alleges an omission because it seeks the return of fees from Defendants.  Def's Br. at 31.  The argument is completely meritless.  Plaintiff's request for the disgorgement of "all monetary benefits received,"

---

[7] Not only is *Kircher* irrelevant to the issue here, but the decision was vacated on jurisdictional grounds and therefore lacks the force of precedent.  *See Kircher v. Putnam Funds Trust*, 547 U.S. 633, 648 (2006).

Complaint ¶60 (SA-36), is a standard remedy for a breach of fiduciary duty. *See, e.g.,* *Bomarko, Inc. v. Int'l Telecharge, Inc.*, 794 A.2d 1161, 1187-88 (Del. Ch. 1999) (ordering disgorgement of fees based on "the fundamental principal that a disloyal fiduciary is not entitled to profit from his breach"); *LID Assocs. v. Dolan*, 324 Ill. App. 3d 1047, 1071 (2001) ("As a matter of public policy, a willful and deliberate breach of a fiduciary duty requires complete forfeiture of all compensation during the period of the breach."). The Complaint seeks the return of fees and other revenues based on the fact that Defendants breached their fiduciary duties, not because any fees were undisclosed. *Contra Beckett*, 2006 U.S. Dist. LEXIS 81911, at *11. The Complaint does not allege that any fees were undisclosed nor could it, as all of the management fees were disclosed.[8]

## III. The Allegations at Issue are Immaterial to Plaintiff's Claims

### A. The Necessary Component Test is Supported by the Overwhelming Weight of Authority, the Statutory Text and Intent, and the Realities of Pleading Requirements

Numerous courts have adopted the "necessary component test" to determine whether an untrue statement or omission of material fact is an integral fact supporting SLUSA preemption or merely an extraneous detail. Pl's Br. at 13-14. Defendants cite several cases in an attempt to cast doubt on the necessary component test, many of

---

[8] Defendants' cases are distinguishable on this ground. *See Stoody-Broser*, 2009 U.S. Dist. LEXIS 75599, at *13 (mentioning claims for "excessive fees," which presumably had not been disclosed); *Beckett*, 2006 U.S. Dist. LEXIS 81911, at *10 (plaintiffs alleged they were charged "undisclosed fees" and sought their return); *see also Beckett II*, 329 Fed. Appx. at 723. These cases have no relevance where a plaintiff seeks the return of disclosed fees.

which do not even address the issue.[9]  Defendants also rely on a misreading of the Third Circuit's decision in *Rowinski v. Salomon Smith Barney, Inc.*, 398 F.3d. 294 (3d Cir. 2005).  In that case, the plaintiff argued that his breach of contract claim did not involve a misrepresentation because a misrepresentation was not an essential legal element of his claim.  398 F.3d at 300.  The misrepresentations in his complaint, he argued, were facts – not legal elements – and therefore could not give rise to SLUSA preemption.  *Id*. The court held that the "suggested distinction – between the legal and factual allegations in a complaint – is immaterial under the statute."  *Id*.  The Third Circuit later clarified the *Rowinski* holding:

> It is important to recognize that *Rowinski* did not hold that any time a misrepresentation is alleged, the misrepresentation-in-connection-with-a-securities-trade ingredient is present. . . .  Rather, the point we made in *Rowinski* was that when an allegation of misrepresentation in connection with a securities trade, implicit or explicit, <u>operates as a factual predicate</u> to a legal claim, that ingredient is met. To be a factual predicate, the fact of a misrepresentation must be one that gives rise to liability, not merely an extraneous detail. This distinction is important because complaints are often filled with more information than is necessary. While it may be unwise (and, in some cases, a violation of Rule 8) to set out extraneous allegations of misrepresentations in a complaint, the inclusion of such extraneous allegations does not operate to require that the complaint must be dismissed under SLUSA.

---

[9] *Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1285 (10th Cir. 2008) (issue was whether claims avoided SLUSA because they did not require proof of scienter or reliance); *Miller v. Nationwide Life Ins. Co.*, 391 F.3d 698, 702 (5th Cir. 2004) (issue was whether claim that clearly alleged a misrepresentation avoided SLUSA because it was styled as a claim for breach of contract); *Atkinson v. Morgan Asset Management, Inc.*, 664 F. Supp. 2d 898, 906-07 (W.D. Tenn. 2009) (issue was whether claims alleged misrepresentations – there was no argument that the misrepresentations were merely background details).

*LaSala v. Bordier Et Cie*, 519 F.3d 121, 141 (3d Cir. 2008) (emphasis added).[10]

　　*Segal* is also distinguishable.  The claims there were expressly premised on fraud, as they alleged that the defendant "failed to inform" the plaintiffs of certain information and that the defendant carried out a "scheme" that was "intended to (and did) lure" the plaintiffs.  581 F.3d at 309-10.  Those allegations were central to the claims and the plaintiff did not argue otherwise.  Therefore, the *Segal* holding, although phrased in broad terms, does not address the issue presented here.

　　In any event, the great weight of authority holds that allegations must be integral to a claim to give rise to SLUSA preemption.  *See, e.g.*, *LaSala*, 519 F.3d at 141; *Grund*, 2011 U.S. Dist. LEXIS 56918, at *27-28; *Levinson v. PSCC Servs., Inc.*, No. 09-00269, 2010 U.S. Dist. LEXIS 137537, at *29 (D. Conn. Dec. 29, 2010); *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 551 (N.D. Cal. 2009); *Stoody-Broser*, 2009 U.S. Dist. LEXIS 75599, at *12-13; *LaSala v. Bank of Cyprus Pub. Co. Ltd.*, 510 F. Supp. 2d 246, 272-73 (S.D.N.Y. 2007); *LaSala v. UBS, AG*, 510 F. Supp. 2d 213, 239-40 (S.D.N.Y. 2007); *Gurfein v. Ameritrade, Inc.*, No. 04-9526, 2006 U.S. Dist. LEXIS 75374, at *4-5 (S.D.N.Y. Oct. 16, 2006); *Xpedior Creditor Trust v. Credit Suisse First Bos. (USA) Inc.*, 341 F. Supp. 2d 258, 261 (S.D.N.Y. 2004);[11] *Breakaway Solutions, Inc. v. Morgan Stanley & Co.*, No. 19522, 2004 Del. Ch. LEXIS

---

[10] Defendants' interpretation of *Rowinski* is directly contrary to the Third Circuit's own further discussion in *LaSala*.  Def's Br. at 36, 37 & n.15.  Obviously, the Third Circuit's analysis of its own opinion should control over Defendants'.

[11] Defendants imply that *Xpedior* is suspect because it was "rendered two years prior to the decision in *Dabit*."  Def's Br. at 34.  However, in *Dabit*, there was no dispute that the complaint alleged an untrue statement or material omission.  The complaint clearly alleged that "misrepresentations and manipulative tactics caused [the plaintiff and class members] to hold onto overvalued securities[.]"  *Merill Lynch, Pierce, Fenner & Smith Inc.*

125, at *28-39 (Del. Ch. Aug. 27, 2004). Even Defendants' own case law is in accord. *See Daniels v. Morgan Asset Mgmt.*, 743 F. Supp. 2d 730, 738 (W.D. Tenn. 2010) ("SLUSA requires dismissal of state-law claims that rely on misrepresentations, material omissions, or manipulations 'as an integral part of the conduct giving rise to the claims.'").

Defendants argue that the necessary component test is contrary to SLUSA's statutory language. However, Defendants' interpretation would lead to absurd results. SLUSA applies to a "covered class action . . . alleging . . . an untrue statement or omission of a material fact in connection with the purchase or sale of a covered security." 15 U.S.C. § 77p(b). Under Defendants' interpretation, the mere presence of an allegation of a misrepresentation anywhere in the complaint – regardless of its significance – requires the dismissal, not only of a single claim, but of the entire "action." Numerous courts have expressly rejected that broad interpretation and held that SLUSA applies at the level of claims, not actions. *See, e.g.*, *Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* ("*Dabit I*"), 395 F.3d 25, 47 (2d Cir. 2005) (holding SLUSA applies to claims, not entire actions), *rev'd on other grounds*, 547 U.S. 71; *In re Lord Abbett Mut. Funds Fee Litig.*, 553 F.3d 248, 254-57 (3d Cir. 2009) (same); *LaSala*, 510 F. Supp. 2d at 275 (same); *Boyce v. AIM Mgmt. Group, Inc.*, No. 04-2587, 2007 U.S. Dist. LEXIS 99251,

---

*v. Dabit* ("*Dabit II*"), 547 U.S. 71 (2006). The only issue in the case was whether the misrepresentations were "in connection with" the purchase or sale of securities. *Id.* at 89. The necessary component test determines whether a complaint contains a misrepresentation. Therefore, nothing in *Dabit II* has any affect on the necessary component test and, indeed, there are several post-*Dabit II* decisions, cited above, which apply the necessary component test.

at *15-16 (S.D. Tex. Sept. 17, 2007) (same); *see also Jones v. Bock*, 549 U.S. 199, 220 (2007) (interpreting similar statute and holding that the phrase "[n]o action shall be brought" was "boilerplate language" that applied to claims). In fact, Defendants' interpretation would in some circumstances require the dismissal of entire groups of lawsuits based on the presence of one alleged misrepresentation. SLUSA broadly defines "covered class action" to include certain groups of consolidated lawsuits. 15 U.S.C. § 77p(f)(2)(A)(ii). Under Defendants' interpretation, if an individual state law fraud action were consolidated with a group of federal securities class actions through a multidistrict litigation proceeding, each of the cases would be preempted under SLUSA because the consolidated action would allege a misrepresentation.

Thus, it cannot be that the mere mention of an untrue statement or omission of material fact (neither of which are alleged here) somewhere in a complaint is sufficient to invoke SLUSA preemption, as a creative defendant will invariably be able to concoct some misstated or omitted fact in every complaint. Indeed, under SLUSA's express terms, the statute does not apply to all allegations of an "untrue statement or omission of a material fact" but only those that are "in connection with the purchase or sale of a covered security." *Id.* § 77p(b). Misrepresentations alleged as background facts do not satisfy the "in connection with" element. *See infra* Section IV.

Moreover, the purpose of SLUSA – which is to preclude only claims that should properly be brought as federal securities fraud actions – would not be served by eliminating actions that only incidentally allege a misrepresentation. *See Gavin v. AT&T Corp.*, 464 F.3d 634, 640 (7th Cir. 2006); *LaSala*, 519 F.3d at 127-28.

16

Finally, Defendants' interpretation is unreasonable in light of the realities of pleading requirements. "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal citations and quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.*; *see also City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1112 (Ill. 2004) (discussing Illinois' fact-pleading standard, which "imposes a heavier burden on the plaintiff" than does a notice-pleading standard). Interpreting SLUSA to apply to background details and non-essential facts would place plaintiffs in a Catch-22: plead only the bare elements of a claim and risk being dismissed for failure to plead sufficient factual content, or plead factual detail and risk SLUSA preemption on the grounds that a background detail alleges an untrue statement or material omission.

**B.    The Allegations of Defendants' Statements and Conflicts of Interest are Immaterial Details**

As discussed in Plaintiff's opening brief, the allegations relating to Defendants' statements and their conflicts of interest are immaterial because none of Plaintiff's claims depend on proof that Defendants made any public statements (much less that they made false statements) or that there were any conflicts of interest (much less that there were undisclosed conflicts of interest). Pl's Br. at 15-16, 21-23. Defendants accuse Plaintiff of trying to "marginalize his own allegations" and suggest that any allegations

17

contained within a complaint must be necessary to the claims. Def's Br. at 33-34, 39. As explained above, Plaintiff was under an obligation to plead sufficient factual details – beyond the basic elements of the claims – to demonstrate that the claims were plausible. Indeed, Defendants argued before the District Court that the Complaint requires even more factual detail than it already contains in order to meet the *Iqbal* pleading standard. Dkt. 17 at 4-5; Dkt. 21 at 3-6.

The allegations relating to Defendants' statements simply show that Defendants were aware of the benefits the AMPS provided to the common shareholders. And the allegations relating to the conflicts of interest merely show that Defendants had a motive to commit the violations alleged. These allegations were included in the Complaint to help demonstrate the plausibility of Plaintiff's claims.[12]

Defendants speculate that the allegations regarding Defendants' statements and conflicts of interest serve to rebut the business judgment rule and are therefore the "factual predicate" of the claims. Def's Br. at 41. Defendants cite no authority holding that facts serving to rebut the business judgment rule can be considered a factual predicate of a claim under SLUSA. At any rate, the allegations are unnecessary to rebut the business judgment rule. Plaintiff can do so by showing that the redemptions cannot

---

[12] Defendants' argument that these allegations were included in the Complaint "four times" – because each count in the Complaint incorporates by reference all prior paragraphs – is a transparent attempt to mischaracterize and overstate their importance. Def's Br. at 32.

be attributed to any rational business purpose.[13]  The Complaint alleges that the AMPS
were favorable financing, Complaint ¶¶12-13 (SA-16-SA-18), and that these favorable
characteristics "continued to benefit the Fund after the failure of the [AMPS] auctions,
and the failure of the auctions did not trigger any redemption obligation on the Fund or
otherwise create a valid business reason for the Fund to redeem the AMPS," *id*. ¶25
(SA-22).  Not only was there no valid business reason, but the redemptions actually
caused significant harm because, *inter alia*, the Individual Defendants replaced the
AMPS financing with disadvantageous debt financing.  *Id*. ¶30 (SA-25).  Consequently,
the business judgment rule does not apply here.

### C.     Plaintiff has not Waived this Issue

Defendants' waiver argument should be rejected for multiple reasons.  First,
Plaintiff <u>did</u> raise the issue before the District Court, as Plaintiff argued below that the
statements Defendants' claimed were misrepresentations were "simply statements of
information made publicly by the Fund," "additional information regarding the nature
of leverage," "factual assertions regarding the capital structure of the Fund,"
"allegations regarding the financing for the redemption of the AMPS," and similar
inconsequential facts.  Dkt. 23 at 3-6.  The District Court believed the issue had been
raised and addressed it directly, ruling on "Plaintiff's argument that the alleged
misrepresentations and omissions are merely background facts" and holding that
SLUSA "does not turn on whether allegations are characterized as facts or as essential

---

[13]  *See Gantler v. Stephens*, 965 A.2d 695, 706 (Del. 2009) (holding that business judgment
rule applies only if the board's "decision can be attributed to any rational business
purpose"); *Brehm v. Eisner*, 746 A.2d 244, 264 n. 66 (Del. 2000).

legal elements of a claim."  Opinion (A-10). [14]  Indeed, in ruling on the issue, the District

Court quoted the same section of the same case that Defendants now quote on appeal.

*Id.* (quoting *Rowinski*., 398 F.3d at 300); *see also* Def's Br. at 36.  Because the District Court

ruled on this issue, it is properly subject to this Court's review, regardless of how

explicitly it was raised.  *See Singleton v. Wulff*, 428 U.S. 106, 121 (1976) (describing

question as whether "a federal appellate court is justified in resolving an issue <u>not</u>

<u>passed on below</u>") (emphasis added).  Also, the issue could not be waived because

Defendants have the burden to establish that the elements of SLUSA are satisfied, *Boyd*

*v. Phoenix Funding Corp.*, 366 F.3d 524, 529 (7th Cir. 2004), which necessarily requires

that they address this issue.  *See Patterson v. IRS*, 56 F.3d 832, 840 (7th Cir. 1995).  Even if,

hypothetically, the issue had been waived, it could still be reviewed because it is a pure

question of law.  *See Amcast Indus. Corp. v. Detrex Corp.*, 2 F.3d 746, 749-50 (7th Cir.

1993).

## IV.  There is no Connection Between Any Untrue Statements or Material Omissions and any Purchases or Sales of Covered Securities

It is important to note that the only statements at issue here are those made on

June 26, 2008 and one from January 14, 2009.  Complaint ¶¶13, 31(a) (SA-18, SA-26-SA-

27).[15]  Defendants vaguely suggest that earlier statements are somehow also relevant to

---

[14] Elsewhere in their brief, Defendants acknowledge that Plaintiff raised the argument before the District Court.  Def's Br. at 10 ("The District Court also rejected <u>Brown's</u> <u>argument</u> that the misrepresentations and omissions alleged in his Complaint were 'merely background facts' not central to his claims[.]" (emphasis added)).

[15] The January 14, 2009 date is reflected in the SEC filing attached to Plaintiff's Motion for Judicial Notice and in paragraph 31(c) of the Complaint.  (SA-28).

the SLUSA analysis, *see* Def's Br. at 43 (citing paragraphs 10 and 12 of the Complaint),

47 (noting that the Complaint "alleges Fund publications reaching back to 2003"), but

Defendants do not argue that any of these statements are untrue.[16]  Therefore, it is

beyond dispute that the Complaint does not allege any untrue statements that occurred

*before* the redemptions, which began on June 2, 2008, Complaint ¶25 (SA-22).

      This fact is dispositive of this appeal.  Defendants argue only that purchases

occurring "prior to redemption of the AMPS" meet the "in connection with"

requirement.  Def's Br. at 44.[17]  However, the only statements argued to be untrue

occurred *after* the redemptions began, so purchases occurring *before* the redemptions

could not be "in connection with" those statements.  *See Gavin*, 464 F.3d at 638-39 (fraud

happened after securities transactions and therefore was not in connection with

transactions).

      Even assuming, contrary to the allegations in the Complaint, that false

statements were made before the redemptions, those statements would still not be in

---

[16] Any such argument by Defendants would be meritless.  None of these statements could remotely be considered false.  Moreover, Defendants did not argue before the District Court that the statements in Paragraph 12 and those from 2003 (quoted in paragraphs 24 and 31(c)) were untrue, *see* Dkt. 1 at 4-6; Dkt. 18-1 at 7-8, so any such argument would be waived.  Defendants did suggest before the District Court that paragraph 10 alleges untrue statements, but wisely have not pursued that meritless argument on appeal.

[17] Clearly, any purchases made after the redemptions were not "in connection with" a misrepresentation about the redemptions, since the market knew about the redemptions at that point.  This provides yet another reason why the statements at issue cannot be considered untrue.  Because each statement occurred *after* the redemptions began, they obviously were not understood to mean that redemptions would never occur.

connection with any purchases or sales of securities because the Complaint does not allege any relationship between any statements and any investments decisions. Defendants place great emphasis on *Dabit II*, but that case only shows why the "in connection with" element is lacking here. The class in *Dabit II* included only investors who were fraudulently induced to hold their securities by the defendants' false statements. 547 U.S. at 76-77. The fact that the class members were fraudulently induced to hold their shares – *i.e.*, their sale of securities was obstructed by fraud – necessarily meant that other investors were fraudulently induced to purchase shares. The misconduct alleged by the plaintiff – "fraudulent manipulation of stock prices— unquestionably qualifies as fraud 'in connection with the purchase or sale' of securities[.]" *Id*. at 89.

Here, in contrast, there is no allegation that anyone took any action or failed to take any action because of a misrepresentation. Rather, the mere fact that an investor owned shares in the Fund at or after the time of the redemptions means the investor was harmed. "Holder" claims, such as those in *Dabit II*, require proof that the plaintiff <u>decided</u> not to sell stock <u>because of</u> the defendant's false statement. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 745-46 (1975); *Dabit I*, 395 F.3d at 29 (class comprised of those who "owned <u>and continued to own</u>" securities and who suffered damages "as a result of owning <u>and holding</u>") (emphasis added).[18] The ownership that

---

[18] Defendants incorrectly state that the *Dabit II* class consisted simply of "owners." Def's Br. at 44.

confers standing here is entirely passive – it involves no decision of any kind – and has no connection to any statements or omissions.

Defendants concede that the Complaint contains no allegations that anyone read or relied upon any statement, but argue that reliance is not necessary under SLUSA. Def's Br. at 45-46.  Courts have held otherwise, *see, e.g.*, *Norman v. Salomon Smith Barney Inc.*, 350 F. Supp. 2d 382, 387 (S.D.N.Y. 2004), and *Dabit II* did not address the issue as reliance was clearly alleged there, 547 U.S. at 76-77.  Even if reliance were not required, however, some connection between the statements and a purchase or sale is.  The Seventh Circuit has held that this connection must be more significant than "a mere 'but for' cause."  *Gavin*, 464 F.3d at 639.  In the Second Circuit, "SLUSA's 'in connection with' standard is met where plaintiff's claims 'turn on injuries caused by acting on misleading investment advice[.]"  *Romano*, 609 F.3d at 522; *see also SEC v. Zandford*, 535 U.S. 813, 825 n.4 (2002) (the phrase "in connection with" "does not transform every breach of fiduciary duty into a federal securities violation").

Defendants do not adequately explain how any purchases were caused by or otherwise connected to any untrue statements.  Their position is that Defendants' statements influenced investors' decisions because a significant feature of the investment rationale for the common shareholders was that the leverage would be available to provide cash flow.  Def's Br. at 42-43.  As explained above, this argument is not based on the Complaint's allegations but rather on the unwarranted assumptions that common shareholders expected that the AMPS would not be redeemed and that such expectation was influenced by Defendants' statements.  *See* Section I.

**V.     The District Court's Decision is Contrary to the Purposes of SLUSA**

Defendants appear to acknowledge that this case could not be brought as a successful federal securities action, but note that SLUSA applies to both good and bad securities fraud claims.  Def's Br. at 48-49.  However, Plaintiff's claims are not bad fraud claims; they are not fraud claims at all.  The Complaint alleges no false or misleading statements, no material omissions, no purchases or sales of any securities, no reliance by anyone on any statements, and no connection between any statements and any investment decision whatsoever.  Defendants' insistence that Plaintiff has merely "affix[ed] a label" to Plaintiff's claims "that may appear far afield from a securities case" reflects a complete failure to accept the reality that <u>none</u> of the unique features of a fraud case are present here.

Moreover, there is nothing hyperbolic about Plaintiff's observation that the District Court's decision puts almost every shareholders' rights class action at risk of dismissal under SLUSA.  Def's Br. at 50.  As demonstrated above, Defendants' arguments for why this case involves misrepresentations could literally apply to every case in which a defendant fails to disclose his intention to violate the law; or in other words, every case.

Finally, Defendants have missed the point of Plaintiff's argument regarding Defendants' characterization of this case as properly derivative.  Def's Br. at 52.  Plaintiff never argued that this case comes within the exception under SLUSA for exclusively derivative actions.  Rather, the point is that Defendants' characterization of

these claims as "derivative in nature" is flatly inconsistent with their position that this is fundamentally a fraud case.

## CONCLUSION

Plaintiff respectfully requests the Court to reverse the decision of the District Court and remand the case with instructions to vacate all previous rulings and remand the case to Illinois State court.

Dated: June 29, 2011

Respectfully submitted:

By: /s/ Carol V. Gilden

Carol V. Gilden
Cohen Milstein Sellers & Toll PLLC
190 South LaSalle Street, Suite 1705
Chicago, Illinois 60603
t: (312) 357-0370
f: (312) 357-0369
cgilden@cohenmilstein.com

Steven J. Toll
Joshua S. Devore
Joshua M. Kolsky
Cohen Milstein Sellers & Toll PLLC
1100 New York Avenue, NW
Suite 500, West Tower
Washington, DC 20005
t: (202) 408-4600
f: (202) 408-4699
stoll@cohenmilstein.com
jdevore@cohenmilstein.com
jkolsky@cohenmilstein.com

Lynn L. Sarko
Keller Rohrback, LLP
1201 Third Avenue, Suite 3200
Seattle, Washington 98101-3052
t: (206) 623-1900
f: (206) 623-3384
lsarko@kellerrohrback.com

Gary Gotto
James A. Bloom
Keller Rohrback, P.L.C.
3101 North Central Avenue, Suite 1400
Phoenix, Arizona 85012
t: (602) 248-0088
f: (602) 248-2822
ggotto@krplc.com
jbloom@krplc.com

*Attorneys for Plaintiff-Appellant Christopher Brown*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 7,000 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2003 in Book Antiqua 12 point font.

/s/ Carol V. Gilden

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2011, the Reply Brief of Plaintiff-Appellant was filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system.

The following participants in the case are registered CM/ECF users and will be served by the appellate CM/ECF system:

Michael F. Derksen                      John W. Rotunno
Morgan, Lewis & Bockius                 K&L Gates LLP
77 W. Wacker Drive                      70 W. Madison Street
Fifth Floor                             Suite 3100
Chicago, IL 60601                       Chicago, IL 60602

/s/ Carol V. Gilden
Carol V. Gilden